UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

LIVEVIDEO.AI CORP.,

                 Plaintiff,                    New York, N.Y.

            v.                                 24 Civ. 6290 (DEH)(BCM)

SHARI REDSTONE, *et al.*,

                 Defendants.

------------------------------x        Conference

                                       February 12, 2025


Before:

                    HON. BARBARA C. MOSES,

                                       Magistrate Judge



                         APPEARANCES


CONSTANTS LAW OFFICES, LLC
     Attorneys for Plaintiff
BY:  ALFRED C. CONSTANTS, III


ROPES & GRAY, LLP
     Attorneys for Defendants
BY:  MARTIN J. CRISP
     ANI-RAE LOVELL

THE DEPUTY CLERK:  The Court now calls Livevideo.AI Corp. v. Redstone, *et al.*, Case No. 24 Civ. 6290.

Counsel, please make your appearances for the record.

MR. CONSTANTS:  Thank you.  Good afternoon, your Honor.  Alfred Constants, Constants Law Offices, on behalf of the plaintiff.

THE COURT:  Mr. Constants.

MR. CONSTANTS:  Good afternoon.

MR. CRISP:  Good afternoon, your Honor.  Martin Crisp of Ropes & Gray, on behalf of defendant National Amusements, Inc.  With me is my colleague Ani-Rae Lovell who will be handling our presentation today.

THE COURT:  Ms. Lovell, Mr. Crisp, good morning.

Let me set the stage here a little bit.

This case was filed on August 20th of 2024.  The operative complaint, the sole operative complaint, is the first amended complaint at Docket 35.  That was filed on September 17th of 2024.

The amended summonses with respect to the operative complaint were issued the next day, on September 18th, which meant, under Rule 4(m) of the Federal Rules of Civil Procedure, that service was required to be completed by December the 16th of 2024.  There is no evidence in the record of good service on any of the defendants by that date; and, despite prompting from the Court, there has been no motion by the plaintiff under

Rule 4(m) to extend the deadline for service of process.

On January the 28th of this year, I ordered the plaintiff to show cause on February 6th why the case should not be dismissed for failure to timely serve the first amended complaint and the summons under Rule 4(m).

Plaintiff's counsel, Mr. Constants, advised the Court on the evening of February the 5th that he was unavailable to show cause, as directed, on February the 6th.  I will add that the only reason we found out about that on the evening of the 5th, and not on the morning of the 6th, was that my chambers staff made a courtesy call to Mr. Constants, which we were under no obligation to do.  This is not a dentist office.  And he called us back and told us that he was unaware of the show-cause hearing on the 6th and was otherwise engaged on trial in New Jersey.

Consequently, that evening, I issued an order adjourning the show-cause hearing until today and adding an assignment for Mr. Constants to show cause not only why the case should not be dismissed under Rule 4(m), but also why he should not be sanctioned under Rule 16(f) for his failure to obey my January 28th show-cause order or, at a minimum, to seek an adjournment in advance.

Now, I am aware of a flurry of filings that hit the docket late last night and in the early hours of this morning, but they are not the subject of today's hearing.

So, Mr. Constants, you have two issues that you need to address. You may take them in either order.

One of the issues is why this case should not be dismissed under Rule 4(m). I've given you every opportunity to effect service, and you seem to have failed to do so.

And the second question is why you should not be sanctioned for not being here last week.

You may either speak from where you are or you may take the lectern. It's up to you.

MR. CONSTANTS: Can you hear me, Judge?

THE COURT: I can.

MR. CONSTANTS: Thank you. I'll do it from here.

The first -- thank you for the courtesy call, and I know it's not a dentist's office, but I do thank you for the courtesy call. I came in, found out that she called, and I called her right back. I did not have it on my calendar at all.

THE COURT: Why is that?

MR. CONSTANTS: Because --

THE COURT: Did you receive my January 28th order?

MR. CONSTANTS: Judge, I did. Okay? I did. I didn't have it on my calendar call, and I was using a calendar call where I -- which is with all the notes that I have in terms of where to go and where not to go. I did not put that on. That's my fault.

