| | |
|---|---|
| LIVEVIDEO.AI CORP. | C.A. No.  1:24-CV-6290 (DEH) (BCM) |
| Plaintiff, | |
| v. | |
| SHARI REDSTONE, NATIONAL AMUSEMENTS, INC., CHRISTINE VARNEY, MONICA SELIGMAN | |
| Defendants. | |

**DEFENDANT NATIONAL AMUSEMENTS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11 AND THE COURT'S INHERENT POWERS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS............................................................................................... 2

    A.    Livevideo and Greenspan's History of Vexatious Litigation ................................. 2

    B.    Livevideo Files and Attempts to Prosecute this Frivolous Action Despite the Court's Orders and Warnings ........................................................................... 5

    C.    Livevideo Attempts to Conceal its Insufficient Service and Seeks a Default, Wasting More Time and Resources......................................................... 7

    D.    Livevideo Files an Improper and Incoherent Motion for Reconsideration............. 9

    E.    Livevideo's Counsel Admits He Is Not Responsible for Filings in This Action but Filings Continue to Litter the Docket .................................................... 9

    F.    NAI Satisfied Rule 11's Safe Harbor Requirement ............................................. 11

    G.    LiveVideo and Constants Continue Their Harassment Campaign ....................... 11

ARGUMENT ................................................................................................................ 11

I.    LIVEVIDEO AND CONSTANTS' DECISION TO FILE EACH VERSION OF THE COMPLAINT VIOLATED RULE 11 ................................................... 12

    A.    The Claims Asserted in Every Version of the Complaint Are Patently Invalid and Legally Frivolous ............................................................................. 13

        1.    Livevideo's Federal Claims Are Frivolous.............................................. 14

        2.    Livevideo's State Law Claims Are Likewise Frivolous.......................... 16

        3.    Livevideo and Constants Continued to Prosecute the Action Despite Clear Warnings from the Court .................................................... 17

    B.    The Action Was Brought to Harass the Defendants and Continue Greenspan's Misguided Litigation Campaign ..................................................... 19

II.    THIS COURT ALSO SHOULD SANCTION LIVEVIDEO AND CONSTANTS PURSUANT TO ITS INHERENT POWERS BECAUSE OF THEIR VEXATIOUS BEHAVIOR AND DISHONESTY ........................................................ 20

    A.    Greenspan Has a History of Vexatious Litigation ................................................ 21

B.      Livevideo and Constants' Actions in this Case Make Clear Their Intent to
        Willfully Multiply the Proceedings and Cause Unnecessary Expense to
        Defendants ......................................................................................................... 22

C.      Greenspan's Apparent Impersonation of Constants, and Constants'
        Continued Enabling of Greenspan, Are the Epitome of Bad Faith...................... 24

III.    SANCTIONS ON LIVEVIDEO AND CONSTANTS ARE NECESSARY TO
        DETER SIMILAR VIOLATIONS IN THE FUTURE ..................................................... 25

**CONCLUSION** ......................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Amorosa v. Gen. Elec. Co.*,
   No. 21-cv-3137, 2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022)................................................24

*Bowler v. United States Immigr. & Naturalization Servs.*,
   901 F. Supp. 597 (S.D.N.Y. 1995)........................................................................................20

*Celestin v. Martelly*,
   No. 18-cv-7340, 2024 WL 4355512 (E.D.N.Y. Sept. 30, 2024) .....................................13, 25

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)...............................................................................................................21

*Collins v. MCA Receivables, LLC*,
   No. 23-cv-353, 2024 WL 246111 (S.D.N.Y. Jan. 23, 2024) ...................................................14

*Corsini v. Bloomberg*,
   26 F. Supp. 3d 230 (S.D.N.Y. 2014).......................................................................................14

*Dimitri Enters., Inc. v. Spar Ins. Agency LLC*,
   No. 21-1722-cv, 2022 WL 5237811 (2d Cir. Oct. 6, 2022) ............................................12, 18

*Doe v. State Univ. of New York Purchase Coll.*,
   617 F. Supp. 3d 195 (S.D.N.Y. 2022).......................................................................................3

*ED Cap., LLC v. Bloomfield Inv. Res. Corp.*,
   316 F.R.D. 77 (S.D.N.Y. 2016) ..............................................................................................13

*Farina v. Bastianich*,
   116 A.D.3d 546 (1st Dep't 2014) ...........................................................................................17

*Gagasoules v. MBF Leasing LLC*,
   286 F.R.D. 205 (E.D.N.Y. 2012) ............................................................................................21

*Greenspan v. IAC/Interactivecorp*,
   14-cv-04187, 2016 WL 9185281 (N.D. Cal. May 5, 2016)................................................4, 22

*Greenspan v. IAC/InterActiveCorp*,
   No. 14-cv-04187, 2016 WL 5724972 (N.D. Cal. Sept. 30, 2016).................................. *passim*

*Greenspan v. News Corp.*,
   No. 9567-VCG, 2016 WL 74921 (Del. Ch. Jan. 6, 2016) .................................................3, 22

*Greenspan v. SEC*,
   727 F. App'x 381 (9th Cir. 2018) ...........................................................................................15

*In Re: High-Tech Employee Antitrust Litig.*,
    No. 11-CV-02509-LHK (N.D. Cal. July 8, 2014) .............................................................4, 22

*Hong v. Mommy's Jamaican Mkt. Corp.*,
    No. 20-cv-9612, 2024 WL 3824394 (S.D.N.Y. Aug. 14, 2024)...............................................23

*Jones v. Niagara Frontier Transp. Auth.*,
    722 F.2d 20 (2d Cir. 1983)...............................................................................................................25

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).............................16, 18

*LaVigna v. WABC Television, Inc.*,
    159 F.R.D. 432 (S.D.N.Y. 1995) ...................................................................................................16

*Liebowitz v. Bandshell Artist Mgmt.*,
    6 F.4th 267 (2d Cir. 2021) ..............................................................................................................26

*Lipin v. Hunt*,
    573 F. Supp. 2d 836 (S.D.N.Y. 2008)..................................................................13, 15, 16, 19

*Lipin v. Nat'l Union Fire Ins Co. of Pittsburgh*,
    202 F. Supp. 2d 126 (S.D.N.Y. 2002)...................................................................................13, 25

*Mata v. Avianca, Inc.*,
    678 F. Supp. 3d 443 (S.D.N.Y. 2023).........................................................................16, 19, 25

*McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*,
    638 F. Supp. 3d 333 (S.D.N.Y. 2022).........................................................................................13

*McLoughlin v. Altman*,
    No. 92-cv-8106(KMW), 1995 WL 640770 (S.D.N.Y. Oct. 31, 1995)....................................19

*Miller v. Walters*,
    46 Misc. 3d 417 (N.Y. Sup. Ct., N.Y. Cnty. 2014) ..................................................................17

*Mohinani v. Charney*,
    208 A.D.3d 404 (N.Y. App. Div. 1st Dep't 2022)....................................................................17

*New V & J Produce Corp. v. NYCCaterers Inc.*,
    No. 13-cv-4861 ER, 2014 WL 5026157 (S.D.N.Y. Sept. 29, 2014) .......................................16

*PeerMusic, III, Ltd. v. LiveUniverse, Inc.*,
    No. 09-cv-6160-GW, 2012 WL 4840803 (C.D. Cal. Oct. 9, 2012) .........................................3

*Pentagen Techs. Int'l Ltd. v. United States*,
    172 F. Supp. 2d 464 (S.D.N.Y. 2001)........................................................................................12

*In re Platinum-Beechwood Litig.*,
  400 F. Supp. 3d 2 (S.D.N.Y. 2019)...................................................................17

