UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIVEVIDEO.AI CORP, | 24-CV-6290 (DEH) (BCM) |
| Plaintiff, | |
| -against- | **MEMORANDUM AND ORDER** |
| SHARI REDSTONE, et al., | |
| Defendants. | |

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:**
**DATE FILED: 2/27/25**

**BARBARA MOSES, United States Magistrate Judge.**

On February 12, 2025, the Court held a show-cause hearing to determine whether this action should be dismissed pursuant to Fed. R. Civ. P. 4(m) due to the failure of plaintiff LiveVideo.AI Corp. (LiveVideo) to effect service on any of the defendants within the 90-day period set forth therein, which expired on December 16, 2024. At the conclusion of the February 12 hearing, the Court took the Rule 4(m) issue under submission. Six days later, plaintiff requested the issuance of Certificates of Defaults against defendants Shari Redstone, Christine Varney, and "Monica" Seligman, based on facially defective affirmations of service filed for the first time on the eve of the show-cause hearing.

On February 19, 2025, Ms. Redstone and defendant National Amusements, Inc. (NAI) filed a letter-motion asking the Court "not to enter a default against any of the defendants" pending decision on the Rule 4(m) dismissal. Def. Ltr. (Dkt. 109) at 3. On February 20, 2025, plaintiff filed an opposition letter-brief, arguing, *inter alia*, that it properly served Ms. Redstone on November 6, 2024, by delivering a summons and amended complaint to The Corporation Trust Incorporated (Corporation Trust), which is NAI's agent for service of process – notwithstanding that, during the February 12 hearing, plaintiff agreed, on the record, that this attempt did not constitute "good service" on an individual such as Ms. Redstone. *See* Pl. Ltr. (Dkt. 114) at 1-2. Plaintiff was correct the first time. For this reason, among others, defendants' motion will be granted.

## Background

Plaintiff filed this action on August 20, 2024, against NAI, Ms. Redstone (NAI's President), Ms. Varney (outside counsel to a special committee of the board of NAI's public affiliate Paramount Global, Inc. (Paramount)), and "Monica" Seligman (alleged to be a member of the Paramount special committee). *See* Compl. (Dkts. 1, 12, 13, 34) ¶¶ 5, 7, 8.[1] The Complaint asserted four state-law claims (for unfair competition, tortious interference with business relations, "aiding and abetting breach of fiduciary duty, candor, or breach of duty of loyalty," and unjust enrichment), all arising out of defendants' failure to respond to a series of voicemail messages left for Ms. Redstone by LiveVideo's principal Brad Greenspan in June 2024, followed by a letter on July 5, 2024, offering to enter into negotiations to purchase Paramount. *See id.* ¶¶ 33, 35-38, 40; *id.* Ex. 1. At the time, Paramount was engaged in well-publicized merger negotiations with nonparty Skydance Media, LLC (Skydance). *See id.* ¶¶ 29-30, 32, 43. On July 7, 2024, Paramount and Skydance announced a definitive merger agreement, *id.* ¶ 44; *id.* Ex. 2, valued at approximately $ 8 billion. *See* https://ir.paramount.com/news-releases/news-release-details/skydance-media-and-paramount-global-sign-definitive-agreement.

Plaintiff's theory of liability appears to be that defendants owed LiveVideo a duty to take its overtures seriously, because its offer would have been better for Paramount shareholders than the Skydance merger. *See* Compl. ¶ 53 (alleging that Paramount's directors wrongfully "chose to disregard the Plaintiffs offer" which was "a superior offer in terms of financial benefits for shareholders," and instead "went ahead with the costly and dilutive Skydance deal"). Insofar as the

---

[1] Plaintiff has struggled, throughout this action, to file its pleadings and other papers in compliance with this Court's Electronic Case Filing Rules & Instructions (ECF Rules), frequently undertaking multiple attempts before lodging a document correctly. In the case of its original Complaint, the Clerk found the first three filing attempts deficient (Dkts. 1, 12, 13), and ultimately accepted the fourth (Dkt. 34), despite formatting errors that resulted in the omission of several paragraphs.

record reflects, however, LiveVideo – which was formed by Mr. Greenspan in 2023 – has no assets (other than "proprietary IP," *see* Compl. ¶ 51), no revenue, and no employees apart from Mr. Greenspan himself. In his July 5, 2024 letter, Mr. Greenspan stated that the cash necessary to purchase a controlling interest in Paramount would be obtained from "reliable third parties." Compl. Ex. 1, at 1.[2]

Although the Complaint invoked this Court's federal question jurisdiction, *see* Compl. ¶ 3, it pleaded no federal claims. To the contrary: it clearly alleged that plaintiff LiveVideo and three of the defendants – NAI, Ms. Redstone, and Ms. Varney – were citizens of New York. Compl. ¶¶ 4-7. Consequently, on August 26, 2024, the Court directed plaintiff to show cause why this action should not be dismissed for lack of subject matter jurisdiction. (Dkt. 15.)

