THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

LIVEVIDEO.AI CORP
    *Plaintiff,*

vs.

SHARI REDSTONE,
NATIONAL AMUSEMENTS, INC.,
CHRISTINE VARNEY,
MONICA SELIGMAN,

    *Defendant's.*

CIVIL ACTION
C.A. NO. 1:24-CV-06290

_____/

## MEMORANDUM OF LAW IN RESPONSE AND OPPOSITION TO NAI AND SHARI REDSTONE'S MOTION FOR RULE 11 SANCTIONS

Defendant National Amusements, Inc. ("NAI") and Shari Redstone ("Redstone") seek sanctions against Plaintiff Livevideo.AI Corp. ("Livevideo") and its counsel under Rule 11 and the Court's inherent powers, claiming that Livevideo's claims are frivolous and that the litigation was pursued for an improper purpose. NAI's motion should be denied because: (1) Livevideo's claims are supported by reasonable legal and factual bases; (2) Livevideo did not file this action for an improper purpose; and (3) NAI has failed to establish that sanctions are warranted under the Court's inherent powers. (4) NAI and Redstone have contravened the statue's requirements.

NAI's motion represents a transparent attempt to intimidate Livevideo and its counsel through the threat of sanctions, while simultaneously avoiding addressing the merits of Livevideo's claims. The motion is particularly inappropriate given that NAI itself has engaged in procedural misconduct, including failing to comply with its

1

mandatory disclosure obligations under Federal Rule of Civil Procedure 7.1 until February 26, 2025—the same day it filed its sanctions motion—despite having appeared in this action months earlier. The February 26, 2025 FRCP 7.1 filing is defective because it fails to disclose the fact that according to Paramount's own S4 filings and defendant NAI's recent SEC filings (see Exhibit #1)[1], 80% of NAI's stock is owned by another entity which is controlled by an LLC. Therefore NAI's FRCP 7.1 filing contains material omissions and is false when compared to Paramount's SEC filings.

For instance, the most recent fifth amended S4 admits (i) NAI is controlled by another entity and such percentage ownership is greater then the FRCP 7.1 disclosure statement's 10% threshold[2] (ii) the existence of the 80% parent of NAI is necessary to make regulatory filings stating: " Lawrence Ellison, *Sumner M. Redstone National Amusements Part B General Trust (also known as NA Part B General Trust)*, and Skydance filed HSR Act Notification and Report Forms on July 19, 2024 with respect to the Transactions that will bring entities controlled by the Ellison family into collective control of NAI and Paramount while merging Skydance into Paramount."

---

[1] This court may take judicial notice of the SEC and FCC filings attached at Exhibit #1 including
NA Administration, LLC's "Commercial Broadcast Stations Non-Biennial Ownership Report (FCC Form 323)
File Number: 0000245733 Submit Date: 2024-06-03", NA Administrative Trusts' "Commercial Broadcast Stations
Non-Biennial Ownership Report (FCC Form 323) File Number: 0000245734 Submit Date: 2024-06-03",
Sumner M. Redstone National Amusements Part B General Trust's "Commercial Broadcast Stations Biennial
Ownership Report (FCC Form 323) File Number: 0000227410 Submit Date: 2023-11-21",

[2] "NAI is controlled by the Sumner M. Redstone National Amusements Part B General Trust (also known as the NA
Part B General Trust) (the "General Trust"), which owns 80% of the voting interest of NAI. NA Administration, LLC is
the corporate trustee of the General Trust, and is governed by a seven member board of directors, which acts by
majority vote (subject to certain exceptions), including with respect to the NAI shares held by the General Trust.
Ms. Redstone is the Chairperson, CEO and President of NAI, is one of the seven directors of NA
Administration, LLC" (page 18 Pluto Global February 12, 2025 S4, (AMENDMENT NO. 5 TO FORM S-4
REGISTRATION STATEMENT") (Exhibit #1 at 1)

Furthermore, NAI's motion mischaracterizes both the factual record and the applicable legal standards. Livevideo's claims are grounded in well-established legal principles and supported by factual allegations that, if proven, would entitle Livevideo to relief. The Court should deny NAI's motion and allow this litigation to proceed on the merits. This misuse of Rule 11 is in and of itself sanctionable. *See E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) ("[T]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions.")(citations omitted).

Indeed, the Advisory Committee notes point out that Rule 11 should not be used "to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable." *See Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Florida*, 827 F.2d 1454, 1458 (11th Cir. 1987)(affirming the denial of sanctions where the issues were fairly debatable and not easily resolved, and there was no clear binding precedent).

## FACTUAL BACKGROUND

Livevideo is a Delaware corporation established in April 2023. Its CEO, Brad Greenspan, is the former CEO of Intermix Media, Inc., the parent company of the social network Myspace. In June 2024, Mr. Greenspan left voicemail messages for Defendant Shari Redstone regarding a potential acquisition of Paramount Global, followed by a formal letter on July 5, 2024, offering to enter into negotiations to purchase Paramount. At the time, Paramount was engaged in merger negotiations with Skydance Media, LLC. On July 7, 2024, Paramount and Skydance announced a definitive merger agreement valued at approximately $8 billion.

3

Livevideo filed this action on August 20, 2024, asserting claims against NAI, Ms. Redstone, Christine Varney, and Monica Seligman. The original complaint asserted state law claims for unfair competition, tortious interference with business relations, aiding and abetting breach of fiduciary duty, and unjust enrichment. On August 26, 2024, the Court directed Livevideo to show cause why the action should not be dismissed for lack of subject matter jurisdiction.

In response, Livevideo filed a First Amended Complaint ("FAC") which added federal claims under the Dodd-Frank Wall Street Reform and Consumer Protection Act and the Computer Fraud and Abuse Act ("CFAA"). On September 24, 2024, Livevideo attempted to file a Second Amended Complaint, but the Court denied leave to amend without prejudice to Livevideo's right to make a properly-supported motion for leave to amend.

On November 6, 2024, Livevideo served NAI and Ms. Redstone through The Corporation Trust Incorporated in Maryland. On December 9, 2024, the Clerk entered a default against NAI. NAI moved to set aside the default, arguing that Livevideo had served the wrong pleading. On December 11, 2024 the Court reversed the Federal and State evidentiary obligations and ordered the Plaintiff to submit another process server affidavit with more detail. On December 18, 2024, the Court granted NAI's application and vacated the default, but declined Livevideo's request to dismiss the entire action for failure to effect service of process within 90 days of filing the operative complaint. The Court gave Livevideo until January 3, 2025, to move to extend the time for service.

Livevideo did not move to extend the time for service by January 3, 2025. Instead, on January 13, 2025, Livevideo moved to "modify or alter" the December 18 Order. The Court denied that motion and directed Livevideo to show cause why the

action should not be dismissed pursuant to Rule 4(m). At the February 12, 2025 show-cause hearing, Livevideo's counsel made an oral motion for a nunc pro tunc extension of time to effect service, which the Court denied. The Court reserved judgment on whether the case should be dismissed under Rule 4(m).

On February 18 and 19, 2025, Livevideo filed requests for Certificates of Default as to defendants Redstone, Varney, and Seligman. On February 27, 2025, the Court denied these requests, finding that service was ineffective as to all three defendants.

On December 30, 2024, NAI and Shari Redstone served a Rule 11 "safe harbor" letter on Livevideo's counsel, demanding that Livevideo withdraw "Dkt. 35" and enter a voluntary dismissal with prejudice as to the NAI Defendants by January 20, 2025. The safe harbor letter focused primarily on alleged jurisdictional defects and the purported frivolousness of Plaintiff's claims, while the current motion emphasizes alleged litigation misconduct and vexatious behavior. This bait-and-switch tactic violates the purpose of the safe harbor provision, which is to give the non-moving party fair notice of the specific conduct alleged to violate Rule 11.

These procedural defects warrant denial of NAI's motion. These include the fact that the December 30, 2024 "safe harbor" letter was from Redstone and NAI while the motion for sanctions is only brought by NAI. The reasons for Redstone attempting to withdraw her motion for sanctions have not been disclosed and would likely be dispositive including providing evidence the original "safe harbor" letter was defective.

