UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIVEVIDEO.AI CORP., <br><br> Plaintiff, <br><br> v. <br><br> SHARI REDSTONE, NATIONAL AMUSEMENTS, INC., CHRISTINE VARNEY, MONICA SELIGMAN, <br><br> Defendants. | C.A. No. 1:24-CV-6290 (DEH) (BCM) |

**DEFENDANT NATIONAL AMUSEMENTS, INC.'S REPLY
IN SUPPORT OF MOTION FOR SANCTIONS**

## PRELIMINARY STATEMENT

Livevideo's Opposition (Dkt. 127) (the "Opposition") demonstrates why NAI filed this motion.[1] As it has done throughout the case, in the Opposition Livevideo misrepresents its prior conduct, offers *non sequiturs* instead of engaging with the relevant legal issues, and shows that it will continue to impose a significant burden on the Court and the Defendants if it is not deterred from its current strategy of litigation by harassment.

To start, the Opposition attempts to rewrite the procedural history of this case, ignoring the Court's numerous warnings to Livevideo and Constants that Livevideo's claims are frivolous and could result in sanctions. *See* Dkts. 15 at 1–2; 46 at 2; 69 at 3; 90 at 11:20–12:4, 17:5-10; 123 at 3–5. That is unsurprising given Livevideo's admission that it has not read certain Court orders, *see* Dkt. 126 at 8 (claiming order denying leave to amend did not apply to Livevideo because "[t]he Plaintiff never read that Order"), and its refusal to respond to multiple Court orders stating the obvious flaws in its pleadings, *see* Dkts. 47; 69 at 3; 74 at 6–7; 77 at 1–2. The Opposition also seeks to minimize the Operative Complaint's central focus on a decades-old corporate transaction involving Myspace, and trivializes Greenspan's well-documented history of vexatious litigation. These are not collateral issues. Rather, they show this lawsuit for what it is: frivolous and sanctionable litigation driven by a bizarre grudge and Greenspan's fantastical assessment of his relationship to Paramount and its proposed merger with Skydance.

The Opposition also seeks to avoid NAI's arguments (and the Court's prior admonitions) regarding the frivolousness of Livevideo's claims. Livevideo now claims that it is simply seeking in good faith to extend or modify existing law, yet cites no legal authority to support its "novel"

---

[1] This Reply adopts all of the defined terms used in NAI's Opening Brief in Support of Sanctions ("OB") (Dkt. 121). In addition, unless otherwise noted all internal citations and quotations are omitted and emphases are added.

claims or the various grounds on which it has asserted subject matter jurisdiction. Absent such supporting authority, and particularly given Livevideo's vexatious litigation conduct and disregard for the Court's orders concerning the obvious defects in its claims, it is not credible for Livevideo to now argue that it is simply trying to extend the law.

In short, the Opposition further confirms that sanctions should be imposed precisely to deter Livevideo and Constants from further abusing the time and resources of the Court and NAI.

## ARGUMENT

The Court should grant the motion and impose sanctions. The Opposition does not raise any meaningful argument to address the many fatal defects that the Court and NAI have identified in Livevideo's claims. The Opposition also fails to seriously contest that Livevideo and Constants' conduct in this action was taken in subjective bad faith for the purpose of multiplying the proceedings and delaying the inevitable dismissal of this action.

I. **RULE 11 SANCTIONS ARE NECESSARY TO DETER LIVEVIDEO AND CONSTANTS FROM CONTINUING TO ADVANCE FRIVOLOUS CLAIMS IN BAD FAITH**

    A. **Livevideo's Claims Are Frivolous and Cannot Support a Good-Faith Argument for the Extension of Existing Law**

In its Opposition, Livevideo principally defends itself by arguing that the claims in its Operative Complaint are a novel expansion of existing law. Opp. at 9–10, 12–15. But the Opposition includes no well-stated basis for any such extension. And Livevideo's claim that it is seeking to expand the law rings hollow given that Livevideo did not raise these arguments when it was expressly invited by the Court to explain and justify its federal claims months ago. *See* Dkts. 46–47.

