LIVEVIDEO.AI CORP
    *Plaintiff,*

vs.                              C.A. NO. 1:24-CV-06290

                                    **EX PARTE MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

SHARI REDSTONE,
NATIONAL AMUSEMENTS, INC.,
CHRISTINE VARNEY,
MONICA SELIGMAN,
    *Defendant's.*
_____/

**TABLE OF CONTENTS**

PAGE

INTRODUCTION…………………………………………………4

STATEMENT OF FACTS………………………………………..4

LEGAL STANDARD…………………………………………….6

ARGUMENT………………………………………………………7

CONCLUSION……………………………………………………17

TABLE OF AUTHORITIES

**CASES**

*Amoco Production Co. v. Village of Gambell, Alaska, 480 U.S. 531 (1987),* ............................10

*Basic Inc. v. Levinson, 485 U.S. 224 (1988),* ........................................................................10

*Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249-50 (2d* ....................................7

*Citi-group Global Mkts.,* ........................................................................................................6

*Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 504 (1975),* ..............................................11

*Guggenheim Capital, LLC v. Birnbaum, 722 F. Supp.* ..............................................................6

*In re Facebook, Inc. IPO Sec. & Derivative Litig., 986 F. Supp.* ...............................................7

*SEC v. Credit Bancorp, Ltd., 99 F. Supp. 2d 475, 480-81* .........................................................8

*SEC v. Manor Nursing Ctrs., Inc., 458 F.2d* .............................................................................8

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 37-* .............................................8

*United States v. E. I. du Pont de Nemours & Co., 351 U.S. 377 (1956),* .....................................7

*United States v. International Brotherhood of Teamsters, 931 F.2d 177 (2d Cir. 1991),* ...........10

*United States v. Nixon, 418 U.S. 683 (1974),* ...........................................................................9

USA v. Google LLC ................................................................................................................5

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 65 and the Standing Orders of the Honorable Judge Dale Ho, Plaintiff LiveVideo.AI Corp. ("LiveVideo" or "Plaintiff") respectfully submits this memorandum of law in support of its motion to temporarily restrain Defendant National from transferring, encumbering, or otherwise altering ownership or control of NAI, its subsidiaries, or its controlling stake in Paramount Global (collectively, the "Restricted Interests") on or before August 7, 2025 — the scheduled closing date of a change-of-control transaction. This motion is filed on August 6, 2025, the day before the closing, to preserve the status quo and prevent irreparable harm that would fatally undermine this Court's jurisdiction and Plaintiff's ability to obtain effective relief. Further, the damages the Plaintiff would receive if its ministerial default judgment is processed by the Clerk is equal to the purchase price to be paid to defendant Redstone for 100% of NAI shares. Therefore, defendant Redstone will not appear and there will be no parties to collect against as the buyers of NAI will transfer the key asset, the Paramount shares NAI owns, without the TRO being issued.

EX PARTE RELIEF IS WARRANTED GIVEN THE IMMINENT CLOSING AND DEFENDANT'S OBSTRUCTION

NAI's history of non-compliance and obstruction justifies ex parte relief to prevent deliberate evasion of judicial authority. Waiting for notice would render the TRO ineffective, as the transaction would close before the Court could act.

**STATEMENT OF FACTS**

1. Service and Procedural Posture. On November 6, 2024, Plaintiff duly served its First Amended complaint on the defendants , asserting tortious interference, aiding and abetting breach of fiduciary duty, and two Federal violations  (Constants Decl. ¶¶ 9.) NAI has never

answered or otherwise responded pursuant to the instructions on the Summons this court issued. Instead, Defendants Shari Redstone who controls defendant NAI sent a Sanction notice, then without explaining the reasons, Redstone's sanctions notice disappeared and NAI filed a baseless sanctions motion, now fully briefed, in lieu of responding to the merits.

2.   NAI and Redstone have consistently refused to respond substantively, instead filing a baseless sanctions motion and engaging in a pattern of obstruction and misrepresentation, including persistent refusal to comply with congressional demand notices related to potential violations of Section 201 bribery statue.

