UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

LIVEVIDEO.AI CORP,

               Plaintiff,

v.                            Case No. 1:24-cv-06290-DEH-BCM

SHARI REDSTONE, NATIONAL
AMUSEMENTS, INC., CHRISTINE
VARNEY, and MONICA SELIGMAN,

               Defendants.
_____

## PLAINTIFF'S RULE 72(b) OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), Plaintiff LiveVideo.AI Corp ("LiveVideo") respectfully objects to the Report and Recommendation ("R & R) issued August 12, 2025 (Dkt. 163) recommending: (i) dismissal without prejudice under Rule 4(m) and mooting all of the parties' remaining motions (including plaintiff's motions to supplement its pleading and for judicial notice); (ii) Rule 11 sanctions jointly and severally against Plaintiff and counsel for $10,000; and (iii) referral of counsel to the SDNY Grievance Committee; and (4) tailored leave-to-file an injunction against the plaintiff. Attached is the declaration of Brad Greenspan <u>inter alia</u>, which address the issue of whistle blower and the fact that the magistrate denied his claim of federal jurisdiction.

De novo review is required because the R&R recommends dispositive relief, including dismissal and sanctions. Williams v. Beemiller, 527 F.3d 259, 266 (2d Cir. 2008) (insufficient-service dispositive rulings require report and recommendation and de novo review).

First the R&R is faulty because it omits new antitrust violations and additional acts of security fraud which have occurred and made public in the FCC matter. <u>See</u> Mlex.com top antitrust reporter news for legal profession:



MLex Ltd. | www.mlex.com

Phone: +44 800 999 3237 | +1 800 356 6547 | +852 2965 1424 | customerservices@mlex.com

## LiveVideo.AI asks US FCC to reconsider Skydance-Paramount merger clearance

By **Curtis Eichelberger** and **Ilana Kowarski**

July 28, 2025, 23:33 GMT | Insight

> Streaming technology company LiveVideo.AI Corp asked the US Federal Communications Commission today to revisit its approval of film and TV production company Skydance Media's proposed acquisition of Hollywood studio Paramount Global based on concerns about unresolved congressional inquiries.

Streaming technology company LiveVideo.AI Corp asked the US Federal Communications Commission today to revisit its approval of film and TV production company Skydance Media's proposed acquisition of Hollywood studio Paramount Global based on concerns about unresolved congressional inquiries.

The company, a longtime opponent of the Skydance/Paramount merger, claims that the FCC misrepresented the status of congressional oversight of the merger by falsely asserting that there were no congressional correspondences filed in the case when there were two (see here). The company also alleges that the FCC misrepresented the existence of unfulfilled congressional demands for evidentiary productions by the applicants.

In addition, LiveVideo.AI accuses the FCC of misrepresenting the focus of a July 21, 2025 Skydance congressional inquiry that asked about an alleged secret personal services agreement (PSA) with US President Donald Trump.

The company cited an unanswered letter written by three US Senate Democrats — Elizabeth Warren of Massachusetts, Bernie Sanders of Vermont and Ron Wyden of Oregon — to Skydance CEO Dave Ellison (see here and here) in which the senators questioned Ellison about "the nature of any payments to President Trump, and whether these payments comply with our

https://www.mlex.com/mlex/articles/2370254/printsection=index/antitrust                              Page 1 of 3

nation's anti-bribery laws" and demanded a reply by August 4.

"The FCC avoided review of the $20 million dollar PSA issue by misrepresenting Congress' focus to be only on the written settled legal complaint between President Trump and Paramount," the company alleged . "The FCC subsequently swept LiveVideo.AI's motions to re-open the record, petition for declaratory relief and motion for production of evidence, into the same misrepresentation category as the FCC categorized congressional oversight."

The FCC, Skydance and Paramount didn't immediately respond to requests for comment on LiveVideo.AI's petition.

LiveVideo.AI argued that the Skydance congressional inquiry's August 4 deadline demonstrates "a widening scope of congressional investigation into potential undisclosed agreements that could influence the merger's outcome or represent further ethical breaches."

Live Video.AI said in its filing that the FCC misrepresented that Congress was focused on a settled CBS legal matter between Trump and Paramount, when in fact, the July 21 demand is directed at Skydance, not Paramount. "Therefore it clearly was not related to the written settlement between President Trump and Paramount," the company said.

LiveVideo.AI alleged that neither Paramount nor Skydance had fulfilled their legal obligations to Congress when the FCC moved forward and approved the Skydance-Paramount merger, and asserted that deal clearance under these circumstances was improper.