The only reason that I had a problem was that the trial that started the day before, I went in on a case, and all of a sudden the case -- we talked about the case, and all of a sudden the case [sic] said, okay, now you're going to stay with me. The judge said, you're going to stay with me, and we had to try the case. So it wasn't like I knew right ahead that it was going to go on trial and stay on trial. I went in, found out it was on trial, and that's what happened. That was two days before.

The next day when she called, I called her back. She told me. I told her what I just told you. She then told me, and then I did a telephone call to all three counsel for the defendant. Then I e-mailed them both that night, I think it was the 5th, and then you adjourned this until today.

THE COURT: So what happened? You told me that you received my January 28 order. I'm going to presume, since you're an officer of the court, that you read it.

MR. CONSTANTS: Yes, I did.

THE COURT: How come that show-cause hearing, as scheduled, didn't get calendared by you or your office?

MR. CONSTANTS: It's just me, Judge. I did not calendar it.

THE COURT: So it was human error.

MR. CONSTANTS: It's me, Judge. There's nobody else.

THE COURT: Okay.

MR. CONSTANTS:  There's nobody else.  So that's my fault.

THE COURT:  All right.  Anything else to say with regard to the calendaring?

MR. CONSTANTS:  I believe -- and I sent a letter in, Judge, about what I did, which I think is what I've testified to.

THE COURT:  Okay.  Why don't you move to the service issue, then?

MR. CONSTANTS:  So the service issue is, I know that we were seeking service of the summons and the complaint at various times, and I did not know until yesterday that we actually had served people in -- you said December 16th, and apparently most of my -- two of mine are December 30th.  So if I had known that, I would have then --

THE COURT:  I'd like you to answer this question without reference to documents filed for the first time overnight --

MR. CONSTANTS:  Correct.

THE COURT:  -- please.

Now, I'll tell you what I have in the file.  What I have in the file is a document that looks like a proof of service on Ms. Redstone personally but that came in to the Court in November under very suspicious circumstances.  It was not lodged electronically by you under your ECF --

KJC REPORTING & TRANSCRIPTION (848) 459-3124

MR. CONSTANTS:  I did not have --

THE COURT:  -- number.

MR. CRISP:  Correct.

THE COURT:  And so I'm assuming you didn't file that. Correct?

MR. CONSTANTS:  You received it in November, I believe.  I --

THE COURT:  I received it in November.  The Court -- I didn't personally receive it, but the office received it in November by courier sent from an address at New York University.  That wasn't you, was it?

MR. CONSTANTS:  No, it was not.

THE COURT:  All right.  And that purported proof of service said that Ms. Redstone had been served personally at the offices of Corporation Trust in Maryland.  Now, you know and I know that she doesn't live there or work there, so that's not good service, is it?

MR. CONSTANTS:  No.

THE COURT:  That is not good service.

MR. CONSTANTS:  No, your Honor, it is not.

THE COURT:  Who sent that to me, Mr. Constants?

MR. CONSTANTS:  I have no idea.

THE COURT:  Was it your client's principal?

MR. CONSTANTS:  Was it my client's principal?  I don't know who sent it.

THE COURT:  You don't know who sent me --

MR. CONSTANTS:  No.  I've got to take a look at it.  I don't recall.  I know I did not send it, and I did not believe that they -- that my client sent it.  But I don't know if the --

THE COURT:  The proof of service bears the signature of a Mr. Robert Roberts.  Who --

MR. CONSTANTS:  Robert Roberts is the -- he's the individual who was doing the service for -- Robert Roberts?

THE COURT:  Robert Roberts.

MR. CONSTANTS:  Judge, I'm sure he's the one who submitted even the summons and the complaint against National at the same place, Incorporation Trust in Maryland.  So if it came with Robert Roberts, he's in Maryland.

THE COURT:  And who told him that he could serve Ms. Redstone personally at the office of Corporation Trust in Maryland?

MR. CONSTANTS:  My understanding was that -- isn't she an officer of the corporation?

THE COURT:  You don't know that?