*Redcell Corp. v. A.J. Trucco, Inc.*,
  No. 20-cv-18, 2022 WL 683007 (S.D.N.Y. Mar. 8, 2022).....................................14

*Sheet Metal Workers' Nat'l Pension Fund v. Amodeo*,
  No. 09-0121, 2016 WL 3080807 (E.D.N.Y. May 27, 2016)..................................23

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
  682 F.3d 170 (2d Cir. 2012)...........................................................................13

*United Computer Sys., Inc. v. AT & T Corp.*,
  107 F. App'x 818 (9th Cir. 2004)....................................................................21

*United States v. Prevezon Holdings, Ltd.*,
  305 F. Supp. 3d 468 (S.D.N.Y. 2018)..........................................................20, 25

*Vacco v. Operation Rescue Nat.*,
  80 F.3d 64 (2d Cir. 1996)...............................................................................23

*Waldbaum v. Laufer Delena Cadicina Jensen & Boyd, LLC*,
  No. 18-cv-4225, 2019 WL 4735386 (S.D.N.Y. Sept. 27, 2019)...........................17

*Wilson v. Pasquale's DaMarino's, Inc.*,
  No. 10-cv-2709(PGG), 2013 WL 1195603 (S.D.N.Y. Mar. 25, 2013)...................21

**Statutes**

15 U.S.C. § 78u-6(h)..............................................................................7, 15, 18

18 U.S.C. § 1513(e) .................................................................................. *passim*

28 U.S.C. § 1927........................................................................................20

**Other Authorities**

Fed. R. Civ. P. 4(m)................................................................................8, 9, 10

Fed. R. Civ. P. 11 ..................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6).................................................................................14

Fed. R. Civ. P. 16(f)......................................................................................10

Fed. R. Civ. P. 37 .........................................................................................3

Fed. R. Civ. P. 55(c) .....................................................................................8

Defendant National Amusements, Inc. ("NAI") brings this motion pursuant to Federal Rule of Civil Procedure 11 and this Court's inherent powers seeking monetary sanctions to be paid into this Court against Plaintiff Livevideo.AI ("Livevideo") and its counsel, Alfred C. Constants III ("Constants"), for their conduct set forth below.

## PRELIMINARY STATEMENT

Livevideo and its counsel Constants have dragged this Court and the Defendants through six months of wasted time and resources. Livevideo, a corporation without any evident operations outside this litigation, first filed a frivolous complaint that asserted meritless (and barely decipherable) claims obviously lacking in subject matter jurisdiction. Since then, Livevideo has doubled down on its harassing conduct by adding more frivolous claims to its complaint, failing to comply with federal and local rules, flouting Court orders and deadlines, and filing baseless motions and requests for default.

Livevideo's pattern of harassment is an intentional litigation strategy. Livevideo appears to be a pass-through vehicle for its principal, Brad Greenspan, who has a long and well-documented history of pursuing vexatious litigation. As one federal court found, even when proceeding *pro se*, Greenspan is sufficiently "familiar with litigation" to make it "burdensome" for even sophisticated litigants to respond to his bad-faith litigation tactics. *See Greenspan v. IAC/InterActiveCorp*, No. 14-cv-04187, 2016 WL 5724972, at *3 (N.D. Cal. Sept. 30, 2016) ("*IAC I*"). Here, Greenspan has found a willing collaborator in his counsel, Constants, who has blanketed the docket with filings that range from frivolous to incomprehensible, and who has admitted on-record that he allowed his ECF credentials to be used to file motions and affidavits that he did not draft or even review.

Livevideo and Constants violated Rule 11 by filing the operative complaint (Dkt. 35) (the "Operative Complaint") (and every other version of that complaint) because it was filed for an improper purpose and it is patently clear that the claims asserted therein have absolutely no chance of success. Livevideo and Constants have continued to pursue these frivolous claims despite direct warnings from the Court and notwithstanding tender of a formal Rule 11 safe-harbor notice by NAI. Additionally, Livevideo's and Constants' actions to date have deliberately wasted the Court's time and have caused NAI to incur substantial expense in responding to frivolous filings. Their conduct has demonstrated clear subjective bad faith, which further justifies monetary sanctions under the Court's inherent powers. NAI respectfully requests that the Court put an end to Livevideo's campaign of harassment by granting this motion.

## STATEMENT OF FACTS[1]

### A.    Livevideo and Greenspan's History of Vexatious Litigation

Livevideo is a Delaware corporation established in April 2023. *See* Entity Search, Department of State: Division of Corporations, State of Delaware, *available at* https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (last visited Feb. 23, 2025). It does not appear to have any operations outside of this litigation, and its "CEO," Brad Greenspan ("Greenspan"), *see, e.g.*, Dkt. 35-1 at 3, 8, has engaged in an extensive pattern of vexatious litigation.

Since 2005, Greenspan, the former CEO of Intermix Media, Inc. ("Intermix") has repeatedly filed, or attempted to intervene in, legal proceedings seeking to relitigate his removal from Intermix, the parent company of the Myspace social network, and to challenge Intermix's subsequent merger with News Corporation—events that have nothing to do with NAI or this

---

[1]    All internal citations and quotations are omitted and emphases are added unless otherwise noted.

action.  *See IAC I*, 2016 WL 5724972, at *2 (collecting cases in which Greenspan unsuccessfully "litigated or attempted to litigate claims arising out of the MySpace sale");[2] *see also* Operative Complaint ("Compl."), Dkt. 35, ¶¶ 13–24 (rehashing grievances regarding that transaction).

Yet inexplicably, Greenspan has persistently sought to inject stale claims concerning Intermix into various and sundry civil actions concerning other unrelated transactions, including Greenspan's recent attempt to intervene in the United States Department of Justice's antitrust action against Google, LLC.  *See, e.g.*, Lovell Decl. Ex. 1; *see also* Dkt. 35-1 at 63 (attaching Greenspan's "Request for Judicial Notice" from that case to the Operative Complaint).  Based on this clear "practice of filing of frivolous motions," another United States District Court has declared Greenspan a vexatious litigant and ordered him to pay attorneys' fees as sanctions.  *See IAC I*, 2016 WL 5724972, at *3; *see also PeerMusic, III, Ltd. v. LiveUniverse, Inc.*, No. 09-cv-6160-GW, 2012 WL 4840803, at *1, 4 (C.D. Cal. Oct. 9, 2012) (ordering Greenspan to pay attorneys' fees under Rule 37 because of his "blatant disregard for the civil justice system" and because his "conduct in this litigation . . . greatly multiplied the proceedings").[3]

Recently, Greenspan has established corporate entities to prosecute these claims on his behalf, evidently to obscure his activities and insulate himself from the consequences of his actions.  In the past few years, Greenspan has filed three separate lawsuits in state and federal court in New Jersey against the same group of defendants.  *See* Lovell Decl. Ex. 2 ¶¶ 19–48 (*Greenspan*

---

[2]  "Courts may take judicial notice of public documents and matters of public record, including documents filed in another court, not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Doe v. State Univ. of New York Purchase Coll.*, 617 F. Supp. 3d 195, 201 n.3 (S.D.N.Y. 2022) (cleaned up).

[3]  *See also Greenspan v. News Corp.*, No. 9567-VCG, 2016 WL 74921, at *1 & n.1 (Del. Ch. Jan. 6, 2016) (granting motion to dismiss based on laches for claims regarding events from between 2003 and 2005 and administratively dismissing "numerous [other] motions, many times [filed] in droves" including motions for default judgment) ("*News Corp.*").