### The FAC

In response to the August 26 order to show cause, plaintiff made a series of attempts to file an amended complaint. Most of these attempts (some of them labeled "First Amended Complaint," others labeled "Second Amended Complaint") were rejected by the Clerk as deficient under the ECF Rules. (*See* Dkts. 24, 25, 26, 27, 29, 30, 31, 32.) On September 17, 2024, plaintiff succeeded in filing its First Amended Complaint (FAC) (Dkt. 35), thereby exercising its option to "amend its pleading once as a matter of course." Fed. R. Civ. P. 15(a).

In additional to repleading its state law claims, *see* FAC ¶¶ 56-103, plaintiff added two purported federal claims, pleaded under the "whistleblower" provisions of the Dodd-Frank Wall

---

[2] The Paramount/Skydance merger is still pending. According to Paramount's February 13, 2025 Information Statement/Prospectus on Schedule 14C (available at https://ir.paramount.com/static-files/e67e9926-541c-4d02-bceb-bd4007c3ced9), the transaction is "expected to close in the first half of 2025." Paramount Sched. 14C at 6.

Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6(h)(1)(B)(i),[3] and the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030.[4] Both claims are problematic. *See* nn.3-4, *supra*. Nonetheless, once the FAC was successfully filed, amended summonses were issued as to each named defendant. (Dkts. 40-43.)

On September 24, 2024, plaintiff submitted another "Second Amended Complaint" (Dkt. 44), together with a one-page letter asking the Court to "accept . . . document 44 as appropriate and modify the court documents so that we can serve the Second Amended Complaint[.]" (Dkt. 45.) Construing the letter as a motion to further amend plaintiff's pleading, the Court denied it, without prejudice to plaintiff's right to make a "properly-supported motion for leave to amend pursuant to Rule 15(a)," and directed plaintiff to file any such motion no later than October 3, 2024. 9/26/24 Order (Dkt. 46) at 2. For plaintiff's guidance, the Court pointed out the defects in its two federal claims, *see id*. at 1 nn.1-2, and "remind[ed] plaintiff and its counsel that significant sanctions may be imposed if, *inter alia*, the 'claims . . . and other legal contentions' made in a

---

[3] The whistleblower provisions of the Dodd-Frank Act permit a claim by an "individual" whose "employer" retaliated against him for "providing information to the [Securities and Exchange] Commission" or making other protected disclosures. 15 U.S.C. § 78u-6(h)(1). Plaintiff LiveVideo is neither an individual nor an employee of NAI. Plaintiff attempts to avoid this difficulty by alleging in a footnote that its CEO Greenspan, "has agreed to transfer rights and privileges due or held by the CEO personally to the Plaintiff." FAC ¶ 105 n. 35. Plaintiff fails to allege, however, that *Greenspan* was an employee of NAI at the time of the alleged retaliation (which apparently consisted of not returning Greenspan's voicemail messages or responding to his July 5, 2024 offer letter). *See* FAC ¶¶ 107-10.

[4] To state a private civil claim under CFAA, a plaintiff must plead that the defendant "(1) accessed a 'protected computer'; (2) 'without any authorization or exceeding its authorized access'; and (3) caused 'loss' in excess of $5,000." *Collins v. MCA Receivables, LLC*, 2024 WL 246111, at *8 (S.D.N.Y. Jan. 23, 2024) (quoting *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015)). The only losses compensable under CFAA are those related to "the victim's computer system." *Id*. (quoting *LivePerson*, 83 F. Supp. 3d at 514). LiveVideo does not allege any damage to its computer system (or, indeed, to anyone's computer system). Rather, it alleges that on May 6, 2024, Greenspan sent a "test" email to Paramount's former CEO, Robert Bakish (who left the company in April), and that defendants later "accessed" and read the email. FAC ¶¶ 40, 120-28.

4

pleading are not 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *Id*. at 2 (quoting Fed. R. Civ. P. 11(b)(2)).

Plaintiff never renewed its motion for leave to further amend its pleading. On October 11, 2024, the Court confirmed that the FAC, at Dkt. 35, "remains the operative complaint." (Dkt. 47.)