Other obvious defects include that the December 30, 2024 letter falsely states

i. "Plaintiff has never properly responded to that order, as the Court noted in its September 11, 2024 order (Dkt. No. 28)." This is false because it omits the fact the Plaintiff responded fully thru Dkt. No. 33 which is a reply to the Magistrate's Orders including the September 11, 2024 order.

ii. "You again failed to respond to the Court's order. Dkt. No. 47. " This is false because there was no requirement to respond since the Plaintiff had decided not to pursue attempting to file a motion for leave to amend the complaint with the Dkt. No. 44 Second Amended Complaint.

iii. Defendant's claim "You also claimed to have served Ms. Redstone with that same improperly filed complaint in a manner that the Court found to be obviously suspicious. See Dkt. No. 48 " as a basis that the Plaintiff acted in a misleading fashion became moot as a result of the court denial of Dkt No. 48 followed by the Plaintiff's submission of Dkt No. 79 which the court accepted and did not find "obviously suspicious" or "suspicious".

iv. Defendant's claim "you did not receive an amended summons to serve that version of the complaint," is irrelevant because ECF Rule 15.2 clearly explains an amended summons is only required when and if the Plaintiff had added new defendants in an amended pleading.[3]

iv. The defendant's claim "The Complaint does not plead that Livevideo was a stockholder in Paramount Global" is misleading because LiveVideo pleads that it is

---

[3] 15.2 How are summonses issued when electronically filing an amended pleading?
If a party is added when electronically filing an amended pleading, a summons should be requested by electronically filing a REQUEST FOR ISSUANCE OF SUMMONS and attaching a proposed summons in PDF/A format.
... A summons is not necessary when no party is added to a case."

a stockholder of Paramount Global in Plaintiff's pending motion for leave to supplement the complaint.

v. The December 30, 2024 letter demands "if Livevideo does not withdraw the operative complaint in this Action (the "Complaint"), Dkt. No. 35, before January 20, 2025. ", yet the Plaintiff served the defendants with Dkt. No. 32 which is the only September 3, 2024 signed First Amended Complaint submitted at the direction of the Magistrate and on the date, September 13, 2024, which the Magistrate's September 11, 2024 OSC required. Therefore, the Plaintiff clearly cannot withdraw a pleading it did not serve on the defendant. In addition, since the court ordered the Plaintiff to "re-file" the Dkt. 32 amended complaint, its clear that the court intended the amended complaint filed as Dkt 32 to be the operative complaint. Therefore the December 30, 2024 Rule 11 Letter is defective on its face because Dkt 35 cant be withdrawn because as a result of the Plaintiff erroneously in attempting to re-file Dkt 32's amended complaint instead filing for the first time at Dkt 35, a new different version of the amended complaint, then Dkt 35 is a second amended complaint that the Magistrate was required to deny for the same reasons the Magistrate denied the proposed second amended complaint filed as Dkt. 44, or alternatively the Magistrate should have amended Dkt 35 to conform to the Dkt 33 Reply to OSC amendments cross referenced to Dkt 32.

On February 26, 2025, NAI filed its motion for sanctions under Rule 11, Rule 12(b)(6) and the Court's inherent powers.

## ARGUMENT

### I. LEGAL STANDARD FOR RULE 11 SANCTIONS

Rule 11 sanctions are "a drastic remedy that should be imposed with caution." *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994). Courts must resolve all doubts in

favor of the signer of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993). The Second Circuit has emphasized that Rule 11 sanctions should be imposed only where it is "patently clear that a claim has absolutely no chance of success." *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1005 (2d Cir. 1988).

Rule 11 provides that by presenting a pleading to the court, an attorney certifies that: (1) it is not being presented for any improper purpose; (2) the claims are warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law; and (3) the factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for investigation or discovery. Fed. R. Civ. P. 11(b).

The standard for determining whether a pleading violates Rule 11 is objective unreasonableness. *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012). However, sanctions are not appropriate merely because a claim is ultimately unsuccessful. Rather, the claim must be so lacking in merit that no reasonable attorney could have believed it was viable. *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011).

In addition, defendants filed pursuant to Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007). A plaintiff is not required to provide "detailed factual allegations" in the complaint but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "factual allegations must be enough to raise a right to relief above the speculative level." Id. On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint or incorporated in it by reference, matters of

which a court can take judicial notice, or documents that the plaintiff knew about and relied upon bringing the suit. *See Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 152-53 (2d Cir. 2002). The court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F. 3d 87, 98 (2d Cir. 2007). To the extent that the Court wishes to dismiss the complaint, the plaintiff should have 30 days to file an amended complaint.

## II. LIVEVIDEO'S CLAIMS ARE NOT FRIVOLOUS

NAI contends that Livevideo's claims are "patently invalid and legally frivolous." This assertion is incorrect. While the Court has expressed concerns about certain aspects of Livevideo's claims, those concerns do not render the claims frivolous for purposes of Rule 11.

### A. Livevideo's Federal Claims Are Not Frivolous

#### 1. The Dodd-Frank Act Claim

NAI argues that Livevideo's Dodd-Frank Act claim is frivolous because the statute provides a cause of action only to "individuals" who are "employees," not to corporations. However, Livevideo has a colorable argument that it has standing to pursue this claim based on the assignment of rights from its CEO, Mr. Greenspan, to Livevideo. The FAC specifically alleges that Mr. Greenspan "has agreed to transfer rights and privileges due or held by the CEO personally to the Plaintiff." FAC ¶ 105 n.35.

While the Court has expressed skepticism about this theory, the question of whether rights under the Dodd-Frank Act's anti-retaliation provision can be assigned is not settled law in this Circuit. Livevideo's argument that such rights are assignable

represents a good faith attempt to extend existing law, which is protected under Rule 11. See Fed. R. Civ. P. 11(b)(2) (permitting claims based on "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law").

Moreover, NAI incorrectly states that Livevideo cited 18 U.S.C. § 1513(e) as the basis for its Dodd-Frank Act claim. While the FAC does reference this provision, it also clearly invokes the Dodd-Frank Act's anti-retaliation provisions. The reference to § 1513(e) does not render the entire claim frivolous, particularly given that § 1513(e) is referenced in the Dodd-Frank Act itself. See 15 U.S.C. § 78u-6(h)(1)(A)(iii).

### 2. The CFAA Claim

NAI argues that Livevideo's CFAA claim is frivolous because Livevideo does not allege damage to its computer system. However, the FAC alleges that defendants gained unauthorized access to Livevideo's proprietary email tracking system, which contained valuable business information. FAC ¶¶ 119-32. The FAC further alleges that this unauthorized access caused Livevideo to lose a competitive advantage in its efforts to acquire Paramount. Id.

While the Court has noted that "costs associated with lost competitive advantages, profits or revenue cannot support a CFAA claim," this interpretation of the CFAA is not universally accepted. Some courts have adopted a broader view of compensable damages under the CFAA. See, e.g., EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 585 (1st Cir. 2001) (recognizing that loss of business opportunities can constitute "loss" under the CFAA). Livevideo's CFAA claim represents a good faith attempt to advance this broader interpretation of the statute.

Furthermore, the FAC alleges that Livevideo's email tracking system was compromised, which could constitute damage to a computer system. The fact that

Livevideo did not attach "Exhibit #11" to the FAC does not render the claim frivolous; it merely means that Livevideo would need to produce this evidence during discovery.

### 3. **The Court stayed our motion filed on February 12, 2025**

On February 11, 2025, plaintiff had filed a motion for leave to supplement pursuant to Rule 15(d) of the Federal Rules of procedure. On February 12, 2025, the Court stayed the motion, which contained a supplemental amendment to the complaint in, or about 36 pages, which included:

1. Defendants' December 16, 2024, amended S-4 filing that falsely stated no defendant had been served, when at least one defendant had been properly served during November 2024;

2. NAI's December 11, 2024 court appearance confirming its awareness of service and the default;

3. Multiple subsequent S-4 amendments perpetuating these misrepresentations.

4. Evidence of resulting shareholder losses, including an 8.4% decline in Paramount's stock price (Dkt. 84);

5. The Delaware Chancery Court's January 29, 2025, decision in State of Rhode Island v. Paramount Global finding "a credible basis to suspect that Redstone torpedoed the Company-level Skydance Deal because it would not provide her with the benefits she wanted" (see Dkt. 84, Ex. 1);

6. Defendants' February 6, 2025, amended S-4 that continues to misstate the litigation status.

The supplement amendment focuses on adds five federal claims in this matter and should be entertained by the court as to whether the plaintiff has established federal authority. FRCP Rule 15(d) states "The court may permit supplementation even though the original pleading is defective in stating a claim or defense." which is why the supplemental complaint must be added and defendants can then file a new safe harbor rule 11 motion for sanctions if they feel there is still a lack of Federal causes of action.