While a litigant may not be penalized under Rule 11 for advancing "a ***good faith*** argument for the extension of the law beyond its current parameters," *Katzman v. Victoria's Secret*

-2-

*Catalogue*, 167 F.R.D. 649, 660 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997), sanctions are warranted where, as here, it is "patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands," *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, 638 F. Supp. 3d 333, 338 (S.D.N.Y. 2022); *see also Burekovitch v. Hertz*, No. 01-cv-1277, 2001 WL 984942, at *13 (E.D.N.Y. July 24, 2001) (imposing sanctions where plaintiff acknowledged claim was "novel" and yet "fail[ed] to state why the law should be modified or extended to cover his claim" or to "discuss, let alone rebut" arguments for dismissal).

### 1. Livevideo's Federal Claims Are Obviously Frivolous

Livevideo's federal claims were advanced for the sole purpose of manufacturing subject matter jurisdiction and not, as Livevideo and Constants now contend, expanding existing law. **First**, Livevideo argues that its Dodd-Frank Act claim is not frivolous because Greenspan, Livevideo's CEO, supposedly transferred his (itself meritless) claim to Livevideo and that "it is not settled law in this Circuit" that such rights are not assignable. Opp. at 9. But Livevideo cites no law—in or out of this Circuit—that supports the view that anyone other than an "individual . . . may bring an action under" the Dodd-Frank Act. 15 U.S.C. § 78u-6(h)(1)(B)(i). The Opposition ignores this plain statutory limitation, cites no precedent for Livevideo's novel theory, and fails to explain why the plain language of the statute does not obviously bar its claims. *See Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 175–76 (2d Cir. 1999) (upholding an award of sanctions for claim that fell outside of "clear language" of Rule 10b-13, despite plaintiff citing case law in support of its argument to extend); *see also Katzman*, 167 F.R.D. at 660 (finding sanctions warranted where "claims are so far deficient in alleging **statutory requirements**"). The Opposition fails to acknowledge that—as both the Court and NAI have stated repeatedly—none of the Defendants or other relevant entities are alleged to be Greenspan's

"employer," and so, even if Greenspan's claim *could* be assigned to Livevideo, the alleged retaliation is not related to "the terms and conditions of employment." 15 U.S.C. § 78u-6(h)(1)(A); *see* Dkts. 46 at 1 n.1; 121 at 15; 123 at 4 n.3.

***Second***, Livevideo's attempt to salvage its CFAA claim is also frivolous and at odds with the Operative Complaint.[2] Livevideo's "good faith attempt to advance" an alternative reading of the statute to include as compensable damages "loss of business opportunities" resulting from alleged unauthorized access to confidential data relies solely on a First Circuit decision that (i) was later abrogated by the Supreme Court; (ii) does not support its claim; and (iii) was interpreting a prior version of the CFAA. Opp. at 10. Analyzing an older version of the CFAA, which did not define "loss," the First Circuit concluded that "Congress intended the term loss to target ***remedial expenses*** borne by victims," and cited with approval a case from this Court that held "lost business or goodwill could not constitute loss ***absent the impairment or unavailability of data or systems***." *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 584–85 (1st Cir. 2001), *abrogated on other grounds by Van Buren v. United States*, 593 U.S. 374 (2021).

The CFAA was amended shortly after the First Circuit's decision to clarify that "loss" was restricted to "***any reasonable cost*** to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages

---

[2] The Opposition attempts to rewrite the Operative Complaint, claiming it alleges that "defendants gained unauthorized access to Livevideo's proprietary email tracking system, which contained valuable business information" and that Defendants "damage[d]" the "email tracking system." Opp. at 10. The Operative Complaint alleges no such thing. Instead, it claims that Livevideo included "an online marketing software pixel" in its email to Paramount Global's CEO and that this software showed Livevideo that the Defendants accessed "Paramount CEO's email communications residing or stored in Paramount's mail server" and "the Paramount CEO's confidential inbox." Compl. ¶¶ 120–32.

*incurred because of interruption of service*." 18 U.S.C. § 1030(e)(11). Livevideo has had every opportunity to review relevant case law interpreting the CFAA as amended, as this Court's September 26 order specifically raised this issue. Dkt. 46 at 1 n.2. Livevideo ignored that order and has failed to make any good-faith argument for extending the meaning of "loss" under the CFAA to include the "lost business opportunities" it claims to have suffered.