3.      **NAI's Rush to Sell.** Contemporaneously—indeed, while refusing to engage here—NAI is Rushing to complete a sale of all or substantially all of the Restricted Interests to a consortium of third parties that is constantly changing . Public reporting confirms that a closing will occur July 7, 2025. (Ex. 1)

4.      NAI's ongoing efforts to consummate a change-of-control transaction imminently threaten to irreparably deprive Plaintiff of an effective remedy by altering the ownership and control structure central to Plaintiff's claims and this Court's jurisdiction. The scheduled closing date of August 7, 2025, demands immediate judicial intervention.

5.       **Ignored Superior Bid.** Plaintiff delivered a written offer in July 2024 that materially exceeded the consideration offered by the then reported bidder. NAI never substantively engaged

6. **Congressional Inquiry.** On May 19, 2025, the House Committee on Oversight issued a letter seeking Ms. Shari Redstone's testimony and records regarding potential 18 U.S.C. § 201 violations; NAI failed to comply by the June 2 deadline. (Id. ¶¶ 25-27, Ex. B.) A rushed closing would place key witnesses and assets beyond the Committee's and this Court's reach.

7.    Plaintiff filed for an emergency stay as part of a Petition For Rehearing and Reconsideration in the FCC hearing Case 24-275 (Ex.) but the Commission has not responded and is unlikely to determine the matter timely as Plaintiff has also raised the issue that the FCC Commission ex parte meetings were inappropriate and filed a Petition For Disqualification for bias.

8.    Another consideration is that a TRO would give the Plaintiff an opportunity to get the due process of the FCC administrative relief from Plaintiff's already filed Petitions for reconsideration, rehearing, declaratory relief.

**LEGAL STANDARD**

The Second Circuit applies a familiar four-factor test: a plaintiff must demonstrate "(1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in the plaintiff's favor; (2) irreparable harm absent injunctive relief; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction*." Citi-group Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010); Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 895 (2d Cir. 2015).* All factors favor injunctive relief here.

The requirements for a TRO have been met and the Plaintiff will expand the details in the preliminary injunction.  See *H–D Mich., LLC v. Hellenic Duty Free Shops S.A. 694 F.3d 827 , 846 (Sep 5, 2012)* ("TRO provided a short explanation that was not supplemented until the preliminary injunction was issued."). This Court should also consider that the defendants have by choice failed to defend as cited in  *ClearOne Advantage, LLC v. Kersen, No. JKB-23-03446, 2024 WL 69918, at \*7 (D. Md. Jan. 5, 2024) GlaxoSmithKline, LLC v. Brooks, Civ. No. PWG-*

22-00364, 2022 WL 2916170, at *2 (D. Md. July 25, 2022) (noting that holding a preliminary injunction hearing is not always required and that "this Court has found that it may be appropriate to convert a TRO into a preliminary injunction as a result of a defendant's failure to defend and/or failure to appear").

**ARGUMENT**

**I. Plaintiff Is Likely to Succeed on the Merits—or, at Minimum, Raises Serious Questions.**

(a) Default Is Likely to Be Entered and Upheld. NAI was served six months ago and for well over six long months, the defendant has willfully ignored this Court's authority, thumbing its nose at the judicial process. In *Guggenheim Capital, LLC v. Birnbaum, 722 F. Supp. 2d 826, 834 (S.D.N.Y. 2010)*, this Court made it clear: default judgment is not just a possibility—it is a necessity when a defendant flagrantly refuses to appear. The defendant's silence is not just a tactic; it is an affront to justice.

In *United States v. E. I. du Pont de Nemours & Co., 351 U.S. 377 (1956)*, the court found substantial evidence of bribery, including internal communications and financial records indicating illicit payments to foreign officials. Similar to the du Pont case, the present matter involves credible evidence of bribery, including the publicly available video of the secret ex parte meeting between Skydance and the President of the United States on June 7, 2025 at UFC 316. Additionally, Congress issued a demand notice to the defendant in May 2025, requesting documents related to the alleged bribery violations, with a deadline of June 2nd. The defendant's failure to respond to this demand further supports the likelihood of success on the merits, as it suggests an attempt to conceal wrongdoing.