The FCC conditionally approved the Skydance/Paramount license transfer application on July 24 with the proviso that applicants must eliminate political bias against conservatives in future CBS news coverage and dismantle their preexisting diversity, equity and inclusion programs (see here).

*Please e-mail editors@mlex.com to contact the editorial staff regarding this story, or to submit the names of lawyers and advisers.*

The R&R rests on clearly erroneous factual premises and legal errors, including: (1) misapplication of Rule 4(m) and Rule 61 to undisputed actual notice and administrative ECF refiling events; (2) disregard of Defendants' own admissions confirming receipt of the pleadings; (3) reliance on a hyper-technical "operative complaint" theory to convert harmless docketing issues into case-ending defaults; (4) recommending Rule 11 sanctions despite colorable, good-faith arguments and without adequately accounting for safe-harbor and lesser

sanctions; (5) imposing an overbroad filing injunction not tailored to the Safir factors; (6) overlooking repeated, material irregularities in Defendants' motion practice (including Rule 7.1) that were not comparably enforced; and (7) undervaluing the public-interest weight of antitrust issues and the statutory expectation of expedition under 15 U.S.C. § 4, while maintaining a stay that chilled Plaintiff's Rule 15(d) supplementation.

LiveVideo asks the Court to: (a) reject the dismissal recommendation; (b) deny sanctions and any filing injunction, or substantially narrow any injunction; (c) grant a brief nunc pro tunc extension under Rule 4(m) (or accept the prior service as effective under Rule 61's harmless-error principle and the Court's inherent discretion); (d) lift the stay on briefing of the Rule 15(d) motion and set a schedule; and (e) sustain Plaintiff's prior request to revoke/reassign the general pretrial referral in light of 28 U.S.C. § 455(a) appearance issues and the now-elevated risk of prejudice following the R&R.

## BACKGROUND

Plaintiff filed its First Amended Complaint ("FAC") (Dkt. 32), following earlier docket attempts that were subject to administrative ECF correction. The Clerk previously directed refiling to cure ECF-registration defects—not merits defects. See 12/18/24 Order (Dkt. 69) at 1–2; R&R at 10–12.

Plaintiff served process in November and December 2024 and sought Certificates of Default in December. In early December, plaintiff's counsel was telephoned by Ani-Rae Lovell, Esq. of Ropes and Gray who represented National Amusements, Inc. ("NAI"). Ms. Lovell told Plaintiff's counsel that NAI had never

received notice for the amended summons and complaint. (Dkt. 67). After counsel investigated the matter and determined that plaintiff had served the summons and complaint upon NAI, the undersigned telephoned Ms. Lovell to explain. When she did not pick up the phone, undersigned counsel left a message in voice mail as she did not pick up the telephone.

Defendant promptly appeared and opposed default, acknowledging they had the pleadings and would "vigorously defend." See Defs' Dec. 11, 2024 letters; R&R at 11–12.

On February 12, 2025, the Court held a show-cause hearing regarding Rule 4(m) and service. By then, proofs of service for the additional defendants had been filed (Dkts. 79–81). Shari Redstone was served on November 6, 2024. (Dkt. 79). Seligman was served on December 30, 2024. (Dkt. 80). Christine Varney was served on December 30, 2024. (Dkt. 81). The Court denied an oral motion to extend Rule 4(m)(for purposes of service of summons and compliant upon Monica Seligman and Christine Varney), reserved dismissal, and stayed briefing on Plaintiff's Rule 15(d) supplementation (later admonishing Plaintiff on April 1, 2025). See 2/12/25 Order (Dkt. 87); 4/1/25 Order (Dkt. 137).

Defendants moved for Rule 11 sanctions on February 26, 2025 (Dkts. 120–22). On August 12, 2025, the Magistrate Judge issued the R&R recommending dismissal under Rule 4(m), monetary sanctions, a filing injunction, referral of counsel and a litigation ban on LivevideoAI. See R&R (Dkt. 163). Recently LiveVideo.AI Corp was lauded by other shareholders for helping push for transparency.



**MLex Ltd.** | www.mlex.com

Phone: +44 800 999 3237 | +1 800 356 6547 | +852 2965 1424 | customerservices@mlex.com

## Paramount, Skydance didn't answer Congress' questions, LiveVideo.AI tells US FCC

July 28, 2025, 22:22 GMT | Official Statement

MLex Summary:  LiveVideo.AI Corp. petitioned the US Federal Communications Commission for a rehearing of its order approving Paramount and Skydance's application for the transfer of a broadcast license. The company said misrepresentations were made by the US FCC regarding unanswered congressional inquiries, including questions about a personal-services agreement with US President Donald Trump.