MR. CONSTANTS:  No.  I'm saying she is the officer of the corporation.

THE COURT:  Okay.  And under what federal or state service rule can you serve, individually, a person that you've sued in their individual capacity, can you serve that person

with summons and complaint -- and let's gloss over for a moment the question of which complaint was served, which is a separate issue; but under what federal or state provision can you serve, individually, an officer of a corporation by delivering summons and complaint to Corporation Trust, the agent for service of process of the corporation?  That's not good service, Mr. Constants.

MR. CONSTANTS:  I'm not --

THE COURT:  Even if you had done it yourself --

MR. CONSTANTS:  Judge, I'm not arguing.

THE COURT:  Even if you had done it yourself and it hadn't come to the Court mysteriously in an envelope with a return address at New York University, that wouldn't be good service.

So there's no evidence in the file of good service on Ms. Redstone within the 90-day period; and, as you know, because I have written an order about it, there's no evidence in the file of good service on the corporate defendant, National Amusements, Inc., or NAI, because although Mr. Roberts did apparently deliver a complaint and a summons to the corporation's agent for service of process in Maryland, it was the wrong complaint.  And it was for that reason that I vacated the default against NAI.

Now, the case has not yet been dismissed, but neither of these defendants has been served properly, and we're now

well beyond the 90-day limit within which you were required to effect service or request an extension within which to do so. That's your problem.

MR. CONSTANTS:  That's one.  Can we address Docket 32?

THE COURT:  No.  It's not -- I mean, if you're going to try and talk me into --

MR. CONSTANTS:  No, I'm not --

THE COURT:  -- it being somehow an operative complaint, we've been there, we've done that.  You've moved for reconsideration.  We're done.

MR. CONSTANTS:  Okay.  I'm just going to make one comment, then.  The only thing that's wrong on that, it says "Second Amended Complaint."  The word "second" is there.  And if I'm -- so, as I say, I served -- I filed all the complaints -- or I filed his complaint --

THE COURT:  Mr. Constants --

MR. CONSTANTS:  Go ahead.

THE COURT:  -- you filed a bunch of complaints.

MR. CONSTANTS:  I --

THE COURT:  Don't interrupt me.

MR. CONSTANTS:  I'm sorry.

THE COURT:  You filed a bunch of complaints.

MR. CONSTANTS:  Correct.

THE COURT:  The only one that you filed adequately that wasn't bounced by the clerk's office was the first amended

complaint at Docket 38.  There could have been no question in your mind as to which complaint was the operative complaint because I told you which complaint was the operative complaint and that was it: Docket 35.  And yet, the only complaint that you have made any effort to serve on NAI, at least insofar as the record shows, is an inoperative document that was bounced by the clerk's office at Docket 32.

Not only did you try to serve the wrong complaint, but you tried to get a default against NAI based on that.  And I gave you plenty of rope.  I gave you every opportunity.  You still had time to serve the correct complaint, but you didn't.  I gave you an opportunity to seek an extension of your service time so that you get your process server down there with the right complaint, but you didn't ask for an extension.  So what's left to me here?

MR. CONSTANTS:  In order to correct, Judge, I would need time to be able to serve --

THE COURT:  Are you now moving for an extension of your service time under Rule 4(m)?

MR. CONSTANTS:  Judge, let me just go back to 35.  So, I think there's a problem with the fixed jurisdiction in 35, and that is why we submitted the 32, which is now inoperative.  So even if we serve 35, there's a problem with jurisdiction, which had already been in the prior --

THE COURT:  You have a big problem with jurisdiction

no matter which of your complaints is on the table.  You have a huge problem with jurisdiction.  But we don't even get to that problem --

MR. CONSTANTS:  Correct.

THE COURT:  -- if you haven't served anybody with your operative complaint.

MR. CONSTANTS:  Correct.

THE COURT:  So --

MR. CONSTANTS:  So, if I could, Judge, could I, under 4(m), could I extend for 30 days to try and serve the summons and complaint upon the four defendants?