*v. Muijrers* (N.J. Super. July 19, 2021)); Ex. 3 ¶¶ 14, 16–18, (*Palisades Cap., Inc. v. Muijrers* (D.N.J. Nov. 17, 2021)); Ex. 4 ¶¶ 21, 23–33, 88–97 (*LiveUniverse, Inc. v. Muijrers* (D.N.J. Aug. 4, 2022)).   In the latter two actions, the claims were filed by two entities that Greenspan incorporated (in one instance after the relevant events occurred) and interposed as plaintiffs.  *See* Lovell Decl. Ex. 5 (listing Greenspan as "Incorporator/Organizer" and "President" of Palisades Capital); Ex. 6 (listing incorporation date for LiveUniverse, Inc. as May 27, 2021); Ex. 7 (letter signed by Greenspan as "President" on behalf of LiveUniverse, Inc.).

Greenspan has also resorted to impersonating his counsel.   In one case, Greenspan impersonated an attorney by filing motions under his counsel's name without her permission or knowledge.   *See* Lovell Decl. Ex. 8 (noting that "the attorney who purportedly signed these motions, has informed the Courtroom Deputy . . . that [she] did not file these motions"); *see also Greenspan v. IAC/Interactivecorp*, 14-cv-04187, 2016 WL 9185281, at *2 (N.D. Cal. May 5, 2016) (granting motion for Greenspan's counsel to withdraw after Greenspan filed *pro se* motion "without the knowledge or involvement" of counsel) ("*IAC II*").   In the New Jersey actions discussed above, three counsel have withdrawn from representing Greenspan (or his newly incorporated entities), all of whom have cited the fact that they were retained for a limited purpose, and left the substantive legal work to someone described as Greenspan's "other counsel."[4]  Two

---

[4]      *See* Lovell Decl. Ex. 9 ¶ 6 (citing "numerous and ongoing disputes between myself and the Plaintiff and pro hac vice counsel over the scope of my representation, the apportionment and control of tasks, drafting of documents, the Plaintiff repeatedly insisting upon taking actions or not taking actions with which I have had a fundamental disagreement" as reasons to withdraw); Ex. 10 at 1 (noting previous alleged New York counsel was no longer representing Greenspan, alleged replacement counsel was unavailable and "[m]y office did not prepare or review the complaint prior to filing nor have we researched the many legal and factual issues in any depth, *at my client's request*"); Ex. 13 ¶¶ 1–2 (noting counsel had been retained for "limited representation" and "Plaintiff advised me that it had retained other counsel as well, and that counsel would then become attorney of record, which Plaintiff never sought nor counsel ever did").

of these attorneys expressly cited their ethical obligations in seeking leave to withdraw. Lovell Decl. Ex. 9 at 1, 4–5 (noting "fundamental disagreement" with plaintiff's actions); Ex. 11 at 2 (noting he could not prepare motion to dismiss opposition because he "ha[s] an obligation to independently review documents and can only file pleadings with a reasonable legal and factual basis for filing"). Inexplicably, Constants (or someone using his ECF credentials) also filed a number of proofs of service in one such action, despite never having appeared in that case. Lovell Decl. Ex. 12.

B. **Livevideo Files and Attempts to Prosecute this Frivolous Action Despite the Court's Orders and Warnings**

Livevideo commenced this action on August 20, 2024. Dkt. 1. The initial complaint named as defendants Shari Redstone, NAI, Christine Varney, and "Monica" Seligman[5] and asserted four purported state law claims—unfair competition, tortious interference with business relations, aiding and abetting breach of fiduciary duty, and unjust enrichment. *Id.* ¶¶ 5–8, 41–64. Despite purportedly relating to a recently announced transaction involving NAI, Skydance Media, LLC (with its relevant affiliates, "Skydance"), and Paramount Global, the initial complaint (and every subsequent iteration) focuses extensively on Greenspan's longstanding grievance concerning his ouster from Intermix and its sale to News Corporation. *See, e.g.*, *id.* ¶¶ 13–24, 61–69.

Livevideo's claims are obviously baseless. As this Court pointed out, in its Civil Action Coversheet, Livevideo claimed diversity jurisdiction as the basis of subject matter jurisdiction but

---

[5]    While Livevideo names "Monica" Seligman as a defendant, no such person served as a director of Paramount Global during the events alleged in any version of the complaint. *See* Paramount Global Schedule 14C Information at 105 (Feb. 13, 2025), https://ir.paramount.com/static-files/e67e9926-541c-4d02-bceb-bd4007c3ced9. Nicole Seligman served as a director of Paramount Global, but did not stand for reelection to the board months before this action was filed. *See id.* at 122, 136.

in its complaint claimed that subject matter jurisdiction was based on federal question jurisdiction. *See* Dkt. 15 at 1. Yet Livevideo has asserted no colorable federal claims and stated that all of the parties are citizens of New York. *See* Dkt. 15 at 1–2. In short, Livevideo plainly pleaded a lack of subject matter jurisdiction. Further, as this Court noted, despite purportedly pleading a claim based on a supposed breach of fiduciary duty, the complaint failed to explain why any of the Defendants owed fiduciary duties to Livevideo, or why Livevideo would have standing to pursue such a claim on behalf of any other party. *Id.* at 2. Accordingly, the Court ordered Livevideo to "show cause, in writing, why this action should not be dismissed for lack of subject matter jurisdiction." *Id.*

Rather than respond to this show-cause order, Livevideo filed an amended complaint, which added two frivolous federal claims under the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act") and the Computer Fraud and Abuse Act (the "CFAA").[6] *See* Compl. ¶¶ 104–32. After many failed attempts, Livevideo successfully filed the operative first amended complaint on September 17. Dkt. 35.

A few days earlier, on September 13, 2024, Livevideo had attempted to file a "second amended complaint," (the "SAC") which was "never accepted for filing." Dkt. 69 at 1, *see also* Dkt. Entry No. 32. On September 19, 2024, Livevideo filed another "second amended complaint," Dkt. 44, and in response to a letter from Livevideo asking that the Court "accept the document 44 as appropriate and modify the court documents *so that we can serve the Second Amended Complaint*," Dkt. 45, the Court issued a second show-cause order, noting that Livevideo's federal

---

[6]     Livevideo strangely also changed the alleged residences of two of the defendants, now pleading that Ms. Redstone was a "citizen of Massachusetts" and that Christine Varney is "a Washington D.C. resident." Dkt. 24 ¶¶ 5, 7. If this was a (questionable) attempt to create diversity jurisdiction it failed, as the Complaint still pleads that there are New York citizens on both sides of the dispute. *Id.* ¶¶ 4, 6, 8.

claims continued to be facially defective.  *See* Dkt. 46.  Specifically, the Court noted that "[t]he whistleblower provisions of the Dodd-Frank Act permit a claim by an ***individual*** whose ***employer*** retaliated against him or her 'providing information to the [SEC] or making protected disclosures." *Id.* at 1 n.1 (citing 15 U.S.C. § 78u-6(h)(1)).  Yet, Livevideo pleaded no such facts.  The Court also noted that Livevideo's CFAA claim was invalid because it failed to "allege any compensable damages to its computer system," as the CFAA requires.  *See id.* at 1–2 n.2 (collecting cases).  The Court further noted that Livevideo had to establish "good cause" to file the second amended complaint, including by "affirmatively demonstrat[ing] that the amendment would not be futile." *Id.* at 2.  The Court expressly warned Livevideo and its counsel that "***significant sanctions may be imposed*** if, inter alia, the claims . . . and other legal contentions made in a pleading are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Id.* (quoting Fed. R. Civ. P. 11(b)(2)).