## **The NAI Default Proceedings**

On December 3, 2024, plaintiff filed an Affirmation of Service, dated November 6, 2024, in which Robert Roberts attested that on November 6, 2024, he served a "federal summons and complaint" on NAI by hand delivery to the offices of Corporation Trust in Lutherville, MD. (Dkt. 49.)[5] On December 9, 2024, plaintiff filed a slightly different Affirmation of Service, bearing the same date, in which Mr. Roberts attested that on November 6, 2024, he served a "Federal summons and amended complaint" on NAI by the same method. (Dkt. 56.) Plaintiff then requested a Certificate of Default as to NAI (Dkts. 57-62), which was issued that afternoon. (Dkt. 63.)

On December 11, 2024, NAI appeared through counsel and moved to set aside the entry of default pursuant to Fed. R. Civ. P. 55(c), arguing – among other things – that plaintiff served the wrong pleading on Corporation Trust, erroneously delivering a copy of an inoperative "second amended complaint" rather than the operative FAC. (Dkt. 65 at 1.)

---

[5] Three weeks earlier, on November 8, 2024, the Clerk of Court received a UPS envelope from "NYU Mail Services" in New York City, containing a paper copy of a similar Affirmation of Service, in which Mr. Roberts stated that on the same date, he served "a copy of summons" on Ms. Redstone by the same method. Because of the irregular manner in which the affirmation was delivered – and because "it seems unlikely that Ms. Redstone was personally served" at the Maryland office of Corporation Trust – the Court "decline[d] to accept the purported Affirmation of Service for filing," and instructed plaintiff's counsel, Alfred C. Constants III, that if he wished to file it, "he must do so electronically under his own ECF credentials." (Dkt. 48.) As discussed in more detail below, it took Mr. Constant three months to respond to that direction.

On December 16, 2024, plaintiff filed an opposition letter-brief supported by a new declaration by Mr. Roberts, dated December 13, 2024, attesting that on November 6, 2024, he "served two packets of court documents" at the Corporation Trust office in Maryland, one of them labelled for NAI. Roberts 12/13/24 Decl. (Dkt. 67 at ECF pp. 3-6) ¶ 4. Roberts further explained that the "amended complaint" he delivered that day bore a "docketing imprint" at the top of every page, reading, "*1:24-cv-06290-DEH-BCM Document 32 Filed 09/13/24.*" *Id.* ¶ 10. Roberts thereby confirmed that, rather than serve the operative FAC (which would have been listed as "Document 35 Filed 9/17/24"), he delivered a copy of the "Second Amended Complaint" uploaded to the Court's electronic docket four days earlier, but never accepted for filing.

On December 18, 2024, the Court granted NAI's application and vacated the default. 12/18/24 Order (Dkt. 69) at 2-3. However, the Court declined NAI's request to dismiss the entire action, pursuant to Fed. R. Civ. P. 4(m), for failure to effect service of process within 90 days of the filing of the operative complaint. The Court explained:

> Although the 90-day period within which plaintiff was required to effect service of process expired on December 16, 2024, *see* Fed. R. Civ. P. 4(m), the Court must, on a showing of "good cause for the failure," extend the time for service "for a reasonable period." *Id.* Any motion to extend the time for service must be filed no later than **January 3, 2025**, and must demonstrate good cause for plaintiff's failure to effect service of process within the time allotted by Rule 4(m).

12/18/24 Order at 3.

January 3, 2025 came and went, but plaintiff did not move to extend the time for service. Instead, on January 13, 2025, plaintiff moved under Fed. R. Civ. P. 59(e) to "modify or alter" the 12/18/24 Order. (Dkt. 70.) Treating the motion as one for reconsideration under Local Civil Rule 6.3, the Court denied it. 1/28/25 Order (Dkt. 74) at 3-7. The Court then directed:

> [Having] failed to effect service of process upon any of the named defendants within the 90-day period set forth in Rule 4(m), and having failed, despite prompting from this Court, to request an extension of its service deadline, plaintiff must SHOW CAUSE on **February 6, 2025 at 11:00 a.m.**, in Courtroom 20A of

the United States Courthouse at 500 Pearl Street, New York, NY 10007, why this action should not be dismissed without prejudice pursuant to Rule 4(m). This in an in-person proceeding. Plaintiff's counsel of record must appear.

*Id*. at 7.

### The Show-Cause Hearing

On the evening of February 5, 2025, attorney Constants advised chambers that he would be unable to appear at the February 6, 2025 show-cause hearing. The Court adjourned the hearing to February 12, 2025. (Dkt. 77.)