### B. Livevideo's State Law Claims Are Not Frivolous

#### 1. Unfair Competition and Unjust Enrichment

NAI argues that Livevideo's unfair competition and unjust enrichment claims fail because the FAC does not allege that any of the defendants received anything of value from Livevideo. This argument mischaracterizes the FAC, which alleges that defendants misappropriated Livevideo's business opportunity to acquire Paramount. FAC ¶¶ 52-53, 86. The FAC further alleges that defendants were unjustly enriched by securing a merger agreement with Skydance on terms less favorable to Paramount shareholders than those Livevideo would have offered. Id.

These allegations, if proven, could support claims for unfair competition and unjust enrichment under New York law. See *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476-77 (2007) (unfair competition encompasses "the misappropriation of the fruits of another's labor and skill"); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (unjust enrichment requires only that defendant was enriched at plaintiff's expense and that equity and good conscience militate against permitting defendant to retain what plaintiff seeks to recover). The FACS states the business relationship with Paramount:

- The Plaintiff had a pre-existing business relationship with Paramount prior to the January 2, 2024 formation by the Board of Directors of a Special Committee. FAC 84.

- Plaintiff contacted Paramount publishing arm, Simon & Schuster July 17, 2023 thru their Senior Vice President Jennifer Bergstrom and made a "proposal for a strategic digital media AI partnership." FAC 29.

- On August 8, 2023, LiveVideo. AI emailed Paramount's CEO with a new idea as part of a planned stratagem to begin development of joint IP LiveVideo.AI had acquired from its CEO into valuable film and television assets. " FAC 30.

- August 8th 5:30PM email points out, Paramount is significantly involved in shared historical events involved in the true story of Myspace.com in 2005 during a critical juncture in the historical story.

  Subject: Congrats! Your edgy inspiring 2005 media fighter role made cut!

  The kid stays in the movie."..."Whats better then "The Social Network2"? "Myspace: End ofEUniverse".(working title) ""premieres Xmas 2025 .

  "SceneTitle(you will be forced to select actor to play your role)" "September 2005, BG announces $13.50 per share counter-bid (which Viacom is secretly financing)...to keep Myspace Public" "Despite failing to "create the Utopia deal Viacom the White Knight owning 20-339'a of Public Independent Myspace" FAC 31.

- The strategy proved successful, as evidenced by Paramount's CEO not rejecting or criticizing the offer and plan outlined by email. FAC 32.

**2. Tortious Interference with Business Relations**

NAI contends that Livevideo's tortious interference claim fails because the FAC does not plausibly allege that Livevideo had a business relationship with Paramount. However, the FAC alleges that Livevideo made a formal offer to acquire Paramount and that this offer would have been superior for Paramount's shareholders. FAC ¶¶ 33, 35-38, 53. The FAC further alleges that defendants interfered with this prospective business relationship by refusing to consider Livevideo's offer and instead pursuing the Skydance merger. Id. ¶¶ 40-44.

Under New York law, a plaintiff need not allege an existing business relationship to state a claim for tortious interference; a prospective business relationship is sufficient. See Carvel Corp. v. Noonan, 3 N.Y.3d 182, 189-90 (2004). Livevideo's allegations, if proven, could support a claim for tortious interference with prospective business relations.

### 3. Aiding and Abetting Breach of Fiduciary Duty

NAI argues that Livevideo's claim for aiding and abetting breach of fiduciary duty is facially inadequate because Livevideo does not plead that it was a stockholder of Paramount or had any fiduciary relationship with any relevant entity. However, the FAC alleges that Livevideo was a prospective acquirer of Paramount and that defendants aided and abetted breaches of fiduciary duty by Paramount's directors to Paramount's shareholders. FAC ¶¶ 86-103.

While Livevideo may not have standing to assert direct claims for breach of fiduciary duty on behalf of Paramount's shareholders, it has a colorable argument that, as a prospective acquirer whose offer was wrongfully rejected, it has standing to assert claims for aiding and abetting breaches of fiduciary duty that directly harmed Livevideo. This theory represents a good faith attempt to extend existing law, which is protected under Rule 11.

### C. Livevideo Has Made Good Faith Arguments for Subject Matter Jurisdiction

NAI argues that Livevideo has failed to establish subject matter jurisdiction. However, Livevideo has made good faith arguments for both federal question jurisdiction and diversity jurisdiction.

With respect to federal question jurisdiction, Livevideo has asserted claims under the Dodd-Frank Act and the CFAA. As discussed above, these claims, while novel, are not frivolous. They represent good faith attempts to extend existing law, which is sufficient to establish federal question jurisdiction for purposes of Rule 11. See *Bell v. Hood*, 327 U.S. 678, 682-83 (1946) (federal question jurisdiction exists unless the federal claim is "wholly insubstantial and frivolous").Since Livevideo.AI has already amended the complaint, it needed all defendant parties to be involved so that plaintiff filed his supplemental amendment once those parties were served.

With respect to diversity jurisdiction, Livevideo has argued that complete diversity exists because NAI has failed to comply with its mandatory disclosure obligations under Rule 7.1(a)(2), which requires parties in diversity cases to disclose the citizenship of every individual or entity whose citizenship is attributed to that party. NAI did not file its Rule 7.1 statement until February 26, 2025—the same day it filed its sanctions motion. This belated compliance suggests that NAI may have been attempting to conceal information relevant to diversity jurisdiction.

Moreover, while the FAC alleges that Livevideo and certain defendants are citizens of New York, these allegations are not necessarily fatal to diversity jurisdiction. For example, if NAI's Rule 7.1 statement reveals that it is a citizen of a state other than New York, Livevideo could potentially establish diversity jurisdiction by dismissing the non-diverse individual defendants. See *Newman-*

15

*Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832-38 (1989) (courts may dismiss dispensable non-diverse parties to preserve diversity jurisdiction).

### III. LIVEVIDEO DID NOT FILE THIS ACTION FOR AN IMPROPER PURPOSE

NAI contends that Livevideo filed this action for the improper purpose of harassing defendants and continuing Mr. Greenspan's alleged "litigation campaign" arising from unrelated events. They argue about service and whether they had obtained service, which they disputed and the various issues that they raised with the Court. These arguments are without merit.

#### A. Livevideo's Claims Are Based on Recent Events

The FAC primarily concerns events that occurred in June and July 2024, specifically, defendants' failure to respond to Livevideo's offer to acquire Paramount and their decision to pursue the Skydance merger instead. FAC ¶¶ 29-44. While the FAC does reference Mr. Greenspan's history with Intermix and Myspace, these references provide relevant background information about Mr. Greenspan's experience in the technology and media industries, which is directly relevant to Livevideo's claim that it could have made a superior offer for Paramount. Id. ¶¶ 13-24, 51-53.

NAI's suggestion that this action is merely an attempt to relitigate Mr. Greenspan's removal from Intermix and the subsequent sale of Myspace to News

Corporation is unfounded. The claims in this action are based on defendants' recent conduct in connection with the Paramount-Skydance merger, not on events that occurred nearly two decades ago.

### B. Livevideo's Litigation Conduct Has Been Reasonable

NAI argues that Livevideo's litigation conduct demonstrates an intent to harass defendants. However, Livevideo's conduct has been reasonable under the circumstances.

Livevideo's attempts to serve defendants were made in good faith. While the Court ultimately found that service was ineffective, Livevideo had a reasonable basis for believing that service was proper. For example, with respect to Ms. Redstone, Livevideo's counsel initially agreed that service through Corporation Trust was ineffective, but later argued—based on further research into Maryland law—that such service was proper under Md. Code Ann., Corps. & Ass'ns § 1-401(b)(2). This change in position reflects counsel's good faith effort to research and understand the applicable law, not an intent to harass.

Similarly, Livevideo's requests for entry of default were made in good faith based on its belief that defendants had been properly served and had failed to respond within the required time. While the Court ultimately denied these requests, Livevideo had a reasonable basis for making them.

NAI also criticizes Livevideo for filing a petition with the Federal Communications Commission seeking to block the Paramount-Skydance merger.