      **2.     Livevideo's State Law Claims Are Also Frivolous**

Livevideo's belated attempts to justify its state law claims also fail. *First*, Livevideo argues that "defendants were unjustly enriched by securing a merger agreement with Skydance on terms less favorable to Paramount stockholders than those Livevideo would have offered." Opp. at 12. But that allegation fails to show that Defendants were enriched at Livevideo's expense, as an unjust enrichment claim requires. OB at 16. *Second*, there is no support for Livevideo's unfair competition or tortious interference claims, which are premised upon Defendants "misappropriat[ing] Livevideo's business opportunity to acquire Paramount." Opp. at 12–14. The Opposition claims that because Paramount's CEO did not "reject[] or critic[ize]" the following email (*i.e.*, that Paramount ignored it), Livevideo established it had a "business opportunity" to buy Paramount or was engaged in "business relations" with Paramount:

> Subject: Congrats! Your edgy inspiring 2005 media fighter role made cut!
>
> The kid stays in the movie."..." Whats better then "The Social Network2"? "Myspace: End ofEUniverse".(working title) ""premieres Xmas 2025 .
>
> "SceneTitle(vou will be forced to select actor to play your role)"
>
> "September 2005, BG announces $13.50 per share counter-bid (which Viacom is secretly financing)...to keep Myspace Public"
>
> "Despite failing to "create the Utopia deal Viacom the White Knight owning 20-339'a of Public Independent Myspace" FAC 31.

-5-

Opp. at 13. An unanswered email does not constitute a "business opportunity" or a "business relationship" that could be lost, misappropriated, or interfered with. *See Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 239 (S.D.N.Y. 2018) (requiring a "reasonable probability of entering into a business relationship" in order to prove a tortious interference claim).

***Third***, Livevideo attempts to justify its aiding and abetting breach of fiduciary duty claim by inviting the Court to extend the law to allow a "prospective acquirer" to bring breach of fiduciary duty claims on behalf of stockholders. Opp. at 14. However, the Opposition offers no legal authority or supporting rationale for this frivolous argument. *See, e.g.*, *Katzman*, 167 F.R.D. at 660 (finding that "[p]laintiffs' RICO claim is not a reasoned argument for the extension of the law but merely a woefully inadequate and fatally flawed pleading" where "[p]laintiffs' counsel offers no explanation or argument for why this otherwise wholly deficient claim should be viewed as an argument for the extension of present RICO requirements").

### B.     Livevideo Brought this Action for an Improper Purpose

The Opposition evades the fact that Livevideo brought this action for an improper purpose, namely to harass NAI and other Defendants in a years-long litigation campaign relating to the sale of Intermix, the former parent company of Myspace. OB at 19. Rather than justify or even explain Greenspan's conduct in numerous other proceedings centered around the 2005 Intermix sale,[3]

---

[3]      Greenspan and his affiliated entities have filed or sought to intervene in ***at least 14 other actions*** in order to relitigate issues concerning or harass those involved with Intermix and its sale. All of those actions have been dismissed. *See, e.g.*, *Greenspan v. eUniverse Inc.*, No. 2:04-cv-607 (C.D. Cal. Jan. 28, 2004); *Greenspan v. Salzman*, No. BC338786 (Cal. Super. Ct. Aug. 24, 2005); *In re Intermix Media, Inc. Shareholder Litigation*, No. BC338945 (Cal. Super. Ct. Aug. 26, 2005); *Greenspan v. Salzman*, No. BC328558 (Cal. Super. Ct. Feb. 10, 2005); *Brown v. Brewer*, No. 2:06-cv-3731 (C.D. Cal. June 14, 2006); *LiveUniverse Inc v. MySpace Inc.*, No. 2:06-cv-06994 (C.D. Cal. Nov. 2, 2006); *In re: High-Tech Employee Antitrust Litigation*, No. 5:11-cv-02509 (N.D. Cal. May 23, 2011); *Huthart v. News Corp.*, No. 2:13-cv-04253 (C.D. Cal. June 13, 2013); *Greenspan v. News Corp.*, No. 9567-VCG (Del. Ch. Apr. 22, 2014); *Greenspan v. IAC/Interactive Corp.*, No. 5:14-cv-04187 (N.D. Cal. Sept. 16, 2014); *Greenspan v. Vantagepoint Venture Associates IV*, Nos. EC064259, ES019019 (Cal. Super. Ct. Jul. 17, 2015); *Chan v. Time Warner, Inc.*, No. 5:16-cv-