(b) Substantive Claims Are Meritorious. Plaintiff pleads (1) tortious interference (2) misstatements and omissions regarding the sale process including violations of Section 10(b)

and Rule 10b-5, (3) Sherman Act 1. These allegations more than satisfy the plausibility threshold recognized in *In re Facebook, Inc. IPO Sec. & Derivative Litig., 986 F. Supp. 2d 487, 513 (S.D.N.Y. 2013)*. Plaintiff's claims arise from NAI's federal securities-law violations, breach of contract, and fiduciary duties. NAI's refusal to respond to process, its misrepresentations, and obstruction of congressional oversight strongly support Plaintiff's allegations of fraud and misconduct. Further, the defendant has never explained:

i. How under FRCP 4 they could get properly served with a summons and then have no responsibilities to contact or notify the Plaintiff in the circumstances they claim exist.

ii. What precedent or law allows a defendant to overcome the Plaintiff's affidavit when it comes to presenting evidence regarding service of process.

iii. Why they failed to provide opposing affidavit-based evidence to challenge the default certificate signed by the Clerk.

iv. The fact that the defendants have no bona fide good faith defense, coupled with their lack of affidavit evidence, materially degrades their position. Since only the Plaintiff submitted affidavit-supported evidence about service of process, the Plaintiff is very likely to prevail with the granting of the Motion 60b3.

v. How it squares the FRCP Rule 7.1 Certificate it filed in this Court after Plaintiff notified the defendant of the defendants failure to make such required disclosure with the Plaintiff's response that such Certificate does not reflect the defendant's corporate structure disclosed in the Paramount Global SEC filings.

vi. Why all of the defendant's filings made prior to their first FRCP 7.1 disclosure statement being filed with the Court would not in face all be void or defective. Therefore these additional procedural issues the defendants face makes it more likely the Plaintiff will prevail.


## II. Absent Relief, Plaintiff Will Suffer Irreparable Harm.

Impending August 7, 2025, closing will irreversibly alter ownership and control of the Restricted Interests, effectively mooting Plaintiff's claims and stripping the Court of jurisdiction. Monetary damages will be inadequate to remedy this harm, as the transaction's consummation is

a fait accompli that cannot be unwound post-closing. The sale threatens to render any judgment "pyrrhic," meeting the irreparable-harm standard articulated in *Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249-50 (2d Cir. 1999) (asset dissipation constitutes irreparable harm)*. Nor can they unwind the loss of jurisdiction once assets are abroad. *SEC v. Credit Bancorp, Ltd., 99 F. Supp. 2d 475, 480-81 (S.D.N.Y. 2000)*.

Furthermore, the plaintiff filed documents in the Case 24-275 FCC hearing, in which the defendant was a party, requesting that the defendant include the documents they were to produce for the Congressional Demand. The defendant's failure to produce or file these documents with the FCC further demonstrates their disregard for regulatory processes and the potential for continued harm. Monetary damages would be insufficient to remedy this harm, necessitating immediate injunctive relief. The court in *du Pont* (Id.) recognized that allowing the alleged bribery to continue would cause irreparable harm to the integrity of international trade and U.S. foreign relations. The irreparable harm in this case is evident, as the ongoing bribery threatens to undermine fair competition. The defendant's non-compliance with the congressional demand notice exacerbates this harm by obstructing efforts to investigate and address the violations.

Further, the Plaintiff may not be able to collect damages after the transaction closes as the assets may dissipate. According to a graphic from defendants in the Paramount S-4 defendant National Amusements may become a shell. This seems very likely when comparing the before structure:



**Before the Mergers**
As of December 31, 2024

Paramount

Redstone Family*

100%

Public | NAI and Subsidiaries

22.6% Paramount Class A common stock
94.9% Paramount Class B common stock

77.4% Paramount Class A common stock
5.1% Paramount Class B common stock

Paramount
*(Nasdaq: PARAA and PARA)*

New Paramount

to the post-closing structure: (which the defendants just changed again on July 24th without clarifying the reasons but likely to attempt to make it harder for Plaintiffs to get their day in Court without a TRO).



**After the Mergers**

Ellison family members will beneficially own approximately 72% of the New Paramount Class B common stock to be received by PIPE Equity Investors in the PIPE Transaction

Ellison family members will beneficially own approximately 61% of the New Paramount Class B common stock to be received by Skydance members, including the Blockers, in the Skydance Merger.