## STANDARD OF REVIEW

Dispositive recommendations (Rule 4(m) dismissal; Rule 11 sanctions) are reviewed de novo. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Factual findings underlying dispositive recommendations are reviewed de novo; legal conclusions are reviewed de novo.

## SPECIFIC OBJECTIONS

### Rule 4(m) Dismissal: Misapplication of "Operative Complaint" and Failure to Exercise Discretion to Prevent Manifest Injustice

The R&R treats a routine ECF refiling instruction as transforming service on the FAC into "service of a superseded pleading" (R&R at 23–26), ignoring: (a) undisputed actual notice; (b) Defendants' prompt appearance and substantive engagement; and (c) that the Clerk's refiling direction was administrative (counsel ECF registration), not a merits rejection.

Courts in this Circuit routinely avoid Rule 4(m) dismissal where defendants had actual notice and no prejudice, exercising discretion to extend time even absent "good cause." Zapata v. City of New York, 502 F.3d 192, 196–99 (2d Cir. 2007).

Plaintiff sought to correct service quickly; Defendants suffered no prejudice and promptly litigated without being in the case. A brief nunc pro tunc extension is the sensible, equitable remedy. All of the defendants had known about the claims because NAI's SEC submissions tracked what was going on. From the R & R, "two weeks after the 90-day service had expired." (Dkt. 163-14). Rule 61 codifies harmless error: "The court must disregard all errors and defects that do not affect any party's substantial rights."

Here, any "operative-pleading" mismatch was a technical docketing issue. Defendants had the FAC, said as much, and litigated as if served. See, e.g., 12/11/24 and 12/18/24 letters; Defs' sanctions papers (Dkt. 122-14 at 8) admitting they reviewed "every version" and called them "frivolous." These admissions are contrary to the Magistrate's dismissal of service of the summons and the complaint.

The R&R's elevation of docket-labeling formalities over actual notice contravenes Rule 61 and common sense. See Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984) (technical service defects do not invalidate service where defendant has actual notice).

The R&R's reliance on cases where plaintiffs took no steps to cure, showed no diligence, or caused prejudice (R&R at 22–26) is inapposite. Here, Plaintiff

effected service, set defaults in motion, and Defendants in fact appeared and opposed on the merits.

If the Court finds any defect remained, the correct remedy is to extend the Rule 4(m) deadline—particularly after the Court's own orders generated confusion about refiling and stays. Plaintiff asks this Court to reject the Rule 4(m) dismissal recommendation. Alternatively, grant a 21-day nunc pro tunc extension to re-serve, or deem prior service effective under Rule 61.

Even after this communication, Ropes and Gray failed to inform the Plaintiff about NAI's claim of being served with a defective copy or incorrect version of the summons or complaint. In fact, the defendant couldn't produce admissible evidence that Plaintiff's process server had delivered the denied 30-page Dkt 44 amended Complaint on November 6, 2024, instead of the September 3, 2024 signed amended complaint (51 pages). The defendant's actions violated several rules and procedures:

i. The Dec 11 ECF letter failed to qualify as a legitimate letter-motion under the magistrate's individual rule 1(b).

ii. It could not be considered a 55, 55c, or 55a letter-motion as these types are not listed in ECF Rule 13.1 or authorized by Judge Ho's individual practices.

iii. ECF Rule 13.1 prohibits motions 55, 55c, 55a, as they do not appear in the allowable list.

iv. The magistrate lacks authority to recognize novel letter-motion ECF types.

v. Both of Defendant's ECF letters failed to use the ECF filing event Motion.

vi. The letter-motion did not follow the required two-step ECF type selection process.

vii. The Dec 11 ECF letter contravened L.R. 7.1(a)(1), (2), and (3) for lacking a notice of motion, memorandum of law, and supporting affidavit, respectively.

viii. It also violated L.R. 7.1(a)(4) as the defendant's reply failed to comply with subsections (a)(1), (2), and (3).

ix. The use of an informational ECF letter as a legitimate letter-motion circumvents the very rules designed by Federal SDNY L.R., ECF, and Judge Ho to prevent such tactics.

These violations collectively demonstrate a pattern of misconduct and attempts to circumvent established court procedures. NAI's intent to commit misrepresentation is evident in their December 11 ECF letter motion, which made misleading assertions about the Plaintiff's attempt to serve "the proposed Second Amended Complaint." and relate to the following filings:

i. Docket No. 47, the magistrate denial order defendant referenced, states:

"By order dated September 26, 2024 (Dkt. 46), the Court ordered plaintiff to either (i) withdraw its proposed SAC (Dkt. 44) or..."