THE COURT:  So you are now moving orally under Rule 4(m) for an extension of your time to serve the correct complaint, *i.e.*, Docket 35 and an amended summons on all three defendants.  Is that correct?

MR. CONSTANTS:  Yes, Judge.

THE COURT:  All right.  In order to show me that you are entitled to that relief, you must show, and I quote Rule 4(m), "good cause for the failure," good cause for the failure to effect service within the time limit you already have.  What's your good cause?

MR. CONSTANTS:  Well, the good cause is that we've tried to serve NAI once.  We were here.  We tried to serve Shari Redstone once or twice.  We tried to serve Ms. Varney and Ms. Seligman, both.  We have tried service on both of them.

And based upon what the Court has ruled, those services will be rendered -- it would be denied based upon what the Court said.

THE COURT:  In my order at Docket 69, issued on December 18, now a month and a half ago, I did the following things:

First, I vacated the clerk's certificate of default as to NAI.

Second, I declined NAI's request to dismiss this action then and there under Rule 4(m) --

MR. CONSTANTS:  Correct.

THE COURT:  -- even though the 90-day period for service had expired.

And lastly, I directed you as follows:  "Any motion to extend the time for service must be filed no later than January 3, 2025, and must demonstrate good cause for plaintiff's failure to effect service of process within the time allotted by Rule 4(m)."

You blew past that deadline, Mr. Constants.  And now here we are, over a month later, you're facing sanctions, you're here at a good-cause hearing, and now you're moving for the first time orally to extend your service deadline?

MR. CONSTANTS:  That's correct, Judge.

THE COURT:  What have you been doing with yourself, Mr. Constants, the last few months?

MR. CONSTANTS:  Sorry.  What have I been doing?  You

mean with this case?

THE COURT:  With this case.

MR. CONSTANTS:  With this case.

I thought that we had -- okay.  Maybe I've been focused more on 32, 35 dockets.  And you've now told me, and you've said this in your papers, that that's an inoperative document, 32.

THE COURT:  I said that back in December, Mr. Constants.  Back in December.  I invited you, back in December, to seek an extension so that you could serve the correct complaint.  You ignored me.  What am I missing here?

MR. CONSTANTS:  I don't know, Judge.

THE COURT:  All right.  Your application to extend your service deadline under Rule 4(m) is denied.

Is there anything else you would like to tell me today?

MR. CONSTANTS:  No, your Honor.

THE COURT:  NAI, is there anything you would like to tell me now that you have heard what Mr. Constants has to say?

MS. LOVELL:  I wouldn't mind just a couple of remarks.

Good morning, your Honor.  Ani-Rae Lovell from Ropes & Gray, on behalf of National Amusements, Incorporated.

We very much appreciate the significant time your Honor has spent on this matter to date, including this morning and hearing from the parties.  We appreciate that your Honor

has ruled on the 4(m) request, but we'd like to make one additional remark.

As your Honor is well aware, in an effort to prosecute frivolous complaints, Mr. Constants and Livevideo, his client, have repeatedly disregarded the federal and local rules, as well as this Court's orders. In those proceedings, including overnight, he has repeatedly raised concerning, incoherent, and frivolous remarks. His conduct to date in this matter, from filing 16 complaints, all of which have been legally baseless and frivolous, to flagrantly ignoring this Court's orders --

THE COURT: 16 complaints in this case?

MS. LOVELL: Excuse me?

THE COURT: I'm sorry. Have there been 16 complaints in this case?

MS. LOVELL: 16 attempts at filing various complaints, your Honor.

THE COURT: I must have lost count. All right. Thank you.

MS. LOVELL: It is a confusing and complicated docket, your Honor.

But at the end of the day, all of those actions, in our view, have violated Rule 11, and his conduct and the conduct of his client is sanctionable.

What we've heard today has not resolved our concerns, your Honor, but, rather, exacerbated them. As you heard this

morning, it's clear that Mr. Constants does not have personal knowledge of the service attempts that have been attempted on our client as well as other defendants in this action.