Livevideo ignored that order.  *See* Dkt. 47.  So, on October 11, the Court denied leave to amend and expressly notified Livevideo that "***the [First Amended Complaint] (Dkt. 35) remains the operative complaint***." *Id.*

## C. Livevideo Attempts to Conceal its Insufficient Service and Seeks a Default, Wasting More Time and Resources

Despite the Court's clear instructions and Livevideo's concession that it required leave of court to serve a second amended complaint, about a month later, Livevideo engaged in a series of attempts to serve the Defendants.  None were effective.  On November 6, Livevideo attempted to serve NAI and Ms. Redstone with the earlier version of the inoperative second amended complaint docketed at Docket No. 32.  *See* Dkt No. 67 at 2, 4.  Around this time, someone (Constants was not able to identify who) mailed the Court a proof of service for Ms. Redstone from "NYU Mail

Services" in New York City. Dkt. 48; Dkt. 90 at 7–8. The Court later concluded, consistent with Constants' own admission on the record, that such service was ineffective. Dkt. 90 at 6, 18.

Almost a month later, Livevideo sought entry of a default against NAI. Only after instructions from the Clerk to refile the proposed certificate of default with proof that the operative amended complaint had been served, Livevideo filed further requests for default, misleadingly representing that it served "***an*** amended complaint," in an apparent attempt to conceal the fact that it had served an inoperative second amended complaint. *See, e.g.*, Dkt. 60 at 2; Dkt. 62 ¶ 4.[7] Based on the representations in these filings, the Clerk entered a default against NAI on December 9. Dkt. 63.

NAI promptly requested that the default be set aside because it had not been properly served. Dkt. 65 at 1–2. In response, Livevideo submitted an opposition and a declaration from its process server, both of which conceded that Livevideo had served "Document 32"—that is, the inoperative SAC. Dkt. 67 at 2, 4.[8] Based on this concession that it served an inoperative complaint, and because NAI in any event satisfied the "good cause factors" of Rule 55(c), on December 18, the Court set aside the default. Dkt. 69 at 2. The Court also acknowledged that Livevideo's time under Rule 4(m) to effect proper service had expired, but provided Livevideo

---

[7]    In addition to concealing the fact that it had served an inoperative complaint, in the documents supporting its request for a default, Livevideo's counsel changed his signature block from listing a Gmail account that was also listed in his state bar records, to a new email address from Proton mail, which "provides free software that masks a person's identity and location online." Dkt. 65 at 1–2 & n.1.

[8]    While the parties were briefing the motion to set aside the default, Greenspan filed an objection to the pending merger between Paramount Global and Skydance before the Federal Communications Commission, which attempted to leverage Livevideo's manufactured default into a basis for the FCC to reject the merger. *See* Livevideo.AI Corp. Petition to Deny Transfer of FCC Licenses, *In the Matter of Skydance Media and Paramount Global*, MB Docket No. 24-275 (Dec. 17, 2024), *available at* https://www.fcc.gov/ecfs/search/search-filings/results?q=(proceedings.name:(%2224-275%22)).

leave to file, no later than January 3, 2025, a motion to extend its time to effect service. *Id.* Livevideo did not file that motion or timely object to the Court's order.

### D. Livevideo Files an Improper and Incoherent Motion for Reconsideration

On January 13—ten days ***after*** the Court's deadline for Livevideo to show good cause as to why its claims should not be dismissed for failure to effect timely service—Livevideo filed a so-called "Motion to Modify or Alter The December 18, 2024 Order Under FRCP Rule 59e." *See* Dkt. 70. As the Court later observed, the "Motion to Modify" was filed under the incorrect rule, after the deadline for reconsideration or objection to a magistrate judge's order had lapsed, and relied on "disorganized, fragmented, and frequently incomprehensible" arguments. Dkt. 74 at 3– 5. Livevideo's submissions in support of its "Motion to Modify" included telltale signs of the brief having been written by an artificial intelligence tool with little or no review by an attorney, including what appears to be a response to a prompt from an AI tool. *See, e.g.*, Dkt. 70-2 at 9 ("Here's a revised and more coherent version of the text, with duplicate ideas removed and missing ideas added to lists"). To the extent the arguments were comprehensible, they raised points that Livevideo failed to raise in its opposition, and which ignored a clear order from the Court referring the action to Judge Moses. *Id.* at 5–6.

On January 28, 2025, the Court rejected the "Motion to Modify" and ordered counsel for Livevideo to appear, in person, on February 6, 2025 to show cause why the action should not be dismissed under Rule 4(m). Dkt. 74 at 7.

### E. Livevideo's Counsel Admits He Is Not Responsible for Filings in This Action but Filings Continue to Litter the Docket

Following the Court's courtesy call to Constants to remind him to appear on February 6, Constants informed the Court that he could not attend the conference, purportedly due to an

ongoing trial.  *See* Dkt. 90 at 4–6.  The Court adjourned the hearing to February 12, and noted that Constants could face sanctions under Rule 16(f).  Dkt. 77.

In the hours before the conference, Livevideo made a flurry of filings, including proofs of alleged service that purportedly had occurred months before (including the admittedly invalid November 6, 2024 service attempt on Ms. Redstone).[9]  Dkts. 79–81.  Livevideo also filed a motion for reconsideration of the order denying its previous motion for reconsideration (which referred to Judge Moses as a "legal aide" to NAI's counsel) and a motion to supplement its pleadings with yet another federal claim.  Dkts. 82–85, 86 at 3, 10.

Constants appeared at the February 12 conference and made a series of astonishing, and sanctionable, admissions:

- He "did not know until yesterday" that Livevideo had served two other Defendants on December 30, 2024 (well after Livevideo's time to do so under Rule 4(m) expired, in any event).  Dkt. 90 at 6.

- He "ha[d] no idea" who had submitted the November 6, 2024 proof of service for Ms. Redstone from "NYU Mail Services" in New York City.  *Id.* at 7.  When prompted by the Court, Constants suddenly claimed he was "sure" the process server had submitted it, despite acknowledging the process server was in Maryland, not New York.  *Id.* at 8.

- He admitted he did not prepare, review, or file the submissions from the night before (other than the proofs of service) and could not explain their purpose to the Court.  *Id.* at 22–24.

The Court stated, and Constants agreed, that the November 6, 2024 service attempt was not effective, but that the Court took the proofs of service under advisement to determine whether there had been "timely service" in connection with the Court's decision on whether to recommend dismissing the case under Rule 4(m).  *Id.* at 18:11–23.[10]  Nonetheless, Constants' ECF credentials

<hr />

[9]     This included an almost identical copy of Livevideo's process server's affidavit, this time referring to Ms. Redstone and omitting the "concession" that he had served the SAC at Docket 32, which the Court and NAI had continuously pointed out to Livevideo demonstrated service was ineffective.  *See* Dkt. 79 at 3; Dkt. 74 at 2 n.1.

[10]    The Court also gave Constants the chance to withdraw the filings he admitted to not having drafted or reviewed.  Dkt. 90 at 26.  He did so only for the motion for reconsideration, meaning

were used to, shortly thereafter, litter the docket with filings requesting defaults based on those proofs of service already addressed by the Court. Dkts. 92–108. In doing so, Livevideo and Constants once again ignored the Court's clear guidance and have caused the Defendants and this Court to again waste time and resources.

### F. NAI Satisfied Rule 11's Safe Harbor Requirement

On December 30, 2024, counsel for NAI served the motion and cover letter attached at Lovell Decl. Ex. 14 on Constants via email, providing the requisite notice under the "safe harbor" provision of Federal Rule of Civil Procedure 11(c)(2). Constants acknowledged receipt and confirmed he accepted service of the motion by email.