On the evening of February 11, 2025 (beginning at 5:19 p.m.), and continuing into the morning of February 12, 2025, plaintiff filed a series of documents, including: (1) an Affirmation of Service dated January 2, 2025, in which Mr. Roberts attests that on November 6, 2024, he served a "Federal summons and amended complaint" on Ms. Redstone by hand delivery to the offices of Corporation Trust in Lutherville, MD (Roberts 1/2/25 Aff.) (Dkt. 79); (2) a Proof of Service dated December 30, 2024, in which Karla Lopez attests that she served a summons and "amended complaint" on "Monica" Seligman that day, by hand delivery to a "mail room clerk" at Paramount's offices in New York City (Seligman Proof) (Dkt. 80); and (3) another Proof of Service dated December 30, 2024, in which Ms. Lopez attests that she served a summons and "amended complaint" on Christine Varney that day, by hand delivery to a "mail room clerk" at the offices of "Cravath" in New York City (Varney Proof) (Dkt. 81). Additionally, plaintiff filed a motion for leave to file a supplemental pleading (Dkt. 82),[6] and a motion for reconsideration of the 1/28/25

---

[6] The motion for leave to file a supplemental pleading was accompanied by the proposed supplemental pleading itself, in which plaintiff proposes to add claims under § 10(b) of the Securities Exchange Act of 1934, SEC Rule 10b-5, and other federal securities laws, on the theory that defendants schemed to artificially inflate the price of Paramount's stock by, *inter alia*, disclosing the pendency of this action but falsely stating in an SEC filing on November 4, 2024, that "the defendants have not been served." Prop. Supp. Pl. (Dkt. 84) ¶¶ 153-54. This statement was false, according to plaintiff, because *two days later*, on November 6, 2024, "legal service of process was *successfully completed* on NAI through its registered Maryland agent, Corporation

Order (which denied plaintiff's prior motion for reconsideration of the 12/18/24 Order). (Dkt. 85.) The motion papers all bore the typed signature of Mr. Constants, NAI's sole counsel of record in this action, and were e-filed under his ECF credentials.

Mr. Constants appeared as required on February 12, 2025. During the show-cause hearing, he acknowledged that he did not submit the original (hard-copy) Affirmation of Service on Ms. Redstone that was received by the Clerk via UPS on November 8, 2024. *See* 2/12/25 Tr. (Dkt. 90) at 6:21-7:12. Asked who sent that document to the Court, Mr. Constants replied, "I have no idea." *Id*. at 7:21-22*; see also id*. at 8:3 ("I know I did not send it.").[7]

As to the substance of the November 6, 2024 service attempt on Ms. Redstone, Mr. Constants agreed with the Court that it was ineffective:

> THE COURT:        All right. And that purported proof of service said that Ms. Redstone had been served personally at the offices of Corporation Trust in Maryland. Now, you know and I know that she doesn't live there or work there, so that's not good service, is it?
>
> MR. CONSTANTS:   No.
>
> THE COURT:        That is not good service.
>
> MR. CONSTANTS:   No, your Honor, it is not.

*Id*. at 7:13-20.

---

Trust Incorporated ensuring that NAI had actual notice of the pending litigation." *Id*. ¶¶ 137, 156 (emphasis added). The proposed pleading goes on to allege that a default was entered against NAI on December 9, 2024, "reflecting NAI's disregard for its legal obligations." *Id*. ¶ 157. The proposed pleading is electronically signed by attorney Constants and dated February 11, 2025, *see id*. at ECF p. 84 – long after this Court held that service was *not* "successfully completed" on NAI on November 6, 2024, and *vacated* the entry of default against it. However, the proposed pleading does not mention those developments.

[7] Mr. Constants also advised that he did not write, review, or authorize the filing of plaintiff's motion and supporting papers (at Dkts. 85-86) for reconsideration of the Court's order denying its prior reconsideration motion. *See* 2/12/25 Tr. at 21:17-23:7; 24:8-11. Those papers, he said, were written and filed by "[a] paralegal," without any review by counsel. *Id*. at 22:20-23:7; 24:6-7.

Mr. Constants then made an oral motion, pursuant to Rule 4(m), for a *nunc pro tunc* extension of plaintiff's time to effect service on all four defendants. 2/12/25 Tr. at 12:9-16. However, he could not explain why he failed to make that motion by January 3, 2025, as required by the 12/18/24 Order. *Id*. at 13:13-14:12.