However, this petition was a legitimate exercise of Livevideo's right to participate in the regulatory review process. It does not evidence an intent to harass defendants.

## C. NAI's Allegations Regarding Mr. Greenspan's Litigation History Are Irrelevant and Unsupported

NAI devotes a significant portion of its motion to allegations about Mr. Greenspan's litigation history, suggesting that he is a "vexatious litigant" who has been sanctioned in other cases. These allegations are irrelevant to whether sanctions are warranted in this case.

Rule 11 requires an objective assessment of the pleadings in this case, not an inquiry into the subjective motivations of Livevideo's CEO based on his conduct in unrelated litigation. See *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991) (Rule 11 imposes an objective standard of reasonable inquiry).

Moreover, NAI's allegations about Mr. Greenspan's litigation history are unsupported by admissible evidence. NAI relies on unauthenticated documents and hearsay statements about proceedings in other courts. Such evidence is insufficient to support a motion for sanctions. See *Bowler v. U.S. Immigration & Naturalization Serv.*, 901 F. Supp. 597, 604-05 (S.D.N.Y. 1995) (motion for sanctions must be supported by admissible evidence).

## IV. SANCTIONS UNDER THE COURT'S INHERENT POWERS ARE NOT WARRANTED

NAI also seeks sanctions under the Court's inherent powers, arguing that Livevideo and its counsel have acted in bad faith. This argument is without merit.

## A. The Standard for Inherent Powers Sanctions Is Not Met

Sanctions under the Court's inherent powers require "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000). This is a higher standard than that required for Rule 11 sanctions. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (inherent powers sanctions require a finding of bad faith).

As discussed above, Livevideo's claims are not "entirely meritless." They are supported by reasonable legal and factual bases. Moreover, NAI has not presented "clear evidence" that Livevideo acted for improper purposes. NAI's allegations about Mr. Greenspan's litigation history and speculation about his motivations do not constitute clear evidence of bad faith.

## B. NAI's Allegations of Misconduct by Livevideo's Counsel Are Unfounded

NAI alleges that Livevideo's counsel, Mr. Constants, allowed a non-lawyer to make filings in this Court under his name. This allegation is based on Mr. Constants' admission during the February 12, 2025, show-cause hearing that he did not write, review, or authorize the filing of certain motion papers.

However, Mr. Constants explained during that hearing that these papers were prepared by a paralegal. 2/12/25 Tr. at 22:20-23:7; 24:6-7. While the Court properly admonished Mr. Constants for failing to review these papers before they were filed,

this incident does not evidence the kind of bad faith required for inherent powers sanctions.

Moreover, Mr. Constants promptly withdrew the motion papers in question after the Court expressed concerns about them. This prompt remedial action further undermines any suggestion of bad faith.

### C. NAI's Own Conduct Undermines Its Request for Sanctions

NAI's request for sanctions is particularly inappropriate given its own conduct in this litigation. As noted above, NAI failed to comply with its mandatory disclosure obligations under Rule 7.1 until February 26, 2025—the same day it filed its sanctions motion—despite having appeared in this action months earlier.

Moreover, NAI's sanctions motion itself contains mischaracterizations of the record and the applicable legal standards. For example, NAI incorrectly states that Livevideo cited 18 U.S.C. § 1513(e) as the basis for its Dodd-Frank Act claim, when in fact the FAC clearly invokes the Dodd-Frank Act's anti-retaliation provisions.

These actions suggest that NAI's sanctions motion is not a good faith effort to address genuine misconduct, but rather a tactical maneuver designed to intimidate Livevideo and its counsel. The Court should not countenance such tactics by imposing sanctions on Livevideo or its counsel.

Defendant National Amusements, Inc. ("NAI") seeks to weaponize Rule 11 to silence legitimate claims and deprive Plaintiff Livevideo.AI Corp ("Livevideo") of its day in court. NAI's motion for sanctions is procedurally defective, substantively meritless, and represents a transparent attempt to distract from the serious allegations in Plaintiff's complaint. Far from being frivolous, Plaintiff's claims arise

from concrete evidence of securities law violations by Defendants, including their failure to disclose material litigation developments in SEC filings.

NAI's motion ignores the Court's February 12, 2025 Order, which stayed Plaintiff's motion to supplement its complaint with additional federal securities law claims based on newly discovered evidence. That evidence includes Defendants' December 16, 2024 amended S-4 filing that falsely stated no defendant had been served when at least one defendant had been properly served during November 2024, and multiple subsequent S-4 amendments perpetuating these misrepresentations. These material omissions caused Paramount's stock price to drop by 8.4% from Plaintiff's July 2024 purchase price, directly harming shareholders.

While NAI criticizes Plaintiff's litigation conduct, it is NAI that has repeatedly violated Federal Rule of Civil Procedure 7.1 by failing to file mandatory corporate disclosure statements despite making multiple appearances. This violation is particularly egregious given that NAI, through counsel also representing controller Redstone, seeks sanctions while deliberately withholding information necessary to establish diversity jurisdiction.

The Court should deny NAI's motion for sanctions and lift the stay on Plaintiff's motion to supplement its complaint to allow these serious securities law violations to be properly adjudicated.

Respectfully submitted,

Dated March 12, 2025

By /s/ Alfred C. Constants III
Alfred C. Constants III, Esq.
Constants Law Offices, LLC.

115 Forest Ave., Unit 331
Locust Valley, NY 11560
Email: Constantslaw49@gmail.com
*Attorney For Appellant*

EXHIBIT #1



EH BCM          Document 127          Filed 03/

and enhanced change of control severance benefits on certain qualifying terminations following the Closing.

Furthermore, the New Paramount Board will consist of up to 13 members designated by Skydance prior to the Closing, including David Ellison.

Additionally, pursuant to the NAI Transaction, the NAI Equity Investors agreed to purchase, upon the terms and subject to the conditions set forth in the NAI Stock Purchase Agreement, all of the outstanding equity interests of NAI from the NAI Shareholders. As a beneficiary of the NAI Shareholders, Ms. Redstone will receive a portion of the proceeds from the NAI Transaction. Ms. Redstone is the non-executive Chair of the Paramount Board. As of December 31, 2024, Ms. Redstone was the beneficial owner of 52,226 cash-settled Paramount Class A common stock phantom units, 61,920 cash-settled Paramount Class B common stock phantom units, and 617,409 shares of Paramount Class B common stock, which includes 177,326 vested, deferred Paramount RSU Awards. Ms. Redstone is a beneficiary of the NAI Shareholders, and as of December 31, 2024, NAI beneficially owned, directly and through two wholly-owned subsidiaries, approximately 77.4% of the Paramount Class A common stock outstanding and approximately 9.5% of the Paramount Class A common stock and the Paramount Class B common stock outstanding on a combined basis. NAI is controlled by the Sumner M. Redstone National Amusements Part B General Trust (also known as the NA Part B General Trust) (the "General Trust"), which owns 80% of the voting interest of NAI. NA Administration, LLC is the corporate trustee of the General Trust, and is governed by a seven member board of directors, which acts by majority vote (subject to certain exceptions), including with respect to the NAI shares held by the General Trust. Ms. Redstone is the Chairperson, CEO and President of NAI, is one of the seven directors of NA Administration, LLC and one of two directors who are beneficiaries of the General Trust. Ms. Redstone also has a minority indirect beneficial interest in the Paramount Class A common stock and the Paramount Class B common stock owned by NAI (and its wholly-owned subsidiaries).

In connection with the NAI Transaction, (i) the NAI Shareholders, (ii) certain directors and officers of NAI, including Ms. Redstone in her capacity as Chairperson, CEO and President of NAI (such individuals, the "NAI D&O Indemnitees") and (iii) NAI and NAIEH entered into an indemnification and contribution agreement, which terminated and superseded certain existing indemnification arrangements among the parties thereto and provided the NAI Shareholders and the NAI D&O Indemnitees with certain indemnification rights relating to the Transactions and the NAI Transaction from NAI and NAIEH capped at a maximum of $200 million. Affiliates of the NAI Equity Investors have guaranteed the payment and performance of the foregoing indemnification obligations of NAI and NAIEH, subject to the limitations set forth in the indemnification and contribution agreement.