Livevideo attempts to distance itself from that conduct by arguing the Court cannot consider the filings and findings from other proceedings (the Court, of course, can do so[4]) and by completely ignoring the Operative Complaint's lengthy allegations concerning those stale events. *See, e.g.*, Dkt. 35 ¶¶ 13, 106 (alleging Dodd-Frank retaliation related to 2003 8-K filing related to Intermix); ¶¶ 14–24 (alleging Intermix deal formed basis of alleged relationship with Paramount's CEO and offer to purchase Viacom in the future); ¶¶ 30–34, 86 (alleging Defendants "sabotaged" opportunities with Paramount related to media rights for Intermix sale story); ¶¶ 61–67, 81–83, 93 (alleging Defendants Varney and Seligman retaliated against Livevideo due to their previous involvement in prior litigation involving Greenspan). Given Greenspan's track record of injecting issues related to Intermix into unrelated lawsuits, and the frivolous nature of Livevideo's claims, the Court can reasonably infer that Livevideo is pursuing this action as part of Greenspan's harassment campaign in aid of somehow relitigating the Intermix sale. *See* OB at 19–20.

### C. The Opposition Continues to Relitigate Adjudicated Issues

In the Opposition, Livevideo and Constants also seek to relitigate issues that this Court has already decided, demonstrating they will continue to abuse the judicial process absent Court intervention. Livevideo ***again*** asserts that the purported "Second Amended Complaint" docketed at Docket No. 32 is "the operative complaint," despite the Court having already rejected that

---

6268 (N.D. Cal. Oct. 30, 2016); *Greenspan v. USSEC*, No. 17-72832 (9th Cir. Oct. 16, 2017); *United States of America v. Google LLC*, No. 1:20-cv-03010 (D.D.C. Oct. 20, 2020).

[4]    Livevideo argues that the evidence of Greenspan's past litigation conduct is somehow inadmissible. Opp. at 18. But a court can of course consider the other judicial decisions referenced in NAI's Opening Brief and take judicial notice of Greenspan's extensive and public litigation history. *See, e.g.*, *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (noting "the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits" was factor in sanctions decision and taking judicial notice of previous litigations).

argument *three times*. *See* Opp. at 7; Dkts. 47; 69 at 1–2; 90 at 10–12.[5] Livevideo also seeks to relitigate NAI's compliance with Rule 7.1's disclosure requirements, another issue this Court has already resolved. Dkt. 123 at 11 n.10; *see* Dkt. 119. Livevideo now claims that had it obtained the information in NAI's Rule 7.1 statement sooner, it could have established federal jurisdiction by dropping non-diverse parties. Opp. at 15–16. But, as the Court has observed, Livevideo *never* "argued that complete diversity exists," Opp. at 15, and instead, has repeatedly claimed federal question jurisdiction *alone* as its basis for subject matter jurisdiction, *see, e.g.*, Dkt. 123 at 11 n.10. Livevideo cannot avoid sanctions by belatedly claiming it *could have* filed a different action against different parties in federal court after litigating this action for months on a different pretense for jurisdiction. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990) ("Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay.").

Livevideo also attempts to sidestep the inadequacies of its Operative Complaint by discussing its potential claims as articulated in its motion to supplement. Opp. at 11–12. Even if those theoretical claims were not frivolous (they are),[6] the supplemental claims—asserted on the night before the February 12 show-cause hearing—have no bearing on whether Livevideo and

---

[5] Livevideo has argued that service on NAI was proper in seven different filings. Dkts. 67 at 2; 70-2 at 7–8, 10–11, 14–16; 84 at 11; 86 at 5–8; 118 at 6; 126 at 6–9; 130 at 16. Indeed, while the parties were briefing the present motion, Livevideo filed an objection to the Court's February 27, 2025 order (Dkt. 123), arguing, once again, that service on NAI was proper, even though the Court has repeatedly rejected that argument and the February 27 order did not even address service on NAI. *See* Dkt. 126 at 6–9.

[6] This Court has already identified at least one fatal flaw (and potential grounds for sanctions) in relation to these new claims. Dkt. 123 at 7 n.6 (noting that proposed supplement, which is signed by Constants, is premised on theory that NAI concealed service attempts in this action, but does not mention that this Court held service ineffective and set aside default).

Constants should be sanctioned for filing and continuing to prosecute ill-informed and patently frivolous federal claims under the Dodd-Frank Act and CFAA.