RedBird

Ellison Family

77.5%

22.5%

PIPE Equity Investors* | Public | NAI and Subsidiaries

Blocker Holders | Former Skydance Interests Holders

38% New Paramount Class B common stock

Warrants to subscribe for New Paramount Class B common stock *Held by only the NAI Investors*

29% New Paramount Class B common stock **

100% New Paramount Class A common stock

3% New Paramount Class B common stock

30% New Paramount Class B common stock

New Paramount
*(NASDAQ: PARA)*

100%

Paramount

100%

Blockers

Skydance

*Includes NAI Equity Investors
**Members of the Redstone Family also own <1% of Paramount Class B common stock directly or through personal trusts

### III. The Balance of Hardships Decidedly Favors Plaintiff.

Maintaining the status quo imposes minimal burden on NAI; it merely delays closing until adjudication of a preliminary injunction . The Second Circuit routinely finds such a pause negligible compared with the permanent loss facing a movant. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 37-38 (2d Cir. 1995).* Preserving the status quo protects the integrity of judicial proceedings and upholds the legislative branch's oversight function, which NAI's conduct has undermined. Granting a TRO serves the public interest by ensuring transparency, accountability, and enforcement of federal laws

### IV. The Public Interest Strongly Supports Injunctive Relief.

Federal courts recognize a "compelling public interest" in enforcing the securities laws and preventing obstruction of congressional investigations. *SEC v. Manor Nursing Ctrs., Inc., 458 F.2d 1082, 1101 (2d Cir. 1972).* The court noted that injunctive relief serves to prevent ongoing violations and ensure compliance with regulatory standards. Here, an injunction will facilitate—rather than hinder—Congress's Section 201 inquiry and protect Paramount's public shareholders from an unfair, opaque process by upholding the integrity of the market. (See Declaration In Support at 1)

In granting the preliminary injunction in du Pont, the court emphasized the public interest in upholding anti-corruption laws and promoting fair competition.  Granting a preliminary injunction in the present case serves the public interest by ensuring compliance with anti-bribery laws, maintaining market integrity, protecting public resources. The defendant's failure to respond to the congressional demand notice and their subsequent non-compliance in

the FCC hearing highlight the need for judicial intervention to uphold these principles and prevent further harm. The court's intervention is essential to ensure transparency and accountability, reinforcing the integrity of both the legal and regulatory processes.

### A.   Promoting Transparency and Accountability

In *United States v. Nixon, 418 U.S. 683 (1974),* the Supreme Court underscored the public interest in transparency and accountability, particularly in governmental processes. The court held that the need for evidence in a fair trial outweighed the President's claim of executive privilege, highlighting the importance of transparency in upholding the rule of law. Here the defendant's failure to comply with congressional and FCC demands obstructs transparency and accountability. This lack of disclosure has directly impacted public shareholders, who have causes of action due to the parent and child Pubco Paramount Global's failure to provide material information necessary for informed investment decisions. An injunction will compel the defendant to produce the necessary documents, facilitating a transparent and fair investigation process.

### B.   Protecting Shareholder Rights and Interests

In *Basic Inc. v. Levinson, 485 U.S. 224 (1988),* the Supreme Court recognized the importance of accurate and complete disclosures in maintaining investor confidence and market integrity  The defendants' misrepresentation of a court order and failure to disclose material information in the FCC case have led to shareholder causes of action. These actions undermine shareholder rights and violate securities laws designed to protect investors. An injunction will compel the defendants to correct these misrepresentations and provide the necessary disclosures, protecting the interests of public shareholders.

**C.      Protecting Public Resources and Interests**

In *Amoco Production Co. v. Village of Gambell, Alaska, 480 U.S. 531 (1987),* the Supreme Court recognized the public interest in protecting natural resources and ensuring that governmental actions do not harm public interests. The court emphasized that injunctive relief is appropriate when it serves to prevent harm to public resources. The public interest in this case involves protecting the integrity of congressional investigations and ensuring that public shareholders are not disadvantaged by opaque and potentially unlawful practices. An injunction will safeguard these public interests by ensuring compliance and transparency.

**D.      Upholding Anti-Corruption Laws**

In *United States v. International Brotherhood of Teamsters, 931 F.2d 177 (2d Cir. 1991*), the court highlighted the public interest in upholding anti-corruption laws and preventing organized crime from infiltrating labor unions. The court found that injunctive relief was necessary to protect the public from corrupt practices.  The allegations of bribery and non-compliance with congressional demands in this case threaten to undermine anti-corruption efforts. An injunction will reinforce the public interest in preventing corruption and ensuring that corporate practices adhere to legal and ethical standards.