"Consequently, leave to file the proposed second amended complaint is hereby DENIED"

ii. Docket No. 44 is the DENIED "FRCP RULE 15 NON-COMPLIANCE SECOND AMENDED COMPLAINT", a 30 page complaint

submitted Sep 19 (Dkt 44); (Dkt 45). This is the critical document in question.

    iii. Docket No. 56 consists of Plaintiff's legal process server's "AFFIDAVIT OF SERVICE. Service was accepted by The Corporation Trust Inc.. Document filed by Livevideo.AI Corp." This affidavit attests to proper service.

    iv. Docket No. 62 is Plaintiff's Dec 9 Declaration Supporting Default stating: "4. An Amended Complaint was properly served on November 6, 2024  under FRCP Rule 4 prior to the service of the original complaint." Eleven False Statements Related To Service of Process

At least twelve misrepresentations have been made in multiple filings that are ongoing violations.

    v.    First False or Misleading Statement

    1.    Dec 11, 2024, NAI letter-motion (Dkt. 65)

falsely asserting that "NAI has never been properly served in this action,".

    2.    Second False or Misleading Statement

"Livevideo attempted (unsuccessfully) to serve NAI " (id)

    3.    Third False or Misleading Statement –

In its Dec. 11, 2024 letter motion, the defendant falsely claimed it had been served the complaint docketed No. 44,   "which Your Honor has already rejected as improperly filed. See Dkt. Nos. 47, 56, 62." (Dkt. 65) The defendant couldn't produce a shred of admissible evidence that Plaintiff's process server had delivered Dkt No. 44.

4. Fourth False Statement

Made on December 18, 2024 in ECF Letter Motion

"NAI has not submitted copies of the documents served on CT Corp. or an affidavit in support of the same. "… NAI is prepared to file a supporting affidavit attaching those documents, if helpful to the Court." (Dkt 68) False Identification of Defendants registered agent to mislead court in effort to get default vacated.

5.    Fifth False Statement –

Date Jan 27, 2025 (Dkt No. 73)

"CT Corporation is the well-known tradename of The Corporation Trust Incorporated.: Statement is False because CT Corporation is a separate company from The Corporation Trust Incorporated.

Purpose: Mislead the court concerning the Dec 11th and 18th false claims that CT Corporation is the registered agent of NAI.

6.    Sixth False Statement –

Date Mar 26, 2025 (Dkt 133 at 7)

"A. The November 6 Service Attempt at CT Corporation Was Ineffective" Seeks to further conceal and relates back to defendants false and incorrect statements in their ECF letters sent to the Court on December 11th and December 18 which generated the December 11th and 18th prejudicial Orders.

7.    Seventh False Statement –

Mar 26, 2025 (Dkt 133 at 7)

"The purported November 6, 2024 service attempt on Redstone was ineffective because Livevideo did not serve the operative version of the complaint and, although CT Corporation is NAI's registered agent in Maryland" (Dkt. 133 at 7)

    8. Eighth False Statement - Mar 26, 2025 (Dkt 133 at 8)

"that does not provide CT Corporation with authority to accept service on behalf of NAI's employees or principals. Indeed, Livevideo's counsel previously admitted that this service attempt was ineffective. "

    9.    Ninth False or Misleading Statement –

Mar 26, 2025 (Dkt 133, at 8 footnote 8 )

"Magistrate Judge Moses…observed that "[i]t seems unlikely that Ms. Redstone was personally served at the Maryland office of CT Corporation." However, Comparing the defendant's claim to what the  statement in docket 48 "It seems unlikely that Ms. Redstone was personally served at the Maryland office of The Corporation Trust Incorporated."
Further, the documents referenced by defendant  "See Dkts. 67 at 3–4; 79 at 2–3." exclusively cite "Corporation Trust Incorporated" and do not reference "CT Corporation".
Purpose: Mislead the court concerning the Dec 11th and 18th false claims that CT Corporation is the registered agent of NAI.

    10.    Tenth False Statement –

Mar 26, 2025 (Dkt 133 at 8)

"Second, Livevideo's new arguments fail to establish that CT Corporation was authorized to accept service on behalf of Redstone."

Seeks to further conceal and relates back to defendants false and incorrect statements in their ECF letters sent to the Court on December 11th and December 18 which generated the December 11th and 18th prejudicial Orders.