He has repeatedly referred to "we," despite saying to your Honor this morning that he is the sole lawyer responsible for this case, which raises serious concerns, in our view, about who is prosecuting this action, including the service attempt your Honor recognized was mailed to this Court.

With that, we intend to promptly move for sanctions, your Honor, and we'd respectfully ask --

THE COURT:  Let me stop you there.  As you know, under Rule 11, you are required to send a premotion letter to your adversary and give your adversary 21 days to withdraw.  Have you done that?

MS. LOVELL:  We have done that, your Honor.

THE COURT:  When was that letter sent?

MS. LOVELL:  We sent Livevideo's counsel a safe-harbor letter on December 30th.

THE COURT:  So you're past the 21 days.

MS. LOVELL:  We are well past the 21 days.  We have repeatedly refreshed that motion, your Honor, in light of the continuous flurry of filings in this case.  And then when we had the opportunity to hear Mr. Constants out last week and then this morning—we wanted to give him the opportunity to do that in order to make sure we were not missing something, your

Honor——there wasn't some explanation for the conduct that had occurred that's been burdening our client as well as your Honor.

And let --

THE COURT:  And is the basis for your contemplated Rule 11 motion the face of the pleading——and when I say "the pleading," I mean Docket 35 which, in my view, does not come anywhere close to making out a federal claim that could be a basis for this Court's exercise of original jurisdiction——or is there more to it than that?

MS. LOVELL:  It does focus on the complaint, your Honor, given that the default has been vacated.

THE COURT:  Okay.  Anything else, then, that you want to tell me?

MS. LOVELL:  We respectfully ask that the Court retain jurisdiction to hear that motion.

THE COURT:  Well, I don't have to retain jurisdiction. In the event this case is dismissed under Rule 4(m), the case law is quite clear that the Court would retain jurisdiction for a sanctions motion.  However, let's just discuss the logistics of it for a moment.

Since I am the magistrate judge assigned to this case, and since I do not have consent, should I determine that the case should be dismissed pursuant to Rule 4(m)——which is not a merits dismissal, it would be a without-prejudice

dismissal—nonetheless, I would have to make that recommendation to the district judge, and then there would be a 14-day objection period and so forth.

If you have a Rule 11 motion to make, therefore, you can, and you may wish to, file it while the docket is still open in this matter.

Is there anything else that you want me to hear about?

MS. LOVELL:  Just to make sure I'm clear, your Honor, that I heard you declining plaintiff's request for an extension under Rule 4(m).  Is that correct?  Otherwise I would --

THE COURT:  I declined plaintiff's request for an extension under Rule 4(m).  The reason I am not ruling from the bench at this moment with respect to a dismissal under Rule 4(m) is twofold.  First, I can't because I'm a magistrate judge.  Second, I want to take a closer look at the documents that came in overnight and make sure that there is nothing in there that might conceivably actually be timely service on any of the defendants within the 90-day period set out under Rule 4(m).

So I am—I won't say reserving decision—I would say reserving recommendation on the question whether the case should be dismissed under Rule 4(m) until I have an opportunity to take a closer look at the overnight filings.

I don't know if you've had a chance to take a look at them or not.  If there is anything in particular that you think

I should be aware of in those papers, I am happy to hear you.

MS. LOVELL:  Thank you, your Honor.

We have had a brief opportunity to review the filings made overnight and appreciate your Honor hearing us briefly on what we've been able to observe.

With regard to the motion under 6.3 for reconsideration of your Honor's January 28th order --

THE COURT:  You're referring to the document that's now at Docket 86?

MS. LOVELL:  I believe that's correct, your Honor.

THE COURT:  My first thought when I saw it was they've already moved for reconsideration of my January 28 order, and I denied it.  So either this is a second reconsideration motion aimed at my order vacating the default, or it's a meta reconsideration motion; it's a motion to reconsider my order denying reconsideration.  I'm not sure which, but either way, it's strange.

MS. LOVELL:  I had similar observations, your Honor, in addition to a couple of other points, which are that it was untimely and that it was filed this morning, which is just shy of the 14-day deadline—admittedly 15 days—even if it was possible to move to reconsider an order on a motion to reconsider, as your Honor observes.