### G. LiveVideo and Constants Continue Their Harassment Campaign

On February 23, 2025, Livevideo filed an objection to the Court's February 12 order staying Livevideo's motion to supplement the complaint pending resolution of the instant motion for sanctions pursuant to Rule 11. *See* Dkt. 118. This frivolous filing makes baseless and unsupported arguments, including that the February 12 order "effectively grants NAI a premature injunction" and "creates a chilling effect on [Livevideo's] constitutional right of access to the courts." *Id.* at 7. This latest filing makes clear that Livevideo and Constants intend to continue to employ frivolous filings to harass Defendants and waste the Court's resources—all of which have compelled NAI to file this motion.

### ARGUMENT

This Court should sanction Livevideo and Constants for their frivolous, vexatious, and bad-faith litigation conduct. Both Livevideo and Constants violated Rule 11 by filing and continuing

---

that Livevideo's motion to supplement its pleadings is still pending on the docket despite the lawyer who purportedly signed it admitting he took no part in preparing or filing it. Dkt. 89; Dkt. 90 at 23–24 ("MR CONSTANTS: I filed the summonses and complaints last night. I believe that the others were filed by the paralegal.").

to press the frivolous and unsupported Complaint, despite the Court's repeated admonitions, for the improper purpose of harassing Defendants and incurring needless litigation expenses. Sanctions are likewise warranted under this Court's inherent powers because Livevideo and Constants have acted oppressively and vexatiously in this action. This Court should thus impose monetary sanctions, to be paid into this Court, and all other sanctions it deems necessary on Livevideo and Constants to effectively deter future litigation misconduct.

## I.  LIVEVIDEO AND CONSTANTS' DECISION TO FILE EACH VERSION OF THE COMPLAINT VIOLATED RULE 11

Enacted to "curb the effect of baseless litigation," *Pentagen Techs. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 473 (S.D.N.Y. 2001), Federal Rule of Civil Procedure 11 grants courts the power to "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Rule 11 provides that, by submitting a pleading, parties and counsel are representing that "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and] (2) the claims . . . are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b).

Rule 11 thus "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Dimitri Enters., Inc. v. Spar Ins. Agency LLC*, No. 21-1722-cv, 2022 WL 5237811, at *2 (2d Cir. Oct. 6, 2022). Even where a represented party does not sign the pleadings or filings themselves, the Court may sanction them "if the party had actual knowledge that filing the paper constituted wrongful conduct, e.g., the paper made false statements or was filed for an improper purpose." *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 202 F. Supp. 2d 126, 140 (S.D.N.Y. 2002). The standard for

identifying a Rule 11 violation is objective unreasonableness.  *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012); *see also ED Cap., LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 81 (S.D.N.Y. 2016) ("A pleading or motion violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith.").

Livevideo and Constants acted—both objectively and subjectively—unreasonably in filing frivolous and unsupported claims.  Livevideo and Constants have violated at least two provisions of Rule 11(b).[11]  First, they violated Rule 11(b)(2) by pressing patently frivolous, unsupported, and manufactured claims, even in light of the Court's repeated admonitions that such claims were likely not viable.  And second, they violated Rule 11(b)(1) because, when considered in context, these filings are clearly made with the purpose of harassing NAI, justifying sanctions against both Livevideo and Constants.

### A.    The Claims Asserted in Every Version of the Complaint Are Patently Invalid and Legally Frivolous

Livevideo and Constants repeatedly violated Rule 11(b)(2) by submitting multiple iterations of a complaint containing wholly unsupported and frivolous legal claims.  *See McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, 638 F. Supp. 3d 333, 338 (S.D.N.Y. 2022).  A filing is frivolous where, as here, "it is clear under existing precedent that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'"  *Celestin v. Martelly*, No. 18-cv-7340, 2024 WL 4355512, at *4 (E.D.N.Y. Sept. 30, 2024).  Even a cursory review of Livevideo's claims (in any version of the complaint) reveals that none of them state a plausible claim for relief.  And Livevideo has gone far beyond filing claims that are subject to dismissal

---

[11]    While many of Livevideo's factual allegations are clearly fanciful and unsupported, NAI is not currently moving under Rule 11(b)(3) and reserves its right to seek relief thereunder as appropriate.  *See Lipin v. Hunt*, 573 F. Supp. 2d 836, 844 (S.D.N.Y. 2008).

under Rule 12(b)(6)—in each case, it is "patently clear that [each] claim has absolutely no chance of success." *Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 247 (S.D.N.Y. 2014).

### 1.     Livevideo's Federal Claims Are Frivolous

Livevideo's CFAA claim, as this Court has already observed, fails because Livevideo does not allege that it has suffered "any compensable damages to its computer system." Dkt. 46 at 1–2 n.2.  Civil claimants under the CFAA can only recover for losses related to "the ***victim's*** computer system." *Collins v. MCA Receivables, LLC*, No. 23-cv-353, 2024 WL 246111, at *8 (S.D.N.Y. Jan. 23, 2024).  Yet, the Operative Complaint alleges only that a "test email" sent to Paramount Global's then-CEO included "an online marketing software pixel" that notified Livevideo that Ms. Redstone and other unnamed individuals supposedly gained "unauthorized" access to Livevideo's message.  Compl. ¶¶ 119–32.[12]  The Operative Complaint does not identify damage to any computer system, let alone to one maintained by Livevideo.  Even reading the Operative Complaint with immense latitude to claim some reputational or business harm to Livevideo, it is nonetheless clear that "costs associated with lost competitive advantages, profits or revenue" cannot support a CFAA claim in any event. *Redcell Corp. v. A.J. Trucco, Inc*., No. 20-cv-18, 2022 WL 683007, at *6 (S.D.N.Y. Mar. 8, 2022).  Neither Livevideo nor Constants could plausibly have viewed this claim as having a good-faith basis.

Livevideo's purported Dodd-Frank Act retaliation claim is also frivolous.  To start, Livevideo cites to a federal criminal statute, 18 U.S.C. § 1513(e), that concerns witness retaliation and provides no private right of action.  Even correcting for this error and assuming that Livevideo seeks to pursue the "correct" Dodd-Frank Act claim, that cause of action is expressly limited to

---

[12]     Allegedly, this is supported by a document, "Exhibit #11" attached to the Operative Complaint.  *See* Compl. ¶¶ 125, 131.  Notably, no version of the complaint includes an Exhibit 11 or any documentary evidence related to this extraordinary claim.

"[a]n *individual* who alleges discharge or other discrimination in violation of subparagraph (A)" of the Act. 15 U.S.C. § 78u-6(h)(1)(B)(i). As the Court has already observed, Livevideo is a corporation, not an individual. *See* Dkt. 46 at 1 n.1. Nor, as the Court also noted, is Livevideo an employee. *Id.* The "subparagraph (A)" referenced in the cause of action section of the Act provides that "[n]o *employer* may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower *in the terms and conditions of employment*." 15 U.S.C. § 78u-6(h)(1)(A). Counsel and Livevideo could not have reviewed this statute and reached a good-faith conclusion that it supported a cause of action on the basis of the allegations in the Operative Complaint, which, while recounting Greenspan's employment at "eUniverse" and "Intermix," makes no mention of Paramount Global (or any other defendant) employing Greenspan. Nor does any of the alleged discrimination in any way relate to the "terms and conditions" of his "employment."[13]

The manifest failure to conduct any reasonable investigation into the viability of the federal claims warrants sanctions. Sanctions are warranted where, as here, a party pleads "obviously inapplicable" claims. *Lipin*, 573 F. Supp. 2d at 844 (finding sanctions warranted where the plaintiff's pleadings "recite lists of alleged causes of action, generally without connection to any specific factual allegations" and "[m]any of these causes of action are obviously inapplicable"); *see also Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660–61 (S.D.N.Y. 1996) ("[W]here claims are so far deficient in alleging statutory requirements as in the present case, whether the violation is deliberate or merely the result of extraordinarily shoddy research, the filing

---

[13]    Greenspan is undoubtedly familiar with the requirements of this statute, having applied for a whistleblower award under the Dodd-Frank Act from the SEC, which the SEC denied and which Greenspan unsuccessfully appealed to the Ninth Circuit. *Greenspan v. SEC*, 727 F. App'x 381, 381–82 (9th Cir. 2018).

warrants the imposition of sanctions."), *aff'd*, 113 F.3d 1229 (2d Cir. 1997); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 460 (S.D.N.Y. 2023) ("The filing of papers without taking the necessary care in their preparation is an abuse of the judicial system that is subject to Rule 11 sanction.").