The Court denied the oral Rule 4(m) motion "because no showing of good cause has been made," 2/12/25 Tr. at 25:5-7; *see also id.* at 14:13-14, and "reserve[d] judgment on the question whether the case should be dismissed under Rule 4(m)." *Id*. at 25:7-9. Additionally, the Court set a briefing schedule for NAI's planned motion for sanctions pursuant to Rule 11, *see id*. at 24:12-24,[8] stayed briefing on the two motions just filed by NAI, *id*. at 24:25-25:4, and gave plaintiff leave to withdraw those motions by February 14, 2025. *Id*. at 26:8-13. Later that day, the Court issued a written order memorializing its rulings during the show-cause hearing. *See* 2/12/25 Order (Dkt. 87) ¶¶ 1-5. In that Order, the Court also reminded attorney Constants of his Rule 11 obligations, *id.* at 2-3, and warned that should he "again permit the use of his name or ECF credentials to file documents that he did not personally write or review, or that he did not authorize, this Court will not hesitate to refer the matter to the Grievance Committee." *Id*. at 3.

On February 13, 2025, plaintiff withdrew its motion for reconsideration of the Court's order denying its prior reconsideration motion. (Dkt. 88.) It did not withdraw its motion for leave to file a supplemental pleading asserting federal securities law claims.

### The New Default Requests

All was quiet for the next six days. Then, between 10:51 a.m. on February 18 and 2:23 p.m. on February 19, 2025, plaintiff filed (or attempted to file) 18 different requests (some of them

---

[8] NAI advised that it sent plaintiff a Rule 11 "safe harbor" letter on December 30, 2024. 2/12/25 Tr. at 16:17-18.

fragmentary) for Certificates of Default as to defendants Redstone (Dkts. 94-96, 101-02, 107, 113), Varney (Dkts. 93, 99-100, 105-06), and Seligman (Dkts. 92, 97-98, 103-04, 108). All appear to be signed by Mr. Constants (albeit in a variety of typed and handwritten styles, some of them providing inconsistent contact information). As to Ms. Redstone, plaintiff relies on Mr. Roberts' most recent affirmation of service, in which he states that he served Ms. Redstone on November 6, 2024, by personal delivery of a "Federal summons and amended complaint" to Corporation Trust in Maryland. Roberts 1/2/25 Aff. at 1. As to Ms. Varney and Ms. Seligman, plaintiff relies on the Varney Proof and the Seligman Proof, in which Ms. Lopez attests that she served these defendants by delivering the summons and "amended complaint" to mail room clerks at Cravath and Paramount, respectively, on December 30, 2024.

Defendants NAI and Redstone promptly filed the letter-motion now before the Court, asking that the Clerk be directed "not to enter a default against any of the defendants," at least until the Court "has ruled on dismissal under Rule 4(m)." Def. Ltr. at 3. Defendants point out plaintiff's recent acknowledgment that the November 6 service on Ms. Redstone was invalid, and add that the service attempts on Ms. Seligman and Ms. Varney took place after the expiration of the 90-day window for service under Rule 4(m), which this Court declined to extend. *Id*. at 1-2 & n.1.

In its opposition letter-brief, Mr. Constants states that since the February 12 show-cause hearing, he had the opportunity to review Maryland law, and came to the conclusion that the November 6, 2024 delivery to Corporation Trust constituted good service on Ms. Redstone under Md. Code Ann., Corps. & Ass'ns § 1-401(b)(2). Pl. Ltr. at 1-2. Plaintiff adds that defendants "have not met their duty under FRCP 4(d)(1) to avoid unnecessary service expenses," and argues that Ms. Redstone, in particular, "breached this duty by neglecting to respond after November 6, 2024,

not informing Plaintiff about alleged service defects, and hiding [her] intent to challenge service while allowing Plaintiff's expenses to increase." *Id*. at 2.[9]

"Even more problematic," according to plaintiff, is that NAI and Ms. Redstone have "failed to comply with their mandatory disclosure obligations under Federal Rule of Civil Procedure 7.1," which requires that "in an action in which jurisdiction is based on diversity under 28 U.S.C. § 1332(a), a party or intervenor must . . . file a disclosure statement" that names and identifies the citizenship of "every individual or entity whose citizenship is attributed to that party[.]" Pl. Ltr. at 3 (citing Fed. R. Civ. P. 7.1(a)(2)). Thus, according to plaintiff, defendants "deliberately withhold information necessary for Plaintiff and the Court to establish diversity jurisdiction." *Id*.[10]

On February 26, 2025, NAI timely filed its Rule 11 motion, seeking sanctions against LiveVideo and its counsel, Mr. Constants. (Dkt. 120.)