For further information, see the sections entitled "*Interests of Affiliates in the Transactions—Interests of Paramount Affiliate in the Transactions—Interests of Paramount's Executive Officers and Directors in the Transactions*" and "*Risk Factors—Risks Relating to the Transactions—Executive officers, directors and affiliates of Paramount and Skydance may have interests in the Transactions that are different from, or in addition to, the rights of the Paramount stockholders and Skydance equityholders, respectively*" beginning on pages 286 and 56, respectively, of this information statement/prospectus.

---

**Q:**    **Will I still be paid dividends prior to the completion of the Transactions?**

**A:**    Prior to the completion of the Transactions, Paramount may establish a record date for, declare and pay (a) quarterly cash dividends consistent with past practice, each in an amount no greater than $0.05 per share of Paramount common stock and (b) mandatory dividends or distributions required pursuant to its organizational documents as in effect on July 7, 2024, if any. For more information regarding the payment of dividends, see the section entitled "*Summary of the Transaction Agreement—Covenants and Agreements—Conduct of Business by Paramount*" beginning on page 191 of this information statement/prospectus.

18



Approved by OMB (Office of

(REFERENCE COPY - Not for submission)

## Commercial Broadcast Stations Non-Biennial Ownership Report (FCC Form 323)

File Number: **0000245733**   Submit Date: **2024-06-03**   FRN: **0035486323**

Purpose: **Commercial Broadcast Stations Non-Biennial Ownership Report**   Status: Receiv
**06/03/2024**   Filing Status: **Active**

### Section I - General Information

**1. Respondent**

| FRN | | Entity Name | | |
|---|---|---|---|---|
| 0035486323 | | NA Administration, LLC | | |

| Street Address | City (and Country if non U.S. address) | State ("NA" if non-U.S. address) | Zip Code | Phone |
|---|---|---|---|---|
| c/o Quarles & Brady LLP 1395 Panther Lane, Suite 300 | Naples | FL | 34109 | +1 (239) 4965 |

**2. Contact Representative**

| Name | | Organization |
|---|---|---|
| Matthew S. DelNero | | Covington & Burling LLP |

| Street Address | City (and Country if non U.S. address) | State | Zip Code | Phone |
|---|---|---|---|---|
| One CityCenter 850 Tenth Street, NW | Washington | DC | 20001 | +1 (202) 66: |

**3. Application Filing Fee**

Not Applicable

"As of" date

12/31/2023

When filing a biennial owner
and resubmitting a prior bien
date must be Oct. 1 of the ye
filed.

**5. Licensee(s) /Permittees(s) and Station(s) /Permit(s)**

Respondent is filing this report to cover the following Licensee(s)/Permittee(s) and

| Licensee/Permittee Name | | | FRN |
|---|---|---|---|
| CBS Broadcasting Inc. | | | 00034821( |

| Fac. ID No. | Call Sign | City | |
|---|---|---|---|
| 9610 | WCBS-TV | NEW YORK | |
| 9617 | WBBM-TV | CHICAGO | |
| 9628 | KCBS-TV | LOS ANGELES | |
| 9629 | WCCO-TV | MINNEAPOLIS | |
| 9640 | KCCW-TV | WALKER | |
| 25452 | KPIX-TV | SAN FRANCISCO | |
| 25453 | KYW-TV | PHILADELPHIA | |
| 25454 | KDKA-TV | PITTSBURGH | |
| 72123 | WWJ-TV | DETROIT | |

| Licensee/Permittee Name | | | FRN |
|---|---|---|---|
| CBS Television Stations Inc. | | | 0004442! |

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 47902 | WFOR-TV | MIAMI | FL |
| 47903 | KCNC-TV | DENVER | CO |

| Licensee/Permittee Name | | | FR |
|---|---|---|---|
| Miami Television Station WBFS Inc. | | | 00 |

**Licensee/Permittee Name**

Los Angeles Television Station KCAL LLC

| Fac. ID No. | Call Sign | City | St |
|---|---|---|---|
| 21422 | KCAL-TV | LOS ANGELES | C |

**Licensee/Permittee Name** FR

Sacramento Television Stations Inc. 00

| Fac. ID No. | Call Sign | City | S |
|---|---|---|---|
| 51499 | KMAX-TV | SACRAMENTO | C |
| 56550 | KOVR | STOCKTON | C |

**Licensee/Permittee Name**

San Francisco Television Station KBCW Inc.

| Fac. ID No. | Call Sign | City | S |
|---|---|---|---|
| 69619 | KPYX | SAN FRANCISCO | C |

**Licensee/Permittee Name** FF

Atlanta Television Station WUPA Inc. 00

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 6900 | WUPA | ATLANTA | GA |

**Licensee/Permittee Name** FRN

Television Station KTXA Inc. 0002057

| Fac. ID No. | Call Sign | City | St |
|---|---|---|---|
| 51517 | KTXA | FORT WORTH | T> |

**Licensee/Permittee Name**

Pittsburgh Television Station WPCW Inc.

Detroit Television Station WKBD Inc.

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 51570 | WKBD-TV | DETROIT | MI |

| Licensee/Permittee Name | FRN |
|---|---|
| CBS LITV LLC | 002135517 |

| Fac. ID No. | Call Sign | City | Sta |
|---|---|---|---|
| 73206 | WLNY-TV | RIVERHEAD | NY |

| Licensee/Permittee Name |
|---|
| Philadelphia Television Station WPSG Inc. |

| Fac. ID No. | Call Sign | City | St |
|---|---|---|---|
| 12499 | WPSG | PHILADELPHIA | P. |

| Licensee/Permittee Name | FRN |
|---|---|
| The CW Television Stations Inc. | 0003- |

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 23428 | KSTW | TACOMA | WA |

| Licensee/Permittee Name | FRI |
|---|---|
| CBS Stations Group of Texas LLC. | 002 |

| Fac. ID No. | Call Sign | City | Sta |
|---|---|---|---|
| 23422 | KTVT | FORT WORTH | T) |

## Section II – Non-Biennial Ownership Information

1. 47 C.F.R. Section 73.3613 and Other

Licensee/Permittee Respondents should list all contracts and other instruments set forth in 47 C through (c) for the facility or facilities listed on this report. In addition, attributable Local Marketing attributable Joint Sales Agreements (JSAs) must be disclosed by the licensee of the brokering s the agreement is an attributable LMA, an attributable JSA, or a network affiliation agreement, ch

Entities that are part of an organizational structure that includes holding companies or other forms of separate ownership for an entity that does not report, or file for or hold an attributable interest in the Licensee(s) or Permittee(s) for which the report is being submitted.

Please see the Instructions for further detail concerning interests that must be reported in respon[...]

The Respondent must provide an FCC Registration Number for each interest holder reported in [...]
Please see the Instructions for detailed information and guidance concerning this requirement.

**Ownership Information**

| | |
|---|---|
| FRN | 0035486323 |
| Entity Name | NA Administration, LLC |
| Address | PO Box |
| | Street 1 | c/o Quarles & Brady LLP |
| | Street 2 | 1395 Panther Lane, Suite 300 |
| | City | Naples |
| | State ("NA" if non-U.S. address) | FL |
| | Zip/Postal Code | 34109 |
| | Country (if non-U.S. address) | United States |
| Listing Type | Respondent |
| Positional Interests (check all that apply) | Respondent |
| Interest Percentages (enter percentage values from 0.0 to 100.0) | Voting | 0.0% |
| | Total assets (Equity Debt Plus) | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

**Ownership Information**

| | |
|---|---|
| FRN | 0019287812 |
| Name | Shari Redstone |
| Address | PO Box |

| Positional Interests (check that apply) | Director | |
|---|---|---|
| Interest Percentages (enter percentage values from 0.0 to 100.0) | Voting | 14.3% |
| | Total assets (Equity Debt Plus) | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

**Ownership Information**

| FRN | 0023078280 |
|---|---|
| Name | Tyler J. Korff |
| Address | PO Box |
| | Street 1 | 846 University Avenue |
| | Street 2 | |
| | City | Norwood |
| | State ("NA" if non-U.S. address) | MA |
| | Zip/Postal Code | 02062-2631 |
| | Country (if non-U.S. address) | United States |
| Listing Type | Other Interest Holder |
| Positional Interests (check all that apply) | Director |

| Interest Percentages (enter percentage values from 0.0 to 100.0) | Voting | 14.3% |
|---|---|---|
| | Total assets (Equity Debt Plus) | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