Livevideo's willingness to relitigate issues that have already been decided by the Court—sometimes more than once—demonstrates why NAI was compelled to seek sanctions. Far from seeking to "intimidate" Livevideo from prosecuting this action, as Livevideo now claims, Opp. at 1, NAI moved for sanctions to deter Livevideo and Constants from continuing their harassing conduct in forcing NAI repeatedly to relitigate—and this Court repeatedly to re-adjudicate—the same frivolous issues.

## II.     INHERENT POWERS SANCTIONS ARE APPROPRIATE

The Opposition attempts to avoid sanctions under the Court's inherent powers by misstating the record and ignoring the extensive bad-faith conduct discussed in the Opening Brief and this Court's orders.[7] OB at 22–23; Dkt. 69 at 1–2; Dkt. 123 at 2–11. Livevideo and Constants' sole argument that they have behaved appropriately in this action is that they had a "reasonable basis" for believing the Defendants were validly served. Opp. at 17. But the issue is not whether they believed service was valid at the time,[8] but rather their attempts to leverage these invalid service attempts into extensive and frivolous motion practice. *See, e.g.*, Dkts. 118 at 6; 126 at 4–10. Having a supposedly reasonable belief that Redstone was validly served under Maryland law

---

[7]     Livevideo takes issue with NAI's Rule 11 "safe harbor" letter, arguing that NAI engaged in a "bait-and-switch tactic" by focusing on "alleged jurisdictional defects and the frivolousness of Plaintiff's claims," without warning of the vexatious and improper conduct outlined in the Motion for Sanctions. Opp. at 5. This is not an accurate description of the letter (*see* Motion Ex. 14 at 5–6), and, indeed, much of the conduct covered by NAI's inherent powers motion occurred ***after*** the safe harbor letter was sent on December 30. In any event, safe harbor papers only need to cover the conduct challenged under Rule 11. *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012) (holding "additional ground" for sanctions not included in safe harbor papers "was part of [defendants's] separate request for sanctions under § 1927, which is not subject to the safe harbor requirement").

[8]     In fact, Constants seems not to have been involved in the attempted service. *See* Dkt. 90 at 6–7.

(evidently formed more than three months after the service attempt) does not excuse moving for a default against Redstone (and against Varney and Seligman) after the Court already told the parties that it was taking the issue of service on those Defendants under advisement. Dkt. 87 ¶ 2. It also does not explain why the affidavit filed along with the proof of service for Redstone "obscures [the] fact" that "she was served with the wrong pleading." Dkt. 123 at 13. The only possible explanation is to cause delay and extra cost.

The Opposition also fails meaningfully to address the very real likelihood that Constants has allowed Greenspan or others to make filings using his ECF credentials without a lawyer drafting, reviewing, or signing those filings. While the Opposition attempts to wave this away as a one-time oversight where a paralegal drafted extensive legal filings overnight without the knowledge or supervision of a lawyer, *see* Opp. at 19–20, the Court need not accept this self-serving and unlikely story, which Constants contradicted at the February 12, 2025 show cause hearing when he stated that no one else worked at his law firm. Dkt. 90 at 5:20–24 (claiming "It's just me . . . . There's nobody else" when asked why his office did not calendar the previous show-cause hearing). Livevideo and Constants' unjustifiable bad-faith conduct also warrants sanctions under the Court's inherent powers.

## CONCLUSION

For the reasons set forth above, this Court should grant NAI's motion seeking sanctions against Livevideo and Constants.

Dated: March 19, 2025 **ROPES & GRAY LLP**

By: */s/ Peter L. Welsh*
Peter L. Welsh
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
peter.welsh@ropesgray.com

Martin J. Crisp
Ani-Rae Lovell
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9821
Fax: (212) 596-9090
martin.crisp@ropesgray.com
ani-rae.lovell@ropesgray.com
*Attorneys for Defendant National Amusements, Inc.*

## CERTIFICATION

The undersigned hereby certifies, pursuant to S.D.N.Y Local Civil Rule 6.3(c), that the foregoing Reply in Support of Sanctions contains 3,467 words exclusive of the caption and signature block.

By: _/s/ Ani-Rae Lovell_
Ani-Rae Lovell
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9821
Fax: (212) 596-9090
ani-rae.lovell@ropesgray.com

*Attorney for Defendant National Amusements, Inc.*