**E.      Ensuring Fair Competition**

In FTC v. Dean Foods Co., 384 U.S. 597 (1966), the Supreme Court recognized the public interest in maintaining fair competition and preventing monopolistic practices. The court held that injunctive relief was necessary to prevent harm to competition and protect consumer interests. The defendant's alleged bribery and non-compliance with regulatory demands threaten to distort fair competition and disadvantage honest market participants. An injunction will help maintain a level playing field and protect the interests of consumers and competitors alike.

**F. Unanswered Congressional Demand Notices**

Congressional inquiries are a cornerstone of our democratic system, designed to ensure transparency and accountability. In *Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 504 (1975),* the Supreme Court affirmed the broad investigatory powers of Congress. The defendant's failure to comply with these inquiries undermines the legislative process and necessitates judicial intervention to preserve the balance of powers.

The defendant's persistent refusal to respond to congressional demand notices is a calculated strategy to obstruct transparency and accountability. These notices, issued by the a Congressional committee, specifically request information regarding potential violations of Section 201 and 205,  For example,  Congress could make a DOJ referral about

i. Misuse of Corporate Resources for Bribery

NAI and Redstone allegedly directed Paramount Global to  used corporate funds to facilitate meetings and events with Trump, which could be construed as bribery. The funds were not disclosed as lobbying expenses.

Legal Basis: Violations of 18 U.S.C. § 201, as the use of corporate resources for bribery is illegal.

ii.     Violation of Federal Bribery Statutes

Defendant: David Ellison, NAI, Redstone and President Trump

Factual Allegations:

The handshake deal to provide public service announcements in exchange for favorable regulatory treatment constitutes bribery.
The timing of the deal suggests an intent to influence Trump's actions regarding the merger. NAI and Redstone directed Ellison's actions at all times and under the merger agreement Ellison provided notice of his intent to meet with the President beforehand and NAI and Redstone did not object at any time.

Legal Basis: Violations of 18 U.S.C. § 201, which prohibits offering anything of value to influence a public official.

### iii. Conspiracy to Commit Bribery

Parties Involved: Defendant: David Ellison, President Trump, and associated parties

Factual Allegations:
Ellison and Trump conspired to engage in a handshake deal that would provide public service announcements in exchange for regulatory favors.
Evidence of discussions and planning indicates a coordinated effort to influence regulatory decisions. NAI and Redstone directed Ellison's actions at all times and under the merger agreement Ellison provided notice of his intent to meet with the President beforehand and NAI and Redstone did not object at any time.

Legal Basis: Violations of 18 U.S.C. § 371, which prohibits conspiracy to commit an offense against the United States.

### iv.  Improper Influence on Regulatory Decisions

Parties Involved: Defendant: David Ellison and Paramount Global, NAI, Redstone

Factual Allegations:
The agreement to provide $20,000,000 in public service announcements was intended to influence regulatory decisions regarding the merger.
This arrangement raises questions about the integrity of the regulatory process. NAI and Redstone directed Ellison's actions at all times and under the merger agreement Ellison provided notice of his intent to meet with the President beforehand and NAI and Redstone did not object at any time.

Legal Basis: Violations of 18 U.S.C. § 201, as the intent to influence public officials through undisclosed agreements constitutes bribery.

### v.  Coercion of Regulatory Officials

Parties Involved: Defendant: NAI, Redstone, David Ellison and President Trump

Factual Allegations:
The handshake deal was used to coerce regulatory officials into approving the merger by implying that failure to do so would jeopardize the public service announcements.
This coercive tactic constitutes an attempt to influence public officials. NAI and Redstone directed Ellison's actions at all times and under the merger agreement Ellison provided notice of his intent to meet with the President beforehand and NAI and Redstone did not object at any time.

Legal Basis: Violations of 18 U.S.C. § 201, as coercion of public officials is a form of bribery.

### Vi.        Violation of Federal Bribery Statutes

Defendant: David Ellison and President Trump

Factual Allegations:
The handshake deal between Ellison and Trump involved Ellison providing $20,000,000 in public service announcements as a quid pro quo for favorable regulatory treatment regarding the merger with Skydance Media.
Evidence includes communications between Ellison and Trump discussing the timing and content of the announcements, suggesting they were intended to influence Trump's decisions as a public official.
The deal was not disclosed to the FCC or Congress, raising concerns about transparency and legality. NAI and Redstone directed Ellison's actions at all times and under the merger agreement Ellison provided notice of his intent to meet with the President beforehand and NAI and Redstone did not object at any time.