11. Eleventh False Statement –

Date Mar 26, 2025 (Dkt 133 at 8)

"The affidavit of Livevideo's process server states that he reasonably believed CT Corporation was authorized to "accept service of process on behalf of the President"

This is a false statement because in fact the affidavit referenced makes no reference to "CT Corporation" and only confirms service of process on "Corporation Trust Incorporated". Seeks to further conceal and relates back to defendants false and incorrect statements in their ECF letters sent to the Court on December 11th and December 18 which generated the December 11th

and 18th prejudicial Orders.

12. Twelfth False Statement –

Date Mar 26, 2025 (Dkt 133 at 9)

"Even assuming the process server in fact believed that when the receptionists at CT Corporation agreed to accept delivery of a "UPS Express bubble pack" with Redstone's name on it, they were claiming authority to accept service on her behalf, Livevideo points to no actions by Redstone that would make this incredible assertion reasonable. Dkt. 79 at 3."This is a false statement because in fact the affidavit referenced makes

no reference to receptionists at "CT Corporation" but rather cites to receptionists at "Corporation Trust Incorporated". Seeks to further conceal and relates back to defendants false and incorrect statements in their ECF letters sent to the Court on December 11th and December 18 which generated the December 11th and 18th prejudicial Orders.

## Wrong Identified Agent

The defendant's conclusory non-affidavit denials of service in the Dec 11 and 18th letter motions are based on an incorrect registered agent, CT Corp.  In fact, Corporation Trust Incorporated is NAI's registered agent in Maryland, not CT Corp. This misrepresentation was designed to create confusion about whether proper service had been effectuated. In subsequent filings, NAI continued to mislead the Court by claiming CT Corporation or CT Corp. is its registered agent in Maryland.

NAI compounded its fraudulent conduct by submitting supplemental briefing on Jan 27, 2025 (Dkt. 68) that perpetuated its misrepresentations regarding corporate identity and service validity, "CTCorporation is the well-known tradename of The Corporation Trust Incorporated" (Dkt. 73 at 10).  The Jan 27 statement was false and directly contradicted its earlier representations to the Court.

On Dec. 11, 2024, NAI filed a letter-motion (Dkt. 65) containing several critical misrepresentations:  Falsely asserting that it "has never been properly served in this action" even though the incontrovertible evidence shows that service was executed correctly on November 6, 2024, through its registered agent.

14

Stating the Plaintiff had served a "proposed Second Amended Complaint" the Court had "previously denied leave to file" (referring to Dkt. 44). NAI failed to provide any affidavit or declaration from its registered agent or any other corporate representative to support its claims regarding improper service, relying instead on conclusory statements from counsel.NAI's misconduct extends beyond its misrepresentations to this Court.

Despite being in default from December 9 through December 19, 2024, NAI failed to disclose this material fact in its December 16, 2024 SEC S-4 filing. This omission constitutes a violation of securities laws and further demonstrates NAI's pattern of deception and disregard for legal obligations.

Additionally, NAI made misleading statements in its January 2, 2025 filing with the Federal Communications Commission (FCC), where it continued to misrepresent the facts regarding service of process and its default status in this case. On January 2, 2025, NAI filed a Consolidated Opposition to Petitions and Response to Comments with the FCC in connection with the pending merger between Paramount Global and Skydance Media.

In that filing, NAI acknowledged receipt of Plaintiff's complaint and responded to its substantive allegations. Specifically, NAI stated: "LiveVideo then sought to leverage that manufactured default to support its objection to the pending merger between Paramount Global and Skydance Media. Yesterday, LiveVideo's CEO filed a petition and

15

declaration with the Federal Communications Commission that attached the SAC and claimed that NAI's supposed default in responding to the SAC somehow supports LiveVideo's objection to that transaction." This statement directly contradicts NAI's representation to this Court that it had not been properly served. NAI's willingness to acknowledge and respond to the complaint in another forum while simultaneously claiming to this Court that it had not been properly served demonstrates bad faith and misconduct.

The defendants late FRCP 7.1 disclosure statement filed after the Plaintiff's notice the defendant was in violation of FRCP 7.1 is defective because it fails to disclose the fact that according to Paramount's own SEC filings and defendant NAI's recent SEC filings, 80% of NAI's stock is owned by another entity which is controlled by an LLC. Therefore, NAI's FRCP 7.1 filing contains material omissions and is false when compared to Paramount's SEC filings providing further proof Defendants' conduct was intentional.