And the second point I will make is it is really more of the same, your Honor.  It does not raise any new evidence,

and it peddles the same legal arguments with regard to allegedly incorrectly moving via letter, the argument that CT Corp. is somehow not the same as the other entity it is legally known as, and adds, problematically, your Honor, in our view, attacks directly on my law firm, Ropes & Gray, as well as your Honor.  So those are just --

THE COURT:  I missed that.  Where are those attacks?

MS. LOVELL:  That's right at the conclusion of Docket 86, your Honor.  If I may, from pages 9 flowing over to 10, it says, starting mid sentence, "an overextension by the magistrate" --

THE COURT:  Hold on.

MS. LOVELL:  Apologies, your Honor.

THE COURT:  This is ECF pages 9 and 10 or internal pages 9 and 10?

MS. LOVELL:  Internal pages 9 or 10, your Honor.

THE COURT:  Okay.  I'm with you.  "Magistrate failure to consider footnote 35* is clear error."  Is that where you are?

MS. LOVELL:  Correct.  I'm at the very bottom of that page.  It falls from the bottom of 9 to 10, "an overextension by the magistrate, who should not be creating defenses and working for the benefit of the defendants like an extra legal aide."

THE COURT:  Okay.  Got that.

And your law firm?

MS. LOVELL:  I believe that is further up.  Your Honor.  Apologies.  If I may grab the document.  Page 3, your Honor.  Sorry.  I should have had that in front of me.

It suggests, your Honor, that, quote, "Ropes Law"——which I presume refers to Ropes & Gray, LLP——"is a co-tortfeasor" with our client.

THE COURT:  Yes.  I'm not quite sure why, but I do see that language.

MS. LOVELL:  I'm not sure why either, your Honor.

So those are just brief observations.  We respectfully reserve the right, your Honor, to respond fulsomely to those filings if your Honor deems them appropriate.

THE COURT:  Well, look.  First let me ask Mr. Constants a couple of questions, and then I have some procedural directions that I want to give the lawyers.

Mr. Constants, do you have a copy of Docket 86 with you?  This was filed in the early hours of this morning.

MR. CONSTANTS:  No, I do not, Judge.

THE COURT:  It's --

MS. LOVELL:  We have --

THE COURT:  Could you provide him with a copy?

MS. LOVELL:  Absolutely.

THE COURT:  It's --

MR. CONSTANTS:  It's the memorandum in support?  Is

that what you're looking for?

THE COURT:  It's titled "Motion and Memorandum of Law in Support of LR Motion 6.3."

MR. CONSTANTS:  So --

THE COURT:  Do you have it?

MR. CONSTANTS:  I'm sorry?

THE COURT:  You do have it, Mr. Constants?

MR. CONSTANTS:  I do now.

THE COURT:  All right.

Leaving aside the merits——if I can use that word loosely——of the argument set forth in this document, the document doesn't read to me like something prepared by a member of the bar of this Court.

For example, the first argument header on page 3 reads as follows: "New evidence Delaware state judge provides requires reconsideration."

Header B at the bottom of the same page reads, "Non-ECF Rule 13.1 compliant letters not supported by controlling law."

Mr. Constants, did you write this brief?

MR. CONSTANTS:  No, I did not, Judge.

THE COURT:  Who wrote it?

MR. CONSTANTS:  A paralegal.

THE COURT:  A paralegal wrote it.

MR. CONSTANTS:  That's correct.

THE COURT:  Did you review it before you filed it?  Wait.  Did you file it or did someone else file it?

(Pause)

THE COURT:  It was filed under your ECF registration.

MR. CONSTANTS:  It was last night.  I did not do that.

THE COURT:  Did you review it before it was filed?

MR. CONSTANTS:  No.  No, your Honor.

THE COURT:  And would your answer be the same with respect to some of the earlier briefs filed in this action?

MR. CONSTANTS:  No.  All of the other briefs I did file.

THE COURT:  Did you write them?