The baseless and bad-faith nature of these claims is all the more obvious because they were asserted ***after*** the Court noted that, on the face of Livevideo's original complaint, there was no federal subject matter jurisdiction. *See* Dkt. 15. Instead of reevaluating its choice of forum, Livevideo responded by adding frivolous federal claims, which relied on new factual allegations not pleaded in the original complaint. *See* Compl. ¶¶ 104–32. Livevideo has failed to offer any "colorable argument to support th[e] Court's exercise of [subject matter] jurisdiction," despite the Court's direct orders to do so. *See Lipin*, 573 F. Supp. 2d at 844. Ultimately, these claims are mere attempts to manufacture subject matter jurisdiction, which is independently sanctionable. *See, e.g.*, *LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 436 (S.D.N.Y. 1995) (imposing sanctions for "improperly invoking the court's subject matter jurisdiction" by "attempt[ing] to gain a foothold in federal court with objectively unreasonable federal claims").

The Court should sanction Livevideo and Constants because they have improperly invoked this Court's subject matter jurisdiction in an apparent effort to waste the parties' and Court's time and resources on this frivolous matter.

## 2. Livevideo's State Law Claims Are Likewise Frivolous

Livevideo's state law claims are also frivolous. Its unjust enrichment and unfair competition claims fail because the Operative Complaint does not allege that any of the Defendants or Paramount Global received anything of value from Livevideo—a required element of both claims. *See, e.g.*, *Farina v. Bastianich*, 116 A.D.3d 546, 548 (1st Dep't 2014) ("To state a cause of action for unjust enrichment, a plaintiff must demonstrate that (1) defendant was enriched (2) at plaintiff's expense, . . . ."); *Miller v. Walters*, 46 Misc. 3d 417, 426–27 (N.Y. Sup. Ct., N.Y.

Cnty. 2014) (to state an unfair competition claim for misappropriation, "a plaintiff must demonstrate that it had compiled information used in its business that provided an opportunity to obtain a competitive advantage and that a competitor misappropriated it").

Similarly, Livevideo's claim for tortious interference with business relations cannot stand because the Operative Complaint does not plausibly allege that Livevideo had a business relationship with Paramount Global, NAI, or any other relevant entity. *See Waldbaum v. Laufer Delena Cadicina Jensen & Boyd, LLC*, No. 18-cv-4225, 2019 WL 4735386, at *5–6 (S.D.N.Y. Sept. 27, 2019). To the contrary, the Operative Complaint alleges that Paramount Global repeatedly ***ignored*** Livevideo's supposed attempts to engage in commercial discussions and had no interest in forming such a relationship. *See* Dkt. 35 ¶¶ 29–34.

And finally, as this Court has already explained, Livevideo's claim for aiding and abetting breach of fiduciary duty is facially inadequate. Dkt. 15 at 2. The Operative Complaint does not plead that Livevideo was a stockholder of, or had any fiduciary relationship with, any relevant entity, or that Livevideo otherwise has standing to bring such a claim. *See Mohinani v. Charney*, 208 A.D.3d 404, 405 (N.Y. App. Div. 1st Dep't 2022); *In re Platinum-Beechwood Litig.*, 400 F. Supp. 3d 2, 5 (S.D.N.Y. 2019).

Because "even a cursory examination of the requirements for bringing suit under" any of Livevideo's state law claims "would have revealed the impossibility of the claim[s'] success," Livevideo's myriad complaints are each "objectively unreasonable and therefore constitute[] a Rule 11 violation." *Katzman*, 167 F.R.D. at 660–61.

### 3. Livevideo and Constants Continued to Prosecute the Action Despite Clear Warnings from the Court

Livevideo and Constants continued to press these claims even after the Court repeatedly noted their deficiencies and expressly warned that continuing to assert them could be sanctionable.

*See, e.g.*, Dkt. 15 at 2 (discussing inadequacy of aiding and abetting fiduciary duty claim); Dkt. 47 at 1–2 nn.1–2 (discussing inadequacy of CFAA and Dodd-Frank Act claims).[14]  Rather than respect these warnings, Livevideo and Constants have reaffirmed their sanctionable claims, maintaining them in later-filed complaints, *see, e.g.*, Dkts. 26–27, 34–35; attempting to serve Defendants, Dkts. 56, 59, 115–17; seeking meritless defaults against the Defendants, Dkts. 54–63, 92–108, 113–117; opposing setting a default aside, Dkt. 67; and seeking reconsideration of the decision setting the default aside (including a request to enter a $2.2 billion default judgment), Dkts. 70–72, 85–86.

Livevideo's decision to reaffirm and pursue these claims after ample notice that they were invalid independently warrants sanctions.  *See, e.g.*, *Dimitri Enters.*, 2022 WL 5237811, at *2 (noting that obligations under Rule 11 to assess legal merits of claims apply to "reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."); *McLoughlin v. Altman*, No. 92-cv-8106(KMW), 1995 WL 640770, at *4 (S.D.N.Y. Oct. 31, 1995) (imposing monetary sanctions, in part, because the plaintiff continued to press frivolous claims despite "the court explicitly caution[ing] plaintiff to review Rule 11 in the context of this claim" and the "defendants' request that he voluntarily dismiss the complaint in light of Rule 11").

---

[14]     Livevideo made an empty gesture towards addressing these concerns in its untimely motion for reconsideration, which was filed months after the Court first directed Livevideo to establish that its federal claims were not "futile."  *See* Dkt. 70-2 at 13.  There, Livevideo claims that it has standing to pursue a Dodd-Frank Act claim because Greenspan somehow assigned his individual claim to Livevideo.  *Id.*  Even if this assertion were credited, it would still fail because the Dodd-Frank Act expressly and separately requires that the private action be brought by "an individual," not entities taking assignment from individuals.  15 U.S.C. § 78u-6(h)(b)(i).  It also ignores the Court's warning that the "individual" in question must suffer retaliation from its "employer," along with the additional dispositive issues the Court has raised regarding Livevideo's other claims.  *See* Dkt. 46 at 1 nn.1-2.

## B. The Action Was Brought to Harass the Defendants and Continue Greenspan's Misguided Litigation Campaign

The inescapable inadequacy of Livevideo's claims underscores the true purpose behind this action—"to harass, cause unnecessary delay, or needlessly increase the cost of litigation" for NAI in violation of Rule 11(b)(1). The Court can and should infer such improper purpose from the fact that "the action is completely without merit" and Livevideo and Constants were repeatedly made aware of this fact. *Mata*, 678 F. Supp. 3d at 462; *see also Lipin*, 573 F. Supp. 2d at 844 (finding improper purpose in violation of Rule 11(b)(1) where the plaintiff "persists in pursuing claims similar or identical to those that have been previously rejected without addressing the grounds for rejection").