## Analysis

Local Civil Rule 55.1, governing the initial entry of default, provides, in relevant part:

A party seeking entry of default under Fed. R. Civ. P. 55(a) must file:

(1)    a "Request to Enter Default," in a form prescribed by the clerk;

(2)    an affidavit or declaration showing: (a) that the requirements of Fed. R. Civ. P. 4 for service or waiver of service have been satisfied; and (b) that the

---

[9] Rule 4(d)(1) permits a plaintiff to "request that [a] defendant waive service of summons" by sending a specific package of documents to that defendant. If the defendant then "fails, without good cause, to sign and return" the waiver, the plaintiff may recover its "expenses later incurred in making service." Fed. R. Civ. P. 4(d)(2)(A). Insofar as the record reflects, LiveVideo did not request that any defendant waive service in accordance with Rule 4(d).

[10] The FAC, like the original Complaint, relies entirely on this Court's federal question jurisdiction. *See* FAC ¶ 3. Not only is there no mention of 28 U.S.C § 1332(a) anywhere in the FAC; plaintiff concedes that the parties are not diverse. *See id*. ¶¶ 4, 6, 8. Because this is manifestly not a diversity case, the individual defendants – even if properly served and required to respond to the FAC – would have no obligations under Rule 7.1(a)(2). NAI filed its Rule 7.1 statement on February 26, 2025. (Dkt. 119.)

party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend;

(3)    a proposed "Clerk's Certificate of Default," in a form prescribed by the clerk; and

(4)    a certificate of service showing that the foregoing documents have been personally served on, or mailed to the last known residence (for an individual defendant) or business address (for other defendants) of, the party against whom default is sought.

If the mailing is returned, a supplemental certificate must be filed setting forth that fact, together with the reason provided for return, if any.

Local Civ. R. 55.1(a).

Ordinarily, the Clerk determines whether the requirements of the rule are met and, if so, issues the requested Certificate of Default. The defaulted defendant may then move to vacate the entry of default under Fed. R. Civ. P. 55(c), as NAI did in December 2024, and will be entitled to such relief if the Court determines that service of process was ineffective or finds other "good cause." *See* 12/18/24 Order at 2.

Alternatively, the Court itself has authority to grant or – as relevant here – deny a request for the initial entry of default. *See*, *e.g.*, *Hurley v. Myrtle Food & Beverage, Inc.*, 2016 WL 7235805, at *2 (S.D.N.Y. Dec. 14, 2016) (request for default was "formally denied" by court for failure to comply with Rule 55.1). As a matter of sound docket management, the court appropriately denies such a request "when it is apparent that in the exercise of its discretion the default will be set aside on motion." *Betz v. First Credit Servs., Inc.*, 139 F. Supp. 3d 451, 455 (D.D.C. 2015) (quoting *Brown v. Weschler,* 135 F. Supp. 622, 624 (D.D.C. 1955); *see also*, *e.g.*, *Lunsford v. Sanders*, 2018 WL 4208190, at *1 (S.D. Ind. June 18, 2018) ("The court may decline to make an entry of default when it appears that the entry would be set aside on a motion by the defaulted party."); *Higgins v. Dankiw*, 2008 WL 2565110, at *4 (D. Neb. June 24, 2008) (adhering

to prior denial because, among other things, "even assuming the Clerk of Court had entered default, the court would now be deciding whether such default should be set aside.").

In this case, as in *Hurley*, plaintiff has failed to comply with Rule 55.1, warranting the denial of its request for entry of default as to each individual defendant. Moreover, it is far more efficient for the Court to address the sufficiency of service now than to issue Certificates of Default which will inevitably be followed by vacatur motions, thereby multiplying proceedings unnecessarily.

*Ms. Redstone*

As to Ms. Redstone, plaintiff has failed to show "that the requirements of Fed. R. Civ. P. 4 for service or waiver of service have been satisfied," as mandated by Rule 55.1(a)(2). In his own declarations – which are manifestly *not* made on personal knowledge – Mr. Constants states only that "[a]n Amended Complaint signed on September 3, 2024 was properly served on November 6, 2024 under FRCP Rule 4 prior to the service of the original complaint." (*See, e.g.*, Dkt. 113 ¶ 4.) The process server – who does have personal knowledge of the November 6 attempt – attests that on that day he served a "Federal summons and amended complaint" on Shari Redstone by hand delivery to the offices of Corporation Trust. Roberts 1/2/25 Aff. at 1. Mr. Roberts does not further identify the "amended complaint" he delivered.

Service on Ms. Redstone was ineffective for two reasons. First, she was served with the wrong pleading. Although plaintiff obscures this fact in its recent filings, Mr. Roberts previously acknowledged that the document he delivered to on November 6, 2024 was the September 13, 2024 "Second Amended Complaint," which appears at Dkt. 32 but was never accepted for filing, not the September 17, 2024 FAC, which appears at Dkt. 35. Roberts 12/13/24 Decl. ¶ 10.