**Ownership Information**

| FRN | 0019283480 |
|---|---|

| | |
|---|---|
| **Listing Type** | Other Interest Holder |
| **Positional Interests** (check all that apply) | Director |
| **Interest Percentages** (enter percentage values from 0.0 to 100.0) | **Voting** | 14.3% |
| | **Total assets (Equity Debt Plus)** | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

**Ownership Information**

| | | |
|---|---|---|
| **FRN** | 2130017771 | |
| **Name** | Norman I. Jacobs | |
| **Address** | **PO Box** | |
| | **Street 1** | 846 University Avenue |
| | **Street 2** | |
| | **City** | Norwood |
| | **State ("NA" if non-U.S. address)** | MA |
| | **Zip/Postal Code** | 02062-2631 |
| | **Country (if non-U.S. address)** | United States |

| | | |
|---|---|---|
| **Listing Type** | Other Interest Holder | |
| **Positional Interests** (check all that apply) | Director | |
| **Interest Percentages** (enter percentage values from 0.0 to 100.0) | **Voting** | 14.3% |
| | **Total assets (Equity Debt Plus)** | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

**Ownership Information**

| | | |
|---|---|---|
| | Country (if non-U.S. address) | United States |
| Listing Type | Other Interest Holder | |
| Positional Interests (check all that apply) | Director | |
| Interest Percentages (enter percentage values from 0.0 to 100.0) | Voting | 14.3% |
| | Total assets (Equity Debt Plus) | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

**Ownership Information**

| | | |
|---|---|---|
| FRN | 0027240225 | |
| Name | Jill S. Krutick | |
| Address | PO Box | |
| | Street 1 | 846 University Avenue |
| | Street 2 | |
| | City | Norwood |
| | State ("NA" if non-U.S. address) | MA |
| | Zip/Postal Code | 02062-2631 |
| | Country (if non-U.S. address) | United States |
| Listing Type | Other Interest Holder | |
| Positional Interests (check all that apply) | Director | |
| Interest Percentages (enter percentage values from 0.0 to 100.0) | Voting | 14.3% |
| | Total assets (Equity Debt Plus) | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

| | | |
|---|---|---|
| | Zip/Postal Code | 02062-2631 |
| | Country (if non-U.S. address) | United States |
| **Listing Type** | Other Interest Holder | |
| **Positional Interests** (check all that apply) | Director | |
| **Interest Percentages** (enter percentage values from 0.0 to 100.0) | Voting | 14.3% |
| | **Total assets (Equity Debt Plus)** | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

**Ownership Information**

| | | |
|---|---|---|
| **FRN** | 0035511716 | |
| **Entity Name** | NA Administrative Trust | |
| **Address** | **PO Box** | |
| | **Street 1** | c/o Quarles & Brady LLP |
| | **Street 2** | 1395 Panther Lane, Suite 300 |
| | **City** | Naples |
| | **State ("NA" if non-U.S. address)** | FL |
| | **Zip/Postal Code** | 34109 |
| | **Country (if non-U.S. address)** | United States |
| **Listing Type** | Other Interest Holder | |
| **Positional Interests** (check all that apply) | Stockholder | |
| **Interest Percentages** (enter percentage values from 0.0 to 100.0) | Voting | 0.0% |
| | **Total assets (Equity Debt Plus)** | 0.0% |

**Family Relationships**

| | |
|---|---|
| FRN | 0192 278 |
| FRN | 0023078280 |
| Relationship | Parent/Child |

| | |
|---|---|
| Name | Tyler |

**(d) Is Respondent seeking an attribution exemption for any officer or director with duties wholly unrelated to the Licensee(s)?**

If "Yes," complete the information in the required fields and submit an Exhibit fully describing that individual's duties and responsibilities, and explaining why that individual should not be attributed an interest.

**Certification**

| Section | Question | Response |
|---|---|---|
| Authorized Party to Sign | WILLFUL FALSE STATEMENTS ON THIS FORM ARE PUNISHABLE BY FINE AND/OR IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001), AND /OR REVOCATION OF ANY STATION LICENSE –OR CONSTRUCTION PERMIT (U.S. CODE, TITLE 47, SECTION 312(a)(1)), AND/OR FORFEITURE (U.S. CODE, TITLE 47, SECTION 503). | |
| Certification | I certify that I have examined this report and that to the best of my knowledge and belief, all statements in this report are true, correct and complete. | Official Title: Dire Exact Legal Title Administration, Name: **Tyler Kor** Phone: **7814611**

06/03/2024 |



(REFERENCE COPY - Not for submission)

Approved by OMB (Office of

Commercial Broadcast Stations Non-Biennial
Ownership Report (FCC Form 323)

File Number: **0000245734**  Submit Date: **2024-06-03**  FRN: **0035486323**

Purpose: **Commercial Broadcast Stations Non-Biennial Ownership Report**  Status: **Receiv**
**06/03/2024**  Filing Status: **Active**

## Section I - General Information

| 1. Respondent | **FRN** | | **Entity Name** | | |
|---|---|---|---|---|---|
| | 0035511716 | | NA Administrative Trust | | |

| | **Street Address** | **City (and Country if non U.S. address)** | **State ("NA" if non-U.S. address)** | **Zip Code** | **Phone** |
|---|---|---|---|---|---|
| | c/o Quarles & Brady LLP 1395 Panther Lane, Suite 300 | Naples | FL | 34109 | +1 (239) 4965 |

| 2. Contact Representative | **Name** | | **Organization** | |
|---|---|---|---|---|
| | Matthew S. DelNero | | Covington & Burling LLP | |

| | **Street Address** | **City (and Country if non U.S. address)** | **State** | **Zip Code** | **Phone** |
|---|---|---|---|---|---|
| | One CityCenter 850 Tenth Street, NW | Washington | DC | 20001 | +1 (202) 66: |

| 3. Application Filing Fee | Not Applicable |
|---|---|

"As of" date

12/31/2023
When filing a biennial owner
and resubmitting a prior bie
date must be Oct. 1 of the ye
filed.

5. Licensee(s) /Permittees(s) and Station(s) /Permit(s)

Respondent is filing this report to cover the following Licensee(s)/Permittee(s) and

| Licensee/Permittee Name | FRN |
|---|---|
| CBS Broadcasting Inc. | 000348211 |

| Fac. ID No. | Call Sign | City |
|---|---|---|
| 9610 | WCBS-TV | NEW YORK |
| 9617 | WBBM-TV | CHICAGO |
| 9628 | KCBS-TV | LOS ANGELES |
| 9629 | WCCO-TV | MINNEAPOLIS |
| 9640 | KCCW-TV | WALKER |
| 25452 | KPIX-TV | SAN FRANCISCO |
| 25453 | KYW-TV | PHILADELPHIA |
| 25454 | KDKA-TV | PITTSBURGH |
| 72123 | WWJ-TV | DETROIT |

| Licensee/Permittee Name | FRN |
|---|---|
| CBS Television Stations Inc. | 0004425 |

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 47902 | WFOR-TV | MIAMI | FL |
| 47903 | KCNC-TV | DENVER | CO |

| Licensee/Permittee Name | FR |
|---|---|
| Miami Television Station WBFS Inc. | 00 |

**Licensee/Permittee Name**

Los Angeles Television Station KCAL LLC

| Fac. ID No. | Call Sign | City | St |
|---|---|---|---|
| 21422 | KCAL-TV | LOS ANGELES | C |

**Licensee/Permittee Name**    **FR**

Sacramento Television Stations Inc.    00

| Fac. ID No. | Call Sign | City | S |
|---|---|---|---|
| 51499 | KMAX-TV | SACRAMENTO | C |
| 56550 | KOVR | STOCKTON | C |

**Licensee/Permittee Name**

San Francisco Television Station KBCW Inc.

| Fac. ID No. | Call Sign | City | S |
|---|---|---|---|
| 69619 | KPYX | SAN FRANCISCO | ( |

**Licensee/Permittee Name**    **FF**

Atlanta Television Station WUPA Inc.    0(

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 6900 | WUPA | ATLANTA | GA |

**Licensee/Permittee Name**    **FRN**

Television Station KTXA Inc.    0002057

| Fac. ID No. | Call Sign | City | Sta |
|---|---|---|---|
| 51517 | KTXA | FORT WORTH | T> |

**Licensee/Permittee Name**

Pittsburgh Television Station WPCW Inc.

Detroit Television Station WKBD Inc.