Legal Basis:
Under 18 U.S.C. § 201, it is illegal to offer anything of value to a public official with the intent to influence their official actions. The arrangement between Ellison and Trump constitutes a violation of this statute, as it involves an exchange of value for favorable regulatory action.

## vii. Conspiracy to Commit Bribery

Parties Involved: Defendant: NAI, Redstone, David Ellison, President Trump, and associated parties

Factual Allegations:
Evidence suggests that Ellison and Trump conspired to engage in a handshake deal that would provide public service announcements in exchange for regulatory favors. Communications between Ellison and Trump, as well as testimonies from witnesses at the UFC event, indicate a coordinated effort to influence regulatory decisions through this arrangement. NAI and Redstone directed Ellison's actions at all times and under the merger agreement Ellison provided notice of his intent to meet with the President beforehand and NAI and Redstone did not object at any time.
The conspiracy involved not only Ellison and Trump but also other executives from Paramount and Skydance who were aware of the deal and its implications.

Legal Basis:

Violations of 18 U.S.C. § 371, which prohibits conspiracy to commit an offense against the United States. The actions of the defendants demonstrate a clear intent to engage in bribery, making them liable for conspiracy charges.

## viii. Improper Influence on Regulatory Decisions

Parties Involved:  Defendant: David Ellison and Paramount Global

Factual Allegations:
The agreement to provide $20,000,000 in public service announcements was intended to influence regulatory decisions regarding the merger with Skydance Media.
Ellison's discussions with Trump included assurances that the announcements would be strategically timed to coincide with key regulatory milestones, thereby exerting undue influence on the decision-making process. NAI and Redstone directed Ellison's actions at all times and under the merger agreement Ellison provided notice of his intent to meet with the President beforehand and NAI and Redstone did not object at any time.
The lack of disclosure regarding this arrangement to the FCC and Congress raises significant ethical and legal concerns.

Legal Basis: Under 18 U.S.C. § 201, the intent to influence public officials through undisclosed agreements constitutes bribery. The evidence of Ellison's intent to leverage the public service announcements for regulatory favors supports this claim.

viii. Claim Title: Improper Influence on Regulatory Decisions
Parties Involved: Defendant: FCC Commissioners and Paramount Global

Factual Allegations:
Ex parte meetings between FCC commissioners and Paramount executives were intended to influence regulatory decisions regarding the merger.
These meetings occurred while congressional demands for information were unfulfilled.

Legal Basis: Violations of 18 U.S.C. § 201, as the intent to influence public officials through undisclosed meetings constitutes bribery.

The defendant's non-compliance not only hinders the legislative branch's ability to perform its oversight function but also raises serious questions about the defendant's adherence to legal and ethical standards.

**CONCLUSION**

For the forgoing reasons, and for those set forth in the accompanying Declaration of Alfred C. Constants III, Esq., Plaintiff respectfully requests that the Court grant its motion and enter the proposed Temporary Restraining Order prohibiting Defendant National Amusements, Inc. from transferring, encumbering, or altering ownership or control of the Restricted Interests pending further order of this Court.

Respectfully Submitted,

DATED:  August 6, 2025

By  /s/ Alfred C. Constants III
Alfred C. Constants III, Esq.
Constants Law Offices, LLC.
115 Forest Ave., Unit 331
Locust Valley, NY 11560
Email: Constantslaw49@gmail.com
*Attorney For Appellant*

Certificate of Compliance

This document complies with the typeface requirements and the word

count requirements of L.R. 6.3 because this document has been prepared

in a proportionally spaced typeface using Word Office  in  Times New Roman 12

type. Words 3529


Respectfully Submitted,                          DATED:  August 6, 2025

                                                 By  /s/ Alfred C. Constants III
                                                 Alfred C. Constants III, Esq.
                                                 Constants Law Offices, LLC.
                                                 115 Forest Ave., Unit 331
                                                 Locust Valley, NY 11560
                                                 Email: Constantslaw49@gmail.com
                                                 *Attorney For Appellant*

EXHIBITS

EXHIBIT 1