### The R&R's Findings About Dkt. 32 vs. Dkt. 35 Are Clearly Erroneous and Materially Misleading.

The R&R posits that Plaintiff "served the wrong pleading" because Dkt. 32 bore labeling anomalies, later addressed by Dkt. 35. But the Clerk previously instructed Plaintiff to refile to address ECF registration—not to change substance. The R&R (Dkt. 163-at 10–14) concedes the "differences" were formatting and pagination anomalies customary to refiled versions, not new claims. All the complaints were similar, and the

defendants knew about the claims. Defendants' own filings confirm they had, read, and responded to the FAC and "every version" of it. See Dkt. 122-14 at 8. That admission extinguishes any prejudice.

**The R&R's strict "operative complaint" theory elevates an internal docket housekeeping step into a jurisdictional cudgel.**

The R & R statement is not the law., There is a live controversy that exists. These Plaintiff asks for the Court to reject the R&R's factual finding that Plaintiff "served a superseded pleading," and hold service adequate or extend time nunc pro tunc. If we review the R & R report, there were substantive paragraphs were written between paragraphs 1-7 as set forth from the magistrate. See Dkt. 163- footnote at page 12. If you review Dkt. 32 and Dkt. 35, most of the paragraphs are extremely similar. The only item not found on Dkt. 32 is the party Christine Varney. Each complaint is 132 paragraphs and are completing identical. If the magistrate had been specific, both complaints are identical except for Christine Varney as a party. The magistrate never mentioned this fact.

The second fact portrayed by the Magsitrate was that Dkt. 32 was labeled "Second Amended Complaint and Jury Demand." The first sentence on Dkt. 32 is that "Plaintiff …alleges, for its First Amended Complaint against Defendants". There was typo. Dkt. 32 represents the First Amended Complaint. Again, the magistrate neither mentioned these facts (nor the defendants.)

Rule 11 requires an objective assessment of whether Plaintiff's papers were frivolous or filed for an improper purpose, and whether safe-harbor requirements were properly satisfied.

The record shows Plaintiff advanced colorable, non-frivolous arguments regarding: (i) service and the "operative complaint" under Rule 61 and equitable extension under Zapata; (ii) the Court's authority and practice on letter-motions under SDNY "Committee 2024" guidance; (iii) the need to lift/modify the stay to brief Rule 15(d) supplementation of federal securities and antitrust claims; and (iv) the public-interest salience of new evidence and regulatory proceedings (FCC Dkt. 24-275; Congressional inquiries). See Plaintiff's filings (e.g., Dkts. 138, 147, 150, 156) and RJNs (Dkts. 150, 156, 158).Defendants' own procedural defects— including delayed and allegedly deficient Rule 7.1 disclosures (Dkt. 119; see Pl. Opp., Dkt. 127 at 6–8; Dkt. 154 at 6–8)—and repeated noncompliant letter-motions beyond the 3-page limit (see Dkts. 65, 68, 109, 136, 141) were not comparably policed. Selective enforcement undercuts the premise that Plaintiff's filings alone warrant punitive sanctions.

The R&R discounts the availability of lesser measures and the Court's ability to narrow issues through targeted orders (clarifying service, scheduling re-service, coordinating briefing) without imposing fee-shifting or penalties.

The record reflects Plaintiff withdrew filings when directed (e.g., Dkt. 88) and attempted to conform to evolving directives. Sanctions are unnecessary to deter.

To the extent Defendants argue the "safe harbor" was satisfied, Plaintiff preserves its objection that any safe-harbor notice failed to fairly apprise Plaintiff of the breadth of conduct now sanctioned and that Defendants' December 2024 letter practice itself fell outside ECF Rule 13.1 and Committee 2024 limits.

## The Vexatious Litigant Trick Grows Old

Whether a court may designate a litigant a "vexatious litigant" and impose cross-forum enforcement or collateral restraints based substantially on district-court record entries and related filings created while the litigant was proceeding pro se, where the record relied upon contains demonstrable material misstatements and omissions that materially affected the basis for the designation.

Whether this Court should grant emergency relief (stay of enforcement and expedited consideration) where enforcement of a vexatious-litigant designation will cause irreparable harm (loss of court access, reputational stigma, and immediate collateral consequences) and where the lower-court factual predicate is unverified, unreliable, or materially false.

Overlooked Misconduct by Defendants

The R&R overlooks Defendants' misrepresentations about their registered agent, addressed in Plaintiff's Rule 60(b)(3) motion. Such misconduct goes directly to the service dispute. By disregarding these facts, the R&R compounds prejudice and effectively rewards gamesmanship.