MR. CONSTANTS:  Some of them I did, some of them I did not.

THE COURT:  So with respect to Docket 86, the newest filing—which you did not write or file or read before it was filed—what, if any, is the procedural justification for moving to reconsider an order denying reconsideration?  Who came up with that?

MR. CONSTANTS:  He denied reconsideration, Judge.

THE COURT:  Pardon?

MR. CONSTANTS:  He denied it quite candidly before.

THE COURT:  Right.

MR. CONSTANTS:  And I would --

THE COURT:  So what's the purpose of Docket 86?

MR. CONSTANTS:  I do not know, Judge.

THE COURT:  So your ECF number was used to file motion papers that you didn't write, didn't review, didn't file, and don't know the purpose of.  Is that correct?

MR. CONSTANTS:  I filed the summonses and complaints last night.  I believe that the others were filed by the paralegal.

THE COURT:  Without you having written them, reviewed them, or ascertained their purpose.  Correct?

MR. CONSTANTS:  86 I did not do, no.  That's correct, Judge.

THE COURT:  So here are my procedural directions:

Defendant NAI may file a Rule 11 motion if it wishes to do so.  How much time do you need for that, Ms. Lovell?

MS. LOVELL:  Your Honor, we'd appreciate two weeks to do that from today.

THE COURT:  Today is the 12th.  All right.  February 26th.

MS. LOVELL:  Thank you, your Honor.

THE COURT:  Opposition and reply papers will be due on the schedule set out by the local civil rules, which is to say, two weeks for opposition, one week for reply, unless the parties stipulate or the Court directs a different briefing schedule.

If and to the extent that any of the documents filed

overnight are or could be construed as motions by the plaintiff, they are stayed pending the outcome of the Rule 11 proceedings.  I don't want or need any briefs in response to what came in overnight.

As I previously ruled, plaintiff's oral motion under Rule 4(m) for an enlargement of time is denied as untimely and because no showing of good cause has been made.  I will reserve judgment on the question whether the case should be dismissed under Rule 4(m), and I will likely write a recommendation as to that matter at the same time as I write a recommendation as to the Rule 11 motion.

In this circuit, although the precedent is a little bit unclear, I read the precedent as designating a Rule 11 motion as dispositive for purposes of the separation of powers between a magistrate judge and a district judge.  So to the extent the Rule 11 motion is deemed to come within my referral, I will write a recommendation rather than an opinion and order.

Should the district judge choose to write on it himself, of course that will be his prerogative.

Is there anything further for today, Mr. Constants?

MR. CONSTANTS:  No, your Honor.

THE COURT:  Mr. Constants, is there any reason why I should not refer you to the grievance committee of the Southern District of New York for filing documents or permitting your ECF number to be used to file documents that you didn't write,

didn't review, and don't know the purpose of?

MR. CONSTANTS:  You stayed that motion, Judge, and I will --

THE COURT:  Grievance committee matters are separate.

MR. CONSTANTS:  I understand that, Judge.

THE COURT:  I'll tell you what --

MR. CONSTANTS:  Correct.  Yes, Judge.

THE COURT:  -- do you want some time to think about whether you want to withdraw any of the overnight filings?

MR. CONSTANTS:  Yes, I would, Judge.

THE COURT:  All right.  If you wish to withdraw any of the overnight filings, please do so by Friday the 14th, Valentine's Day.

MR. CONSTANTS:  Thank you, Judge.

THE COURT:  Anything further?

MS. LOVELL:  No, your Honor.  Thank you for your time and for your direction on the Rule 11 as well as the other filed documents.

THE COURT:  All right.

MS. LOVELL:  We appreciate it.

THE COURT:  We are adjourned.

(Adjourned)

C E R T I F I C A T E


I, Kristen J. Carannante, certify that the transcript of the digital audio recording of the proceedings in the above-entitled matter is a true and accurate transcription.


Signature    *Kristen J. Carannante*
_____
KRISTEN J. CARANNANTE, RPR, RMR, FCRR
848-459-3124
kjcarannante@gmail.com


Date:     February 14, 2025