Additionally, direct evidence demonstrates that Livevideo is bringing these claims "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Greenspan is a serial litigant who uses court filings to air personal grievances and harass perceived enemies. As discussed above, Greenspan has been sanctioned for being a "vexatious litigant" based on his yearslong campaign to relitigate the 2005 Intermix sale. *IAC I*, 2016 WL 5724972, at *2–3. This action appears to be only the latest example of Greenspan attempting to keep that controversy alive by injecting his stale grievances into high-profile transactions and litigations. *See, e.g.*, Compl. ¶¶ 30–34, 86; Lovell Decl. Ex. 1. Greenspan has in fact attempted to leverage the pendency of this litigation to intervene in the regulatory proceedings related to the merger of Skydance Media and Paramount Global in order to harass individuals he believes have slighted him. Dkt. 68 at 2 n.1.

The Complaint itself shows that this action is an effort to settle old grudges against the Defendants and Paramount Global, which would allegedly not produce movies and other "IP" about various alleged events from Greenspan's business career. *See* Compl. ¶¶ 30–34, 86. It is

also noteworthy that, out of all the individuals involved in the merger of Skydance Media and Paramount Global, Greenspan singled out as defendants a lawyer and a former special committee member with whom he had an axe to grind from their alleged involvement in prior litigation with him. *See* Compl. ¶¶ 61–67 (detailing Ms. Varney's alleged involvement with the Intermix-News Corporation merger); Compl. ¶¶ 81–83, 106–18 (detailing Ms. Seligman's alleged involvement in dispute with Greenspan's former company). Seeking to harass former litigation adversaries is not a proper use of the court system.

## II. THIS COURT ALSO SHOULD SANCTION LIVEVIDEO AND CONSTANTS PURSUANT TO ITS INHERENT POWERS BECAUSE OF THEIR VEXATIOUS BEHAVIOR AND DISHONESTY

Beyond filing a frivolous complaint, Livevideo and Constants' conduct throughout these proceedings can only be understood as attempts to cause unnecessary delay and impose costs on defendants, which warrants sanctions under the Court's inherent powers. *See Bowler v. United States Immigr. & Naturalization Servs.*, 901 F. Supp. 597, 605 (S.D.N.Y. 1995) (noting that inherent powers and § 1927 sanctions are focused on "a course of conduct" rather than "particular papers"). The standard for imposing sanctions under inherent powers is nearly identical to the standard for requesting fee-shifting against counsel under § 1927.[15] *See United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018). The Court's inherent powers "derive[] from a court's need to manage its affairs so as to achieve an orderly and expeditious resolution of cases." *Bowler*, 91 F. Supp. at 605; *see also Wilson v. Pasquale's DaMarino's, Inc.*, No. 10-cv-2709(PGG), 2013 WL 1195603, at *5 (S.D.N.Y. Mar. 25, 2013) ("[F]ederal courts have the

---

[15] Given the similarity in standards, case law applying § 1927 offers helpful guidance. However, NAI recognizes that significant time and effort spent dealing with both Constants' and Livevideo's behavior in this case has fallen on the Court, and so NAI does not seek cost-shifting or attorneys' fees under Rule 11 or § 1927. At this time, NAI only seeks sanctions of sufficient severity to deter Livevideo's continued harassment, but reserves the right to seek additional sanctions if this vexatious conduct persists.

inherent power to sanction a party for conduct that constitutes an abuse of the judicial process."). It can also serve as an alternative to contempt powers where a party commits a fraud on the court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (noting exercise of "court's inherent power to police itself" is appropriate where "a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled"). Imposing sanctions under these powers requires showing "clear evidence that (1) the offending party's claims were entirely meritless, and (2) the party acted for improper purposes." *Gagasoules v. MBF Leasing LLC*, 286 F.R.D. 205, 216 (E.D.N.Y. 2012). This is a higher bar than Rule 11, but the conduct of Livevideo and Constants easily clears it.

### A. Greenspan Has a History of Vexatious Litigation

As detailed above, Greenspan and his affiliated entities[16] have a well-documented history of vexatious litigation conduct, including being specifically adjudged a vexatious litigant for behavior similar to the conduct in this matter. *See IAC I*, 2016 WL 5724972, at *2–3. Specifically, Greenspan files frivolous cases, fails to comply with deadlines or to otherwise prosecute his claims until they are or are in danger of being dismissed, and then files a flurry of papers to keep the action (and defendants' costs) going. *Id.* (finding Greenspan acted in "subjective bad faith" in filing sixteen motions after dismissal for failure to prosecute); *see also News Corp.*, 2016 WL 74921, at *1 & n.1 (dismissing Greenspan's complaint for failure to respond to motion to dismiss and noting failure "cannot be attributed to a lack of knowledge or will to file in this Court" given

---

[16]      As noted, Livevideo was established in April 2023. *See supra* at 2. It is not clear that it has any other employees or has engaged in any business other than enabling Greenspan's hobby of pursuing vexatious litigation. *See, e.g.*, Dkt. 35-1 at 3, 43; *cf. United Computer Sys., Inc. v. AT & T Corp.*, 107 F. App'x 818, 820 n.3 (9th Cir. 2004) (declaring both the plaintiff-company and the company's attorney vexatious litigants because the attorney "is not only [the company's] attorney, but its sole owner and officer," and he "so dominates and controls [the company] that there is no longer any separation between the conduct of the individual and the corporation"). Therefore, the Court should consider Greenspan's litigation track record in assessing sanctions.

the "droves" of motions he previously filed). Despite being sanctioned in 2016, Greenspan has continued this behavior unabated, most recently by filing the three New Jersey actions directed to the same controversy. *See* Lovell Decl. Exs. 2–4.

Greenspan has also repeatedly undermined the judicial process by impersonating, deceiving, or undermining his counsel. *See* Lovell Decl. Exs. 8–11, 13; *IAC II*, 2016 WL 9185281, at *2. While Constants has enabled Greenspan's vexatious litigation conduct, his admission that he has not read or reviewed filings in this case, Dkt. 90 at 22, raises concerns that it is Greenspan who has been blanketing the docket with frivolous filings.

**B.    Livevideo and Constants' Actions in this Case Make Clear Their Intent to Willfully Multiply the Proceedings and Cause Unnecessary Expense to Defendants**

Both Livevideo and Constants have unfortunately followed the same playbook here. Livevideo has continuously ignored this Court's orders and deadlines and filed and refiled motions and other papers to keep this action alive. *See, e.g.*, Dkt. 45 (requesting *ex post facto* permission to file second amended complaint); Dkt. 48 (noting Livevideo failed to respond to court's invitation to seek leave to amend complaint).

This is most clear in Livevideo's actions since attempting to serve the Defendants. Not only did Livevideo seek a default against NAI based on service of what it knew was a rejected SAC, Dkt. 69 at 2, it attempted to conceal its defective service in its filings thereafter by referring to service of "*an* amended complaint." *See, e.g.*, Dkt. 60 at 2; Dkt. 62 ¶ 4. Livevideo's reaction to this flaw being exposed has clearly been to delay dismissal of this action. First, Livevideo opposed NAI's motion to set aside the default, despite admitting it served the incorrect complaint. Dkt. 67. Then, rather than accept the Court's invitation to move for an extension and re-serve, Livevideo ignored the Court's deadline and filed a late and frivolous motion for reconsideration. Dkt. 70. When faced with a hearing to address its failure to serve the Defendants or ask for an

extension, Livevideo responded (as Greenspan has in the past) with a flurry of late and invalid motions, including a motion to reconsider the denial of its motion to reconsider. Dkts. 79–86; *see Sheet Metal Workers' Nat'l Pension Fund v. Amodeo*, No. 09-0121, 2016 WL 3080807, at *23 (E.D.N.Y. May 27, 2016) ("Acts that, under the 'bad faith' test, would justify sanctions under § 1927 include: resubmitting a motion that had previously been denied; bringing a motion based on 'facts' the opposite of which were previously found by the court; . . . [and] continually engaging in obfuscation of the issues." (cleaned up)).