Second, delivery to Corporation Trust did not constitute good service on Ms. Redstone. Rule 4(e) authorizes service on an individual defendant by personal delivery to an "agent authorized by appointment or by law to receive service of process" for that individual. Fed. R. Civ. P. 4(e)(2)(C). However, the agent must have been "authorized" by the individual defendant, not by a corporate co-defendant with which she is affiliated. *See*, *e.g.*, *Azzarmi v. Key Food Stores Co-operative Inc.*, 2022 WL 884973, at *4 (S.D.N.Y. Mar. 25, 2022) (service on employee of Key Food's authorized agent CSC Corporation Services did not constitute good service on individual Key Food officer Donahue, because "[t]here is no evidence in the record showing that *Donahue* appointed CSC Corporation services as *her* agent for the purposes of accepting service of process"); *Jackson v. Cnty. of Nassau*, 339 F. Supp. 2d 473, 478-79 (E.D.N.Y. 2004) (delivery of summons to attorney Savinetti, who "accepted service of process at the Nassau County Medical Center," was not good service on individual NCMC physician, because there was "no evidence that *Dr. Sabir* ever appointed Savinetti as *his* agent for service of process"); *Jaser v AT&T Servs. Inc.,* 2020 WL 1329151, *2 (N.D. Tex. March 23, 2020) (service on CT Corporation, AT&T's authorized agent, did not constitute good service on individual AT&T employees, because plaintiff did not "show that CT Corporation was authorized to accept service *on behalf of the Employee Defendants*") (all emphases added).[11]

Nor may plaintiff rely on Rule 4(e)(1), which authorizes service on an individual by "following state law . . . in the state . . . where service is made." Under Maryland law, service of

---

[11] Under both federal and New York law, "the designation of an individual to receive service of process must be clear and with the knowledge of the defendant sought to be served." *Jackson*, 339 F. Supp. 2d at 477. Thus, "good-faith reliance on apparent authority suffices for purposes of Fed. R. Civ. P. 4(e)(2)(C) only where the principal has held out another person as possessing certain authority, not where the agent has done so." *Parfitt Way Mgmt. Corp. v. GSM By Nomad, LLC*, 2018 WL 2364287, at *5 n.3 (N.D.N.Y. May 24, 2018) (collecting cases).

process on an individual is made "by serving the individual or an agent authorized by appointment or by law to receive service of process for the individual." Md. Rules 2-124(b). The directors of a Maryland corporation are deemed to have "consented to the appointment of the resident agent of the corporation" as an agent through which they may be served individually, but only with respect to certain civil actions or proceedings "brought in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-102.1(b). This action was brought in New York. Thus, service of process upon Corporation Trust does not constitute service of process upon Ms. Redstone.[12]

Moreover, plaintiff failed to comply with Local Civ. R. 55.1(a)(4), which required it to submit a certificate of service showing that its Request to Enter Default and supporting papers were "personally served on, or mailed to the last known residence (for an individual defendant) or business address (for other defendants) of, the party against whom default is sought." Plaintiff's certificate of service as to Ms. Redstone shows that Mr. Constants mailed the Request to Enter

---

[12] Md. Code Ann., Corps. & Ass'ns § 1-401 is not to the contrary. The purpose of the statute (in combination with the Rules) is to "provide methods which tend to insure the ultimate reception *by the corporation* of actual notice that an action has been filed against *it*." Barbara J. Van Arsdale, et al., *Service of Process on Corporation in Civil Action*, in 6 Md. L. Encyclopedia, Corporations § 201 (2025) (emphasis added). Under the Rules, service on a corporation is made by serving its "resident agent, president, secretary, or treasurer." Md. Rules 2-124(d). Such service may be accomplished either by personal delivery to the agent or officer, Md. Rules 1-121(a)(1), or by certified mail, Md. Rules 1-121(a)(3), addressed to the agent or officer and designated "restricted delivery." *Id.*; *see also Peck v. Leidos, Inc.*, 2022 WL 3043414, at *2 (D. Md. Aug. 1, 2022) (dismissing for insufficient service where plaintiff mailed the summons and complaint to "Leidos" rather than to an authorized agent or officer, and failed to specify "restricted delivery"). Under § 1-401(b)(1), any notice required by law to be "served by personal service on a resident agent or other agent or officer of a Maryland corporation" may instead be served on that corporation "in the manner provided by the Maryland Rules relating to the service of process on corporations," for example, by registered mail to the resident agent or other agent or officer. Under § 1-401(b)(2), "[s]ervice under the Maryland Rules is equivalent to personal service on a resident agent or other agent or officer of a corporation[.]" In other words, the statute confirms that if service *on the corporation* is made by any of the methods permitted by the Rules (for example, by registered mail in compliance with Md. Rules 1-121(a)(3)), it is just as effective as if service *on the corporation* were made by personal delivery to the resident agent, other agent, or officer. Section 1-401 simply does not address service of process on individual defendants.