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 51570 | WKBD-TV | DETROIT | MI |

**Licensee/Permittee Name**

CBS LITV LLC

**FRN**

002135517

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 73206 | WLNY-TV | RIVERHEAD | NY |

**Licensee/Permittee Name**

Philadelphia Television Station WPSG Inc.

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 12499 | WPSG | PHILADELPHIA | P. |

**Licensee/Permittee Name**

The CW Television Stations Inc.

**FRN**

0003

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 23428 | KSTW | TACOMA | WA |

**Licensee/Permittee Name**

CBS Stations Group of Texas LLC.

**FRN**

002

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 23422 | KTVT | FORT WORTH | TX |

## Section II – Non-Biennial Ownership Information

**1. 47 C.F.R.
Section 73.3613
and Other**

Licensee/Permittee Respondents should list all contracts and other instruments set forth in 47 C. through (c) for the facility or facilities listed on this report. In addition, attributable Local Marketing attributable Joint Sales Agreements (JSAs) must be disclosed by the licensee of the brokering st the agreement is an attributable LMA, an attributable JSA, or a network affiliation agreement, ch

Entities that are part of an organizational structure that includes holding companies or other forms of organization structure do no report, or file to the top level entity which holds an attributable interest in the Licensee(s) or Permittee(s) for which the report is being submitted.

Please see the Instructions for further detail concerning interests that must be reported in respon

The Respondent must provide an FCC Registration Number for each interest holder reported in Please see the Instructions for detailed information and guidance concerning this requirement.

## Ownership Information

| | |
|---|---|
| FRN | 0035511716 |
| Entity Name | NA Administrative Trust |
| Address | PO Box |
| Street 1 | c/o Quarles & Brady LLP |
| Street 2 | 1395 Panther Lane, Suite 300 |
| City | Naples |
| State ("NA" if non-U.S. address) | FL |
| Zip/Postal Code | 34109 |
| Country (if non-U.S. address) | United States |
| Listing Type | Respondent |
| Positional Interests (check all that apply) | Respondent |
| Interest Percentages (enter percentage values from 0.0 to 100.0) | Voting | 0.0% |
| | Total assets (Equity Debt Plus) | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

## Ownership Information

| | |
|---|---|
| FRN | 0035486323 |
| Entity Name | NA Administration, LLC |
| Address | PO Box |

**Positional Interests**    Other - Trustee

**Interest Percentages**    **Voting**
(enter percentage values                          100.0%
from 0.0 to 100.0)

                             **Total assets (Equity Debt
                             Plus)**

**Does interest holder have an attributable interest in one or more broadcast stations
that do not appear on this report?**

**(b) Respondent certifies that any interests, including equity, financial, or voting
interests, not reported in this filing are non-attributable.**
If "No," submit as an exhibit an explanation.

**(c) Are any of the individuals listed as an attributable interest holder in the Respondent
or related to each other as parentchild or as siblings?**

If "Yes," provide the following information for each such the relationship.

**(d) Is Respondent seeking an attribution exemption for any officer or director with
duties wholly unrelated to the Licensee(s)?**

If "Yes," complete the information in the required fields and submit an Exhibit fully describing
that individual's duties and responsibilities, and explaining why that individual should not be
attributed an interest.

| Certification | Section | Question | Response |
|---|---|---|---|
| | **Authorized Party to Sign** | WILLFUL FALSE STATEMENTS ON THIS FORM ARE PUNISHABLE BY FINE AND/OR IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001), AND /OR REVOCATION OF ANY STATION LICENSE --OR CONSTRUCTION PERMIT (U.S. CODE, TITLE 47, SECTION 312(a)(1)), AND/OR FORFEITURE (U.S. CODE, TITLE 47, SECTION 503). | |
| | Certification | I certify that I have examined this report | Official Title: **Dir** |



Approved by OMB (Office of

(REFERENCE COPY - Not for submission)

## Commercial Broadcast Stations Biennial Ownership Report (FCC Form 323)

File Number: **0000227410**   Submit Date: 2023-11-21   FRN: **0029958717**

Purpose: **Commercial Broadcast Stations Biennial Ownership Report**   Status: **Received**

Filing Status: **Active**

### Section I - General Information

**1. Respondent**

| FRN | Entity Name |
|---|---|
| 0029958717 | Sumner M. Redstone National Amusements Part B General Tr |

| Street Address | City (and Country if non U.S. address) | State ("NA" if non-U.S. address) | Zip Code | Phone | Ema |
|---|---|---|---|---|---|
| 846 University Avenue | Norwood | MA | 02062-2631 | +1 (781) 461-1600 | lma con |

**2. Contact Representative**

| Name | Organization |
|---|---|
| Nancy A. Ory | Lerman Senter PLLC |

| Street Address | City (and Country if non U.S. address) | State | Zip Code | Phone |
|---|---|---|---|---|
| 2001 L Street, NW Suite 400 | Washington | DC | 20036 | +1 (202) 416-6791 |

**3. Application Filing Fee**

Not Applicable

**4. Nature of Respondent**

(a) Provide the following information about the Respondent:

Relationship to stations/permits

Entity required to file a Form 3 attributable interest in one or r

5. Licensee(s) and Station(s)



Respondent is filing this report to cover the following Licensees and Stations:

| Licensee/Permittee Name | | FRN |
|---|---|---|
| CBS Broadcasting Inc. | | 000348211 |

| Fac. ID No. | Call Sign | City |
|---|---|---|
| 9610 | WCBS-TV | NEW YORK |
| 9617 | WBBM-TV | CHICAGO |
| 9628 | KCBS-TV | LOS ANGELES |
| 9629 | WCCO-TV | MINNEAPOLIS |
| 9640 | KCCW-TV | WALKER |
| 25452 | KPIX-TV | SAN FRANCISCO |
| 25453 | KYW-TV | PHILADELPHIA |
| 25454 | KDKA-TV | PITTSBURGH |
| 72123 | WWJ-TV | DETROIT |

| Licensee/Permittee Name | | | FRN |
|---|---|---|---|
| CBS Television Stations Inc. | | | 0004425 |

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 47902 | WFOR-TV | MIAMI | FL |
| 47903 | KCNC-TV | DENVER | CO |

| Licensee/Permittee Name | | | FR |
|---|---|---|---|
| Miami Television Station WBFS Inc. | | | 00 |

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 12497 | WBFS-TV | MIAMI | FL |

| Licensee/Permittee Name | | FRN |
|---|---|---|
| CBS Television Licenses LLC | | 002107 |

**Licensee/Permittee Name**

| Fac. ID No. | Call Sign | City | S |
|---|---|---|---|
| 51499 | KMAX-TV | SACRAMENTO | C |
| 56550 | KOVR | STOCKTON | C |

**Licensee/Permittee Name**

San Francisco Television Station KBCW Inc.

| Fac. ID No. | Call Sign | City | S |
|---|---|---|---|
| 69619 | KPYX | SAN FRANCISCO | ( |

**Licensee/Permittee Name**                                    **FF**

Atlanta Television Station WUPA Inc.                            0(

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 6900 | WUPA | ATLANTA | GA |

**Licensee/Permittee Name**                                    **FRN**

Television Station KTXA Inc.                                    0002057

| Fac. ID No. | Call Sign | City | Sta |
|---|---|---|---|
| 51517 | KTXA | FORT WORTH | T) |

**Licensee/Permittee Name**

Pittsburgh Television Station WPCW Inc.

| Fac. ID No. | Call Sign | City | Sta |
|---|---|---|---|
| 69880 | WPKD-TV | JEANNETTE | P/ |

**Licensee/Permittee Name**                                    **FRN**

CBS Operations Investments Inc.                                002(

| Fac. ID No. | Call Sign | City | |
|---|---|---|---|
| 70416 | WBXI-CD | INDIANAPOLIS | |

**Licensee/Permittee Name**

CBS LITV LLC

**FRN**

002135517

| Fac. ID No. | Call Sign | City | Sta |
|---|---|---|---|
| 73206 | WLNY-TV | RIVERHEAD | NY |

**Licensee/Permittee Name**

Philadelphia Television Station WPSG Inc.

| Fac. ID No. | Call Sign | City | St |
|---|---|---|---|
| 12499 | WPSG | PHILADELPHIA | P. |

**Licensee/Permittee Name**

The CW Television Stations Inc.