R & R position that Constants should be reported to the Court's Grievance Committee

To be candid,  the Plaintiff does not understand what the magistrate is arguing under her inherent powers. This case never got going. Once the Court ruled that there was no effective service, the defendants never answered the complaint, nor the proposed supplemental complaint. As an aside, what about the Attorney general's order about NAI. Also, under the SEC action, the production by NAI that they were paying Skydance $4 million dollars a month. Therefore, NAI would not ascertain LiveVideo.AI Corp's offer of purchase since they were paying the $4 million a month through 2024-2025.  The Magistrate's statement of inoperative pleadings does not make sense and her concern about the process server delivery of the amended complaint are exactly that-it was an amended complaint.

Why does the Magistrate offer up Rule 4(m) when the only defendants (Monica Seligman and Christine Varney) were served only two weeks past the date. On February 12, 2025, when the magistrate asked the undersigned to request an extension, which the undersigned did, she

denied it right away not withstanding that only two defendants had been served just two weeks past the time.

After the order to show cause that occurred on February 12, 2025, the undersigned submitted a letter to Magistrate Moses. (Dkt. 88). Plaintiff Counsel's recollection was that counsel had requested the Dkt. 85 (Motion for reconsideration) and Dkt. 86 (law memorandum) to be removed. See Dkt. 88. In counsel's letter,

> For the motion for reconsideration, the Docket Numbers on the website are Docket No. 85 and Docket No. 86. Respectfully, Plaintiff requests the Court to strike Docket No. 85 and Docket No. 86 and delete those docket numbers from the website. See Dkt. 88.

Based upon the conference on February 12, 2025, the Court stated why she should not refer Plaintiff's counsel to the grievance committee. Dkt. 90-at 25. The Magistrate asked if counsel would withdraw the pleadings and the undersigned confirmed that he would. Dkt. 90-26. The Magistrate offered that any withdrawal must be by Friday the 14th, Valentine's day. Dkt. 90-26. The undersigned complied with his letter of February 12, 2025. Dkt. 88. The undersigned knows that the Court did not remove those docket numbers from the website.

Finally, the undersigned agrees with what counsel said to the Court on February 12, 2025. Notwithstanding that statement, the undersigned argued that Maryland law changed the analysis and that the summons and complaint were properly served.

As for Magistrate's other items, plaintiff needed to supplement Plaintiff complaint pursuant to Rule 15 because the facts changed and the real issue was whether there were claims against the defendants- when pursuit of those claims could occur. In addition, plaintiff requests for judicial notice. For some reason, all the facts pertaining to the defendants are immaterial and irrelevant to the magistrate. She went on and on about the CEO of Livevideo.AI and his litigations and that Ropes & Gray argued that he was vexatious and entered many items.

## Overlooked Misconduct by Defendants

The R&R overlooks Defendants' misrepresentations about their registered agent, addressed in Plaintiff's Rule 60(b)(3) motion. Such misconduct goes directly to the service dispute. By disregarding these facts, the R&R compounds prejudice and effectively rewards gamesmanship.

## CONCLUSION

Plaintiff asks that the Court deny the R & R report as to Rule 4(m). In addition, plaintiff asks the Court to deny the following: (1) sanction being imposed; (2) referring Constants to the grievance Committee; and (3) denial of a tailored leave-to-file injunction against plaintiff.

Respectfully submitted

By: */s/ Alfred C. Constants III*

Alfred C. Constants III
Constants Law Offices, LLC
115 Forest Avenue, Unit 331
Locust Valley, NY 11560
(516) 200-9660
Constantslaw49@gmail.com
Attorneys for Plaintiff Livevideo.AI

Date August 29, 2025

CERTIFICATE OF COMPLIANCE

This word document complies
with SDNY 12 point Century, Word
And 4388 words.

Respectfully submitted

By: */s/ Alfred C. Constants III*

Alfred C. Constants III
Constants Law Offices, LLC
115 Forest Avenue, Unit 331
Locust Valley, NY 11560
(516) 200-9660
Constantslaw49@gmail.com
Attorneys for Plaintiff Livevideo.AI

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

LIVEVIDEO.AI CORP
   *Plaintiff,*      CIVIL ACTION
vs.           C.A. NO. 1:24-CV-06290


SHARI REDSTONE,
NATIONAL AMUSEMENTS, INC.,
CHRISTINE VARNEY,
MONICA SELIGMAN,

   *Defendant's.*
_____/


PLAINTIFF'S DECLARATION IN SUPPORT OF OBJECTION
_____

I, Brad Greenspan, declares under penalty of perjury, that the following is true and

correct:

  1. I have first-hand, personal knowledge of the facts set forth below and, if

called as a witness, I could and would testify competently thereto.