Following a conference where the Court explained that service against Ms. Redstone was not proper, with which Constants agreed, Livevideo remarkably requested a default against Ms. Redstone. Dkt. 90 at 7. Livevideo filed an almost identical affidavit of service for Ms. Redstone as it had for NAI (two months prior), but notably absent was the admission that the inoperative second amended complaint at Docket Number 32 was served. *See* Dkt. 79; *see also Hong v. Mommy's Jamaican Mkt. Corp.*, No. 20-cv-9612, 2024 WL 3824394, at *15 (S.D.N.Y. Aug. 14, 2024) ("The submission of false and misleading statements to the court seriously impedes the truth-finding process."). That affidavit not only attempted to mislead the Court, but to cause delay and require the Defendants to engage in another round of briefing to yet again establish something this Court has already ruled on three times—Livevideo served the incorrect complaint. Dkts. 69, 74, 90; *cf. Vacco v. Operation Rescue Nat.*, 80 F.3d 64, 72 (2d Cir. 1996) (affirming district court's imposition of § 1927 sanctions where an attorney "insisted on viewing an entire hour-length videotape" during a contempt hearing "even though there was no relevant matter on the tape that was not cumulative of its first fifteen minutes").[17]

---

[17] Livevideo also filed proofs of service and applications for default on Ms. Seligman and Ms. Varney ***over a month*** after they allegedly served them. *See, e.g.*, Dkts. 80–81, 92–23.

**C.     Greenspan's Apparent Impersonation of Constants, and Constants' Continued Enabling of Greenspan, Are the Epitome of Bad Faith**

Finally, the Court should exercise its inherent powers to impose sanctions because Constants has allowed a non-lawyer, almost certainly Greenspan, to make filings in this Court under his name.  Given Livevideo's and Constants' continued evasiveness,[18] it is difficult to establish exactly which actions Constants, Greenspan, or whoever else is involved in the prosecution of this frivolous case have taken.  What is clear, however, is that Constants has willingly abdicated his "non-delegable responsibility under Rule 11," which is worthy of discipline and sanctions.  *See Amorosa v. Gen. Elec. Co.*, No. 21-cv-3137, 2022 WL 3577838, at *1 (S.D.N.Y. Aug. 19, 2022).

There is strong circumstantial evidence that Greenspan is responsible for the filings in this case, including (1) Greenspan's history of impersonating attorneys; (2) Greenspan's apparent need for secrecy (or at least isolation from liability) as indicated by using a dummy corporation headquartered at a "Virtual Office Address"[19] to prosecute claims, including a cause of action ***expressly limited to individuals***; (3) the fact that Greenspan often proceeds *pro se*, but required counsel in this case given his use of a corporate plaintiff, *see Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983); (4) the use of Constants' credentials to make filings in a different case related to Greenspan, in which Constants has not appeared; and (5) the similarity

---

[18]     When pressed, Constants claimed a "paralegal" had prepared and filed the 106 pages of legal submissions filed in the hours before that show-cause hearing.  Dkt. 90 at 22:20–25.  This contradicts the assertion Constants made that "[t]here's no one else" working in his office when asked why he failed to calendar the February 6 conference.  *Id*. at 5:19–6:2.

[19]     Based on filings in this case, Livevideo, Greenspan, and other entities owned by Greenspan list 244 Fifth Avenue, New York, NY 10001 as their address.  *See, e.g.*, Compl. ¶ 4; Dkt. 35-1 at 3, 8; *see also* Lovell Decl. Ex. 5.  This is the address of a "Virtual Office Address" service that offers "a prestigious location at a competitive price."  *See* NY Mail Homepage, https://nymail.com/ (last visited Dec. 9, 2024).

between the types and tenor of filings in this case and ones Greenspan has admittedly made in his own name, *see e.g.*, Lovell Decl. Ex. 7.

### III. SANCTIONS ON LIVEVIDEO AND CONSTANTS ARE NECESSARY TO DETER SIMILAR VIOLATIONS IN THE FUTURE

Sanctions against Livevideo and Constants are necessary to deter future violations. Under Rule 11(c), sanctions should be tailored to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Similarly, sanctions under the Court's inherent powers are intended "to deter unnecessary delays in litigation" and "limit[] the abuse of court processes." *Prevezon Holdings*, 305 F. Supp. 3d at 478–79.

This Court "has significant discretion in determining what sanctions, if any, should be imposed for a violation." *Lipin*, 573 F. Supp. 2d at 843–44. Under Rule 11, "[a]n attorney may be required to pay a fine, or, in the words of Rule 11, a 'penalty,' to advance the interests of deterrence and not as punishment or compensation." *Mata*, 678 F. Supp. 3d at 466. "Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty." *Celestin*, 2024 WL 4355512, at *9.

NAI defers to the Court's judgment regarding the proper sanctions to be imposed in this case to effect deterrence. Nevertheless, NAI respectfully submits that a substantial monetary sanction, to be paid into the Court, will be necessary to accomplish this purpose. Both Livevideo and Constants have been repeatedly admonished by this Court, to no avail. Indeed, only days after the Court inquired of Constants why he should not be referred to the grievance committee for his conduct to date, Livevideo submitted (under Constants' ECF credentials) further requests for default premised upon (admittedly) deficient service. Clearly, admonishment or even the threat of disciplinary action by the state bar is not sufficient to deter Livevideo's and Constants' problematic

conduct. It is also clear that prior sanctions awards have yet to deter Greenspan from abusing the courts. Accordingly, significant monetary sanctions against both Greenspan and Constants are necessary to deter future harassment. *See Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 290 (2d Cir. 2021) (affirming a sanctions award of $20,000 under Fed. R. Civ. P. 16(f) and, while declining to reach inherent powers and § 1927, noting that "[t]o be sure, the sanction here is modest, in terms of the costs imposed on [the defendant], its lawyers, and the court, all of which were required to spend time sorting out Appellants' falsehoods.").

## CONCLUSION

For the reasons set forth above, this Court should grant NAI's motion for sanctions and impose monetary sanctions against Livevideo and Constants.

Dated: February 26, 2025

**ROPES & GRAY LLP**

By: /s/ *Peter L. Welsh*

Peter L. Welsh
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
peter.welsh@ropesgray.com

Martin J. Crisp
Ani-Rae Lovell
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9821
Fax: (212) 596-9090
martin.crisp@ropesgray.com
ani-rae.lovell@ropesgray.com
*Attorneys for Defendant National Amusements, Inc.*

**CERTIFICATION**

The undersigned hereby certifies, pursuant to S.D.N.Y Local Civil Rule 6.3(c), that the foregoing Memorandum of Law contains 8,675 words exclusive of the caption, table of contents, table of authorities, and signature block.

By: /s/ *Ani-Rae Lovell*
      Ani-Rae Lovell
      1211 Avenue of the Americas
      New York, NY 10036-8704
      Tel: (212) 596-9821
      Fax: (212) 596-9090
      ani-rae.lovell@ropesgray.com


      *Attorney for Defendant National Amusements, Inc.*