Default to Corporation Trust, rather than personally serving it on Ms. Redstone or mailing it to her "last known residence" as required. (Dkt. 116.) For these reasons, no Certificate of Default will be issued as to Ms. Redstone.

*Ms. Varney*

As to Ms. Varney, plaintiff has again failed to show "that the requirements of Fed. R. Civ. P. 4 for service or waiver of service have been satisfied," as required by Local Civ. R. 55.1(a)(2). Under New York law, an individual may be served with process by delivery of the summons and complaint to "a person of suitable age and discretion at the actual place of business . . . of the person to be served," provided that the papers are also mailed to that person, by first class mail, in an envelope marked "personal and confidential," within 20 days of the delivery. N.Y.C.P.R.L. § 308(2). Assuming, *arguendo*, that a mail room clerk at Ms. Varney's law firm is a "person of suitable age and discretion" (and that the process sever delivered the FAC, rather than one of plaintiff's rejected filings), the service described in the Varney Proof was nonetheless ineffective under § 308(2) and Rule 4(e)(1) because plaintiff did not follow up with the required mailing.

Moreover, the delivery took place on December 30, 2024, two weeks after the 90-day service period set forth in Rule 4(m) expired. Plaintiff failed (despite prompting from the Court) to make a timely motion to extend that deadline. Thereafter, it failed to show good cause for its belated oral motion for an extension *nunc pro tunc*, which was denied. For this reason as well, the service attempt upon Ms. Varney was ineffective. *See*, *e.g.*, *Mroszczak v. Tate & Kirlin Assocs., Inc.*, 397 F. Supp. 3d 296, 299 (W.D.N.Y. 2019) (holding service ineffective, and denying plaintiff's motion for a default judgment, where process was served "well outside the 90-day limit set forth in Rule 4(m)" and plaintiff "never sought or received an extension of time from the Court for service of process"); *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 434 (S.D.N.Y.

2016) (dismissing under Rule 4(m) where plaintiff failed to serve any defendants within Rule 4(m)'s 90-day window and failed to show good cause for a *nunc pro tunc* extension of his time to do so).

Finally, plaintiff again failed to comply with Local Civ. R. 55.1(a)(4). Mr. Constants mailed the Request to Enter Default and supporting documents to Cravath, rather than personally serving them on Ms. Varney or mailing them to her "last known residence," as required. (Dkt. 117.) Consequently, plaintiff is not entitled to a Certificate of Default as to Ms. Varney.

*Ms. Seligman*

According to Paramount's SEC filings, *Nicole* Seligman served on the Paramount board (and on the special committee considering the Skydance merger), but only until April 4, 2024, when she and three other directors stepped down. *See* Paramount Sched. 14C at 122. Plaintiff, however, named *Monica* Seligman as a defendant, and now seeks the entry of default against her based on a process server's attestation that she delivered a summons and "amended complaint" to a mail room clerk at Paramount's New York offices on December 30, 2024. Seligman Proof at 1.

Once again, plaintiff has failed to show "that the requirements of Fed. R. Civ. P. 4 for service or waiver of service have been satisfied." Local Civ. R. 55.1(a)(2). Any argument that the real Ms. Seligman could be served by delivery to the Paramount mailroom evaporated when she left the Paramount board. As with Ms. Varney, moreover, plaintiff failed to follow up on that delivery by mailing the summons and complaint to Ms. Seligman as required by N.Y.C.P.R.L. § 308(2). Consequently, the service described in the Seligman Proof was ineffective under § 308(2) and Rule 4(e)(1). It was also untimely, for the same reasons discussed above in connection with Ms. Varney. Finally, plaintiff's certificate of service as to Ms. Seligman (Dkt. 115) shows, once against, that plaintiff failed to comply with Local Civ. R. 55.1(a)(4).

17

**<u>Conclusion</u>**

For the reasons set forth above, defendants' February 19, 2025 letter-motion (Dkt. 109) is

GRANTED to the extent that plaintiff's requests for the entry of default as to defendants Redstone,

Varney, and Seligman are DENIED. No Certificate of Default shall be issued as to these

defendants absent further order of the Court.

Dated: New York, New York
       February 27, 2025           **SO ORDERED.**


_____
**BARBARA MOSES**
**United States Magistrate Judge**