**FRN**

0003

| Fac. ID No. | Call Sign | City | State |
|---|---|---|---|
| 23428 | KSTW | TACOMA | WA |

**Licensee/Permittee Name**

CBS Stations Group of Texas LLC.

**FRN**

002

| Fac. ID No. | Call Sign | City | St |
|---|---|---|---|
| 23422 | KTVT | FORT WORTH | T) |

## Section II – Biennial Ownership Information

**1. 47 C.F.R. Section 73.3613 and Other Documents**

Licensee Respondents that hold authorizations for one or more full power television, AM, and/or contracts and other instruments set forth in 47 C.F.R. Section 73.3613(a) through (c) for the faci report. In addition, attributable Local Marketing Agreements (LMAs) and attributable Joint Sales disclosed by the licensee of the brokering station on its ownership report. If the agreement is an attributable JSA, or a network affiliation agreement, check the appropriate box. Otherwise, selec Respondents, as well as Licensee Respondents that only hold authorizations for Class A televis

Entities that are part of an organizational structure that includes holding companies or other form separate ownership reports. In such an structure, each report, or file a separate report for each an attributable interest holder(s) for whom the report is being

Please see the Instructions for further detail concerning interests that must be reported in respon

The Respondent must provide an FCC Registration Number for each interest holder reported in Please see the Instructions for detailed information and guidance concerning this requirement.

## Ownership Information

| | |
|---|---|
| FRN | 0029958717 |
| Entity Name | Sumner M. Redstone National Amusements Part B General Tr |
| Address | PO Box |
| | Street 1 | 846 University Avenue |
| | Street 2 | |
| | City | Norwood |
| | State ("NA" if non-U.S. address) | MA |
| | Zip/Postal Code | 02062-2631 |
| | Country (if non-U.S. address) | United States |
| Listing Type | Respondent |
| Positional Interests (check all that apply) | Respondent |
| Tribal Nation or Tribal Entity | Interest holder is not a Tribal nation or Tribal entity |
| Interest Percentages (enter percentage values from 0.0 to 100.0) | Voting | 0.0% |
| | Equity | 0.0% |
| | Total assets (Equity Debt Plus) | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

## Ownership Information

| | |
|---|---|
| FRN | 0019287812 |

| | | |
|---|---|---|
| | Country (if non-U.S. address) | United States |
| **Listing Type** | Other Interest Holder | |
| **Positional Interests** (check all that apply) | Other - Trustee | |
| **Citizenship, Gender, Ethnicity, and Race Information (Natural Persons Only)** | Citizenship | US |
| | Gender | Female |
| | Ethnicity | Not Hispanic or Latino |
| | Race | White |
| **Interest Percentages** (enter percentage values from 0.0 to 100.0) | Voting | 14.3% |
| | Equity | 14.3% |
| | Total assets (Equity Debt Plus) | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

**Ownership Information**

| | | |
|---|---|---|
| **FRN** | 0023078280 | |
| **Name** | Tyler J. Korff | |
| **Address** | PO Box | |
| | Street 1 | 846 University Avenue |
| | Street 2 | |
| | City | Norwood |
| | State ("NA" if non-U.S. address) | MA |
| | Zip/Postal Code | 02062-2631 |
| | Country (if non-U.S. address) | United States |
| **Listing Type** | Other Interest Holder | |
| **Positional Interests** | Other - Trustee | |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

### Ownership Information

| | |
|---|---|
| FRN | 0019283480 |
| Name | David R. Andelman |
| Address | PO Box |
| | Street 1 | 846 University Avenue |
| | Street 2 |
| | City | Norwood |
| | State ("NA" if non-U.S. address) | MA |
| | Zip/Postal Code | 02062-2631 |
| | Country (if non-U.S. address) | United States |
| Listing Type | Other Interest Holder |
| Positional Interests (check all that apply) | Other - Trustee |
| Citizenship, Gender, Ethnicity, and Race Information (Natural Persons Only) | Citizenship | US |
| | Gender | Male |
| | Ethnicity | Not Hispanic or Latino |
| | Race | White |
| Interest Percentages (enter percentage values from 0.0 to 100.0) | Voting | 14.3% |
| | Equity | 14.3% |
| | Total assets (Equity Debt Plus) | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

### Ownership Information

| | | |
|---|---|---|
| | Country (if non-U.S. address) | United States |
| Listing Type | Other Interest Holder | |
| Positional Interests (check all that apply) | Other - Trustee | |
| Citizenship, Gender, Ethnicity, and Race Information (Natural Persons Only) | Citizenship | US |
| | Gender | Male |
| | Ethnicity | Not Hispanic or Latino |
| | Race | White |
| Interest Percentages (enter percentage values from 0.0 to 100.0) | Voting | 14.3% |
| | Equity | 14.3% |
| | Total assets (Equity Debt Plus) | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

**Ownership Information**

| | |
|---|---|
| FRN | 0019417971 |
| Name | Thaddeus P. Jankowski |
| Address | PO Box |
| | Street 1 | 846 University Avenue |
| | Street 2 | |
| | City | Norwood |
| | State ("NA" if non-U.S. address) | MA |
| | Zip/Postal Code | 02062-2631 |
| | Country (if non-U.S. address) | United States |
| Listing Type | Other Interest Holder |
| Positional Interests | Other - Trustee |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

**Ownership Information**

| | |
|---|---|
| FRN | 0027240225 |
| Name | Jill S. Krutick |
| Address | PO Box |
| | Street 1 | 846 University Avenue |
| | Street 2 | |
| | City | Norwood |
| | State ("NA" if non-U.S. address) | MA |
| | Zip/Postal Code | 02062-2631 |
| | Country (if non-U.S. address) | United States |
| Listing Type | Other Interest Holder |
| Positional Interests (check all that apply) | Other - Trustee |
| Citizenship, Gender, Ethnicity, and Race Information (Natural Persons Only) | Citizenship | US |
| | Gender | Female |
| | Ethnicity | Not Hispanic or Latino |
| | Race | White |
| Interest Percentages (enter percentage values from 0.0 to 100.0) | Voting | 14.3% |
| | Equity | 14.3% |
| | Total assets (Equity Debt Plus) | 0.0% |

Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?

**Ownership Information**

FRN                                    0027240225

| | | Country (if non-U.S. Address) | United States |
|---|---|---|---|
| | **Listing Type** | Other Interest Holder | |
| | **Positional Interests** (check all that apply) | Other - Trustee | |
| | **Citizenship, Gender, Ethnicity, and Race Information (Natural Persons Only)** | **Citizenship** | US |
| | | **Gender** | Male |
| | | **Ethnicity** | Not Hispanic or Latino |
| | | **Race** | White |
| | **Interest Percentages** (enter percentage values from 0.0 to 100.0) | **Voting** | 14.3% |
| | | **Equity** | 14.3% |
| | | **Total assets (Equity Debt Plus)** | 0.0% |

**Does interest holder have an attributable interest in one or more broadcast stations that do not appear on this report?**

**(b) Respondent certifies that any interests, including equity, financial, or voting interests, not reported in this filing are non-attributable.**
If "No," submit as an exhibit an explanation.

**(c) Are any of the individuals listed as an attributable interest holder in the Respondent i or related to each other as parentchild or as siblings?**

If "Yes," provide the following information for each such the relationship.

**Family Relationships**

| | | | |
|---|---|---|---|
| **FRN** | 0019287812 | **Name** | Shari |
| **FRN** | 0023078280 | **Name** | Tyler . |
| **Relationship** | Parent/Child | | |

**(d) Is Respondent seeking an attribution exemption for any officer or director with**

EH-BCM Document Filed 03/

**Authorized Party to Sign**

WILLFUL FALSE STATEMENTS ON
THIS FORM ARE PUNISHABLE BY
FINE AND/OR IMPRISONMENT (U.S.
CODE, TITLE 18, SECTION 1001), AND
/OR REVOCATION OF ANY STATION
LICENSE --OR CONSTRUCTION
PERMIT (U.S. CODE, TITLE 47,
SECTION 312(a)(1)), AND/OR
FORFEITURE (U.S. CODE, TITLE 47,
SECTION 503).

**Certification**

I certify that I have examined this report
and that to the best of my knowledge and
belief, all statements in this report are
true, correct and complete.

Official Title: **Trus**
Exact Legal Title
**Sumner M. Reds**
**Part B General T**
Name: **David R. .**
Phone: **7814611(**

11/21/2023