  2. In its June 21, 2007 issue, The New York Times identified me as "the former

chief executive of the parent company of MySpace," demonstrating my direct, relevant

experience operating a major digital media property akin to Paramount Global.

  3. The R&R report omits a crucial fact: on June 6, 2024, LiveVideo.AI Corp.

engaged GC Christine D. to ve as a liaison in the Paramount Global sales process—

ensuring our bid would receive fair consideration. Shortly thereafter, defendant Shari

Redstone paid Christine $9.8 million to vacate the premises, effectively sidelining one

of our best defenses against data leaks, extortion, and bribery, and clearing the way

for bid rigging in favor of Skydance. Skydance then received $4 million per month—a drop in the ocean compared to the unfair advantage it secured.

4. National Amusements Inc. ("NAI") controls publicly traded Paramount Global. Yet the R&R astonishingly omits Magistrate Judge's September 13 Order to Show Cause, which linked Christine to the creation of Docket No. 32 and confirmed her approval the same day.

5. The Magistrate has eagerly transformed the defendants' speculative assertions into "substantial evidence," inverting the proper evidentiary standard.

6. Contrary to the R&R's suggestion, LiveVideo.AI does not require an injunction to halt frivolous claims. Its pending allegations include valid securities-fraud counts, some arising from the SEC's failures to disclose or its untimely disclosures

7. Other Paramount shareholders have already obtained advancement awards against Redstone, NAI, and Paramount in U.S. courts, and new lawsuits have been filed based on the same record evidence. To deem these fresh securities-fraud claims frivolous at this preliminary stage bespeaks bias.

8. The Magistrate faults LiveVideo.AI for not disclosing its business plans, failing to recognize that corporate groups often operate multiple asset-specific websites. For example, LiveVideo.AI owns and operates HashtagHyena.com, a popular social-news community site whose Google AdSense revenue flows through the parent and its affiliates.

9. I speak from experience. As the CEO of a public company, I complied with Sarbanes–Oxley, and I remain fully versed in securities and whistleblower laws, in anticipation of an eventual IPO.

10. I was previously an SEC whistleblower, represented by KKC.com, the nation's largest whistleblower-award law firm. Although I did not receive an award, I exercised my rights under Section 21F to compel the SEC to disclose why my claim was denied. The Ninth Circuit granted my petition for review in 2017 after the Commission refused to consolidate my federal appeal.

11. My M&A credentials extend beyond compliance. After selling my public company to News Corp for $650 million in cash at a $12 per-share peak, I bid on other media assets. During the 2007 Dow Jones sale, premier financial outlets cited me as a credible alternative bidder. Despite no prior newspaper experience, I secured board meetings with Dow Jones and its controlling Bancroft family—The New York Times (July 11, 2007) reported my participation in discussions, and Reuters (July 30, 2007) confirmed I had assembled five investor groups—demonstrating my ability to organize large-scale transactions.

12. The R&R misapplies Dodd–Frank by stating I was never an "employee" of any defendant. Whether or not I held employee status is legally irrelevant. Varney and Seligman were employees of a public company of which I was CEO and a major shareholder; their employers were strategic partners and ultimate acquirers.

13. Under Dodd–Frank, I suffered adverse employment actions and engaged in protected activity by reporting to the SEC on disclosure violations, defective internal controls, and bid rigging.

14. The Magistrate cannot declare the securities-fraud allegations frivolous when there is no evidence that NAI has complied with its November 2024 New York Attorney General consent decree—and substantial evidence shows NAI and Paramount continue to operate under defective internal controls.

15. In July 2025, confidential financial information belonging to Stephen Colbert was stolen, leaked, or lost and became public, and Paramount's subsequent SEC filings omitted material facts, giving rise to actionable claims.

16. We recently uncovered a secret agreement to pay Skydance $4 million per month—now exceeding $50 million—to the purported buyer selected through a "bona fide" sales process. Shari Redstone concealed this deal until after the merger agreement was signed, then filed defective SEC disclosures to mislead shareholders.

17. Those monthly payments conferred an exclusive advantage on Skydance that no other bidder received, constituting a per se violation of Section 1 of the Sherman Act.

*August 29, 2025*
*_/s/ Brad Greenspan*
*Brad Greenspan*
*CEO, LiveVideo.AI Corp*