**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LIVEVIDEO.AI CORP., | C.A. No. 1:24-CV-6290 (DEH) (BCM) |
| Plaintiff, | |
| v. | |
| SHARI REDSTONE, NATIONAL AMUSEMENTS, INC., CHRISTINE VARNEY, MONICA SELIGMAN, | |
| Defendants. | |

**DEFENDANT NATIONAL AMUSEMENTS, INC.'S OPPOSITION
TO PLAINTIFF LIVEVIDEO.AI'S OBJECTION TO MAGISTRATE
JUDGE MOSES' AUGUST 12, 2025 REPORT AND RECOMMENDATION**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................... 2

STANDARD OF REVIEW .................................................................................. 4

ARGUMENT ....................................................................................................... 5

I.      Dismissal Under Rule 4(m) is Proper ...................................................... 5

      A.      Livevideo Failed to Timely Serve Any Defendant ......................... 5

      B.      Livevideo Failed to Demonstrate Good Cause ................................ 8

II.     Rule 11 Sanctions Are Necessary to Deter Livevideo and Its Counsel's Frivolous
        and Vexatious Litigation Conduct .......................................................... 10

      A.      Livevideo and Its Counsel Repeatedly Violated Rule 11 ............... 10

            1.      Livevideo and its Counsel Violated Rule 11(b)(2) .............. 11

            2.      Livevideo and its Counsel Likewise Violated Rule 11(b)(1) ........ 14

      B.      The Sanctions Imposed By the R&R Are Appropriate ................... 15

            1.      The Monetary Penalty Against Livevideo and Constants Is
                Necessary to Deter Future Violations of Rule 11 ................ 15

            2.      Attorney Constants Should Be Referred to the Grievance
                Committee ............................................................................ 17

            3.      A Nationwide Filing Injunction is Necessary to Prevent Livevideo
                and its Principal from Further Vexatious Litigation Conduct ................. 20

CONCLUSION ................................................................................................. 233

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*An v. Despins*,
  No. 22-cv-10062, 2023 WL 4931832 (S.D.N.Y. Aug. 2, 2023)..............................................19

*Armco, Inc. v. Penrod-Staufer-Bldg. Sys., Inc.*,
  733 F.2d 1087 (4th Cir. 1984) ...........................................................................................7

*Baliga v. Link Motion Inc.*,
  No. 18 Civ. 11642, 2025 WL 1430587 (S.D.N.Y. May 19, 2025)........................................14

*Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*,
  No. 16-cv-885, 2019 WL 422613 (S.D.N.Y. Feb. 4, 2019) ..................................................16

*Brathwaite v. Martini Collections Inc.*,
  No. 22-cv-4929, 2025 WL 448040 (S.D.N.Y. Feb. 10, 2025) ................................................5

*Celestin v. Martelly*,
  No. 18-cv-7340, 2024 WL 4355512 (E.D.N.Y. Sept. 30, 2024) ......................................11, 16

*Collins v. MCA Receivables, LLC*,
  No. 23 Civ. 353, 2024 WL 246111 (S.D.N.Y. Jan. 23, 2024).................................................12

*Dimitri Enters., Inc. v. Spar Ins. Agency LLC*,
  No. 21-1722-CV, 2022 WL 5237811, at *2 (2d Cir. Oct. 6, 2022)........................................12

*DVL, Inc. v. Gen. Elec. Co.*,
  811 F. Supp. 2d 579 (N.D.N.Y. 2010) ...................................................................................13

*Feehan v. Feehan*,
  No. 09-cv-7016, 2010 WL 3734079 (S.D.N.Y. Sept. 22, 2010) ...........................................13

*Greenspan v. IAC/InterActiveCorp*,
  No. 14-CV-04187-RMW, 2016 WL 5724972 (N.D. Cal. Sept. 30, 2016)............................22

*Greenspan v. U.S. Sec. & Exch. Comm'n*,
  727 Fed. App'x 381 (9th Cir. 2018) ......................................................................................14

*Junior-Donohue v. Fudge*,
  No. 23-cv-2474, 2023 WL 5152299 (S.D.N.Y. Aug. 10, 2023)............................................10

*LaVigna v. WABC Television, Inc.*,
  159 F.R.D. 432 (S.D.N.Y. 1995) ...........................................................................................14

*Lipin v. Hunt*,
  159 F.R.D. 432 (S.D.N.Y. 1995) ...........................................................................................15

ii

*Locus Techs. v. Honeywell Int'l Inc.*,
    632 F. Supp. 3d 341 (S.D.N.Y. 2022)................................................................4, 5, 6

*Mario v. P & C Food Markets, Inc.*,
    313 F.3d 758 (2d Cir. 2002)...............................................................................6

*Mata v. Avianca, Inc.*,
    678 F. Supp. 3d 443 (S.D.N.Y. 2023)..................................................................16

*McLoughlin v. Altman*,
    No. 92-cv-8106, 1995 WL 640770 (S.D.N.Y. Oct. 31, 1995)................................12

*Peng Chan v. Time Warner Inc.*,
    No. 5:16-cv-06268, 2017 WL 11500157 (N.D. Cal. June 20, 2017).......................22

*Phillips v. Reed Grp., Ltd.*,
    955 F. Supp. 2d 201 (S.D.N.Y. 2013).................................................................4, 13

*Pineda v. Masonry Constr., Inc.*,
    831 F. Supp. 2d 666 (S.D.N.Y. 2011).................................................................4, 13

*Pioneer Navigation Ltd. v. Chem. Equip. Labs, Inc.*,
    No. 1:19-cv-02938, 2020 WL 1031082 (S.D.N.Y. Mar. 3, 2020).........................21

*Safir v. U.S. Lines, Inc.*,
    792 F.2d 19 (2d Cir. 1986)...............................................................................20

*Woodhouse v. Meta Platforms Inc.*,
    704 F. Supp. 3d 502 (S.D.N.Y. 2023).................................................................21, 22, 23

*Zapata v. City of New York*,
    502 F.3d 192 (2d Cir. 2007)...............................................................................5, 9

**Statutes**

28 U.S.C. § 636(b)(1)(C) .............................................................................................4

Computer Fraud and Abuse Act ............................................................................12, 14

Dodd-Frank Wall Street Reform and Consumer Protection Act ...............................11, 14

**Other Authorities**

Fed. R. Civ. P. 4(m) ........................................................................................ *passim*

Fed. R. Civ. P. 11 ........................................................................................... *passim*

N.Y.C.P.L.R. § 308(2) ................................................................................................8

## PRELIMINARY STATEMENT

Defendant National Amusements, Inc. ("NAI") opposes Plaintiff Livevideo.AI Corp.'s ("Livevideo") objection (Dkt. 167) (the "Objection") to Magistrate Judge Moses' August 12, 2025 Report and Recommendation (Dkt. 163) (the "R&R").[1]

The R&R correctly recommended putting an end to a year-long vexatious litigation campaign waged by Livevideo, aided by its counsel, Alfred Constants III.  Despite failing to even get past the service stage, Livevideo and Constants have imposed a significant, improper burden on the Court and the Defendants through their bad-faith pursuit of frivolous claims and "abusive" litigation conduct.  R&R at 42.  Based on Livevideo's complete failure—without good cause or even a "colorable excuse"—to timely serve any of the Defendants, the R&R recommended that Livevideo's frivolous complaint be dismissed without prejudice under Federal Rule of Civil Procedure 4(m).  R&R at 26.  Condemning the manner in which Livevideo and Constants have litigated this action over the past year, the R&R also concluded that they should be sanctioned for filing frivolous federal claims for the improper purpose of harassing the Defendants and rehashing decades-old grievances in violation of Rule 11.  In light of Livevideo and Constants' several willful Rule 11 violations and Livevideo's principal, Brad Greenspan's, known history of filing vexatious and frivolous actions, the R&R recommended that Livevideo and Constants jointly pay a monetary sanction of $10,000 into the Court, that Constants be referred to the Grievance Committee of the Southern District of New York (the "Grievance Committee"), and that a narrowly tailored filing injunction against Livevideo be imposed.

The vast majority of Livevideo's Objection does not engage with or even relate to—much less undermine—the conclusions reached in the R&R.  Rather, it is a final collection of Livevideo's

---

[1] All internal citations and quotations are omitted, and emphases are added unless otherwise noted.

greatest hits; that is, unsubstantiated and incoherent gripes that it has raised several times in this case, most notably its argument that Livevideo properly served NAI with an inoperative second amended complaint.  These arguments, which the Court has repeatedly rejected, are wholly disconnected from the issues the R&R actually decides, and rehashing them now only supports the thorough and well-reasoned findings and relief recommended in the R&R.  On the rare occasion that Livevideo's Objection attempts to address the R&R's conclusions, its criticisms, where coherent, are couched in vague generalities and unsupported assertions.  Because Livevideo offers no concrete challenge to any of the R&R's specific findings or legal conclusions, its Objection falls well short of the standard required to disturb a magistrate judge's report and recommendation.

Finally, the relief recommended in the R&R is appropriate and should come as no surprise to Livevideo or Constants.  Over the course of nine months, Magistrate Judge Moses issued numerous explicit warnings to Livevideo and Constants that they would be subject to sanctions if they continued their frivolous and bad-faith litigation conduct.  Livevideo and Constants ignored those warnings, declined to avail themselves of opportunities to mitigate their misconduct, and persisted in littering the docket with frivolous filings in order to draw out litigation over their claims and burden the Defendants and the Court.

The Court should accordingly deny the Objection and enter judgment as recommended by Magistrate Judge Moses' well-reasoned R&R.

## FACTUAL BACKGROUND

The R&R provides a comprehensive recitation of the factual and procedural history of this case, as well as of Greenspan's extensive history of vexatious litigation conduct.  Accordingly, NAI respectfully refers the Court to the R&R at pages four through twenty-two for the relevant background, and here summarizes only the factual developments since the R&R issued.  The salient facts are discussed where applicable in the Argument section.

-2-

On August 12, Magistrate Judge Moses issued the R&R, recommending that this action be dismissed under Rule 4(m) and NAI's motion for sanctions against Constants and Livevideo be granted. The R&R recommended imposing a $10,000 fine to be paid into court jointly and severally against Constants and Livevideo, referring Constants to the Grievance Committee, and imposing a filing injunction requiring Livevideo to receive advance leave to file any further motions in this action or to file another action in any federal court arising from the merger between Skydance Media ("Skydance") and Paramount Global ("Paramount"). R&R at 48-49.[2]

On August 26 (the day any objection was due), Livevideo filed a letter seeking an extension, which appeared to contain a screen-clipped image both of Constants' firm's letter head and a "re" line from another letter. *Compare* Dkt. 165 *with* Dkt. 114. The letter claimed the extension was necessary "due to CEO of the Plaintiff's sudden lack of availability caused by an urgent filing" in a different case.[3] Dkt. 165. The Court noted that (once again) Livevideo had made its request late and not in compliance with the applicable Court rules, but granted the extension. Dkt. 166.

Livevideo ultimately filed the Objection on the extended deadline of August 29. Dkt. 167. Then, on September 8—over a week *after* that already-extended deadline—Livevideo filed a "notice of errata." Dkt. 168. This notice purports to correct "formatting errors" in the four-page,

---

[2]     The R&R also found "that [Livevideo's] litigation conduct has been abusive, and that attorney Constants – who at times has served as nothing more than a conduit for frivolous filings likely prepared by his client's principal – has violated his personal, nondelegable responsibility under Rule 11 to validate the truth and legal reasonableness of the papers filed under his name." R&R at 41-43. Nevertheless, the R&R did not recommend imposing additional monetary sanctions under the Court's inherent powers, which NAI does not contest here. R&R at 43-44.

[3]     Neither the letter nor the Opposition explained why Constants could not complete the Objection, which addresses rulings on motions Constants himself allegedly briefed months ago without Greenspan's assistance or why Greenspan's "outside counsel" required a significant amount of his time to make a filing in another case.

seventeen-paragraph Greenspan declaration appended to the Objection by replacing it with a new nine-page, thirty-three-paragraph declaration and four accompanying exhibits. *Compare* Obj. at 24-27 *with* Dkt. 168 at 3-29. Like many of Livevideo's other filings, both the Objection and notice of errata raise serious questions as to whether a non-lawyer is drafting Livevideo's filings. *See, e.g.*, Obj. at 21 (bizarrely stating that "the undersigned [purportedly Constants] **agrees with what counsel [also Constants] said to the Court** on February 12, 2025"); Dkt. 168 at 25-29 (attaching a slide deck supplying arguments for why emergency relief is warranted, referencing what appears to be an unrelated case).

## STANDARD OF REVIEW

In reviewing the R&R, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court "may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous." *Locus Techs. v. Honeywell Int'l Inc.*, 632 F. Supp. 3d 341, 351 (S.D.N.Y. 2022). "A decision is clearly erroneous when, upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *Id.*

While the Court must review de novo any portions of the R&R to which Livevideo specifically objects, 28 U.S.C. § 636(b)(1)(C), any such objection must be "specific" and "address only those portions of the proposed findings to which [Livevideo] objects." *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 671 (S.D.N.Y. 2011). "Objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke *de novo* review." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013). Accordingly, where Livevideo "makes only conclusory or general objections, or simply reiterates [its] original arguments," clear error review

applies. *Brathwaite v. Martini Collections Inc.*, No. 22-cv-4929, 2025 WL 448040, at *1 (S.D.N.Y. Feb. 10, 2025); *see Locus Techs.*, 632 F. Supp. 3d at 351-52 (collecting cases).

## ARGUMENT

Respectfully, the Court should deny Livevideo's Objection and adopt Magistrate Judge Moses' detailed and well-reasoned R&R in its entirety. The R&R correctly determined that Livevideo's complaint should be dismissed without prejudice under Rule 4(m) for its failure to timely effect service on any Defendant and lack of good cause for that failure. Furthermore, the R&R correctly determined that Livevideo and its counsel violated at least two provisions of Rule 11 and that sanctions in the form of a $10,000 fine, a referral of Constants to the Grievance Committee, and a narrowly tailored filing injunction are necessary to deter Livevideo and its counsel from further violations of Rule 11.

## I.    DISMISSAL UNDER RULE 4(M) IS PROPER

The Court should adopt the R&R's determination that this action should be dismissed under Rule 4(m) for failure to effect proper service. Rule 4(m) requires dismissal "[i]f a defendant is not served . . . within 90 days after the complaint is filed" unless the "plaintiff shows good cause for the failure" or the Court exercises its discretion to grant an extension. Fed. R. Civ. P. 4(m); *see Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir. 2007). In a thorough analysis, the R&R correctly concluded that dismissal is warranted under Rule 4(m) because Livevideo failed to serve any Defendant within the requisite 90-day period and failed to show good cause—or even a "colorable excuse"—for its failure to do so. R&R at 22-26.

### A.    Livevideo Failed to Timely Serve Any Defendant

With respect to NAI, the R&R concluded—for at least the fifth time—that Livevideo's only attempt at service on November 6 was ineffective because Livevideo failed to serve NAI with the operative pleading. *See* R&R at 24 & n.25, 43; *see also* Dkts. 69 at 2; 74 at 1, 5; 90 at 9:16-

23; 142 at 7.  As Magistrate Judge Moses has repeatedly held, the operative complaint is (and was

on November 6) the FAC at Docket No. 35.  *See, e.g.*, Dkts. 47 at 1; 69 at 1-3; R&R at 2.

Nevertheless, Livevideo attempted to serve the rejected and inoperative second amended

complaint at Docket No. 32.

       In its Objection, Livevideo does not dispute that it served the inoperative complaint at

Docket No. 32.  *See* Obj. at 7.  The R&R's determination that Livevideo served the inoperative

complaint, which Livevideo concedes, was not clearly erroneous.  The Court can thus adopt that

portion of the R&R "without further review."  *Locus Techs.*, 632 F. Supp. 3d at 351.  Livevideo

nevertheless repeats its argument—which Magistrate Judge Moses has repeatedly rejected—that

its failure to serve the operative complaint was a mere "technical docketing issue" or "harmless

error" and did not render service ineffective.  Obj. at 7; *see, e.g.*, Dkts. 74 at 7; 90 at 10:4-11:15.

As discussed in the R&R, however, the effectiveness of the November 6 service attempt on NAI

is no longer a live issue given Livevideo's failure to object timely to the December 18 order.  *See*

R&R at 21 n.23; *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where

parties receive clear notice of the consequences, failure timely to object to a magistrate's report

and recommendation operates as a waiver of further judicial review of the magistrate's decision.").

       Even if it were a live issue, as the R&R explains, it is well settled in this Circuit that service

of an incorrect complaint is ineffective, even if the versions of a complaint are similar.  *See* R&R

at 24 n.25 (collecting cases).  Rather than engaging with this settled caselaw, Livevideo

incoherently argues that the R&R errs by "elevat[ing] docket-labeling formalities over actual

notice."  Obj. at 7; *see also id.* at 3 ("The R&R rests on clearly erroneous factual premises and

legal errors, including . . . reliance on a hyper-technical 'operative complaint' theory to convert

harmless docketing issues into case-ending defaults."), 17 ("[T]he R&R's strict 'operative

complaint' theory elevates an internal docket housekeeping step into a jurisdictional cudgel.").  In support, Livevideo relies exclusively on the Fourth Circuit's decision in *Armco, Inc. v. Penrod-Staufer-Bldg. Sys., Inc.*—an out of circuit decision which **contradicts** Livevideo's argument.  *See* Obj. at 7.

*Armco* did not relate to service of the proper complaint, and ultimately held that a plaintiff's failure to comply with the requirements of a service statute rendered service ineffective **despite** the defendants having actual notice of the claims.  *See* 733 F.2d 1087, 1089 (4th Cir. 1984) ("[T]he rules are there to be followed, and plain requirements for the means of effective service of process may not be ignored.").  Thus, Livevideo's arguments that the Defendants had "actual notice" of the allegations in the complaint are unavailing.  *See* Obj. at 3, 6.  As made clear by well-settled Second Circuit caselaw and Livevideo's own citation, actual notice is insufficient to overcome defective service, and service is defective where a plaintiff serves an inoperative complaint even if the served and operative complaints are "similar."  Accordingly, Livevideo's concessions that it served NAI with the "similar"—but concededly not identical—inoperative complaint at Docket No. 32 only support the R&R's conclusion that Livevideo failed to timely serve NAI.  *See* Obj. at 17 (arguing that "most"—not all—"of the paragraphs are extremely similar").[4]

With respect to Ms. Redstone, the R&R explained that Livevideo's single November 6 service attempt was doubly defective.  R&R at 25.  Not only did Livevideo attempt to serve the inoperative second amended complaint at Docket No. 32, but it attempted to serve that inoperative

---

[4]    Livevideo's arguments that operative FAC and the complaint it served on NAI were "similar" are thus irrelevant.  *See* Obj. at 16.  In any event, the R&R correctly concludes that the differences between the complaints at Dockets 32 and 35 "went well beyond their titles," as "several paragraphs were substantially rewritten."  R&R at 12 n.12.  Indeed, Livevideo itself represented that, not only were the versions of the complaint at Dkt. No. 32 and 35 different, but that it "would face significant harm if required to refile the **defective** Dkt. #35 complaint."  Dkt. 70-2 at 20.

complaint on *NAI's* registered agent for service of process, the Corporation Trust Incorporated. *See* Dkts. 123 at 13; 79 at 1. As the R&R explains, the Corporation Trust Incorporation "was not authorized to accept service on [Ms. Redstone's] behalf." R&R at 18 n.19. Livevideo does not dispute this conclusion—nor could it, as Livevideo's counsel expressly conceded at a show cause hearing that this service was ineffective on Ms. Redstone as an individual defendant. *See* R&R at 15; Dkt. 90 at 7:13-20.

Finally, with respect to Ms. Seligman and Ms. Varney, the R&R concluded that Livevideo failed to serve those Defendants at all within the 90-day period under Rule 4(m). Rather, Livevideo made its only attempt to serve those Defendants on December 30, 2024—"***104 days*** after the FAC was filed." R&R at 25 (emphasis added); *see* Dkts. 80-81 (certificates of service attesting that "Monica" Seligman was served by hand delivery to a "mail room clerk" at Paramount's offices and Christine Varney was served by hand delivery to a "mail room clerk" at the offices of "Cravath" on that date). Even then, Livevideo "failed to follow up with the mailing required by N.Y.C.P.L.R. § 308(2)." R&R at 18 n.19. Once again, Livevideo does not dispute these conclusions, which are supported by the record and not clearly erroneous. *See also* Obj. at 21 (acknowledging "two defendants had been served just two weeks past the time"). Accordingly, the Court should adopt the R&R's conclusion that Livevideo failed to timely serve any Defendant.

### B.    Livevideo Failed to Demonstrate Good Cause

The R&R likewise correctly determined that Livevideo failed to demonstrate—or even attempt at any point to articulate—any good cause for its failure to timely serve the Defendants, thus necessitating dismissal under Rule 4(m). *See* R&R at 25-26.

As the R&R correctly observes, "this Court gave [Livevideo] ample notice that its case was at risk of dismissal under Rule 4(m), and plenty of opportunity to show good cause for the delay and thereby obtain an extension of its time to effect good service." R&R at 25. For example, in

granting NAI's motion to vacate the entry of default, the Court expressly invited Livevideo to move for an extension of time to serve the correct pleading on any Defendant. *See* R&R at 24-25; Dkt. 69 at 3. Livevideo failed to take any such opportunity. *See* R&R at 24-26; Dkt. 74 at 7. Indeed, Livevideo "has never shown – or even suggested – that it made 'diligent attempts' to serve defendants" within the 90-day time period, or that "its failure to timely serve was due to exceptional circumstances beyond its control." R&R at 25-26. Accordingly, the R&R determined that Livevideo failed to show good cause—or even a "colorable excuse"—for its failure to timely effect service. R&R at 26.

Even now, Livevideo does not dispute that it never showed, or even attempted to show, "good cause" for its failure to serve the Defendants or seek an extension, nor does it offer any belated justification to show good cause. Instead, Livevideo misrepresents the record by asserting that it "sought to correct service quickly," Obj. at 7, but Livevideo identifies no actions it took to do so. The record is clear, as Magistrate Judge Moses set forth, that Livevideo never attempted to re-serve NAI with the correct complaint despite the fact that it "could be easily served through Corporation Trust," and ignored Magistrate Judge Moses' express invitation to move for an extension. R&R at 24-26. The undisputed facts that Livevideo failed to timely serve the Defendants without good cause alone warrant (and indeed, necessitate) dismissal under Rule 4(m).

In a last-ditch effort to avoid dismissal, Livevideo argues that there was no prejudice caused by its failure to serve the Defendants with the operative complaint because NAI had actual notice of the claims. Obj. at 3, 6. However, as the R&R makes clear, a plaintiff must "at a minimum advance some colorable excuse for neglect" before the Court weighs prejudice between the parties in deciding whether to grant an extension. R&R at 26; *see also Zapata*, 502 F.3d at 198 ("[N]o weighing of the prejudices between the two parties can ignore that the situation is the result of the

plaintiff's neglect."); *Junior-Donohue v. Fudge*, No. 23-cv-2474, 2023 WL 5152299, at *5 (S.D.N.Y. Aug. 10, 2023) (rejecting extension of time to serve defendants with actual notice where plaintiff failed to timely seek an extension despite being represented by counsel). And, of course, Livevideo offers no explanation of why it would be prejudiced if the case were dismissed under Rule 4(m). *See* R&R at 26 (concluding that Livevideo "will not be prejudiced by a Rule 4(m) dismissal").[5]

The Court should accordingly adopt the R&R's determination that this case should be dismissed without prejudice under Rule 4(m).

## II. <u>RULE 11 SANCTIONS ARE NECESSARY TO DETER LIVEVIDEO AND ITS COUNSEL'S FRIVOLOUS AND VEXATIOUS LITIGATION CONDUCT</u>

The Court should likewise adopt the R&R's determinations that Livevideo and its counsel violated Rule 11 and that sanctions in the form of a monetary penalty, a reference to the Grievance Committee, and a narrowly tailored filing injunction are necessary to prevent Livevideo and its counsel from future violations of Rule 11 and other vexatious, bad-faith litigation conduct.

### A.    Livevideo and Its Counsel Repeatedly Violated Rule 11

The Court should adopt the R&R's determination that Livevideo and its counsel violated Rule 11. *See* R&R at 30-38. Rule 11 provides that, by submitting a pleading, parties and counsel

---

[5]     The remainder of the Objection's arguments ostensibly regarding the R&R's dismissal pursuant to Rule 4(m) consist of a pages-long digression on a variety of completely irrelevant topics, which amounts to almost a third of the entire Objection. Obj. at 8-16. All are arguments that Livevideo has repeatedly made and lost, including that NAI's letter-motion requesting the Default was procedurally improper, *see, e.g.*, Dkts. 70-2 at 9, 12; 86 at 3-4; 140 at 16-17, that NAI allegedly made false statements to the Court, including by identifying its registered agent by its well-known trade name, *see, e.g.*, Dkts. 70-2 at 5-6, 22-23; 86 at 6-9; 140 at 15; 143 at 6, 11, that NAI failed to disclose its brief default in federal securities filings for Paramount, *see, e.g.*, Dkts. 83 at 4-5; 118 at 3-6; 129 at 2-9; 140 at 19-21, and that NAI allegedly did not comply with the requirements of Federal Rule of Civil Procedure 7.1, *see, e.g.*, Dkts. 114 at 3-4; 118 at 8-9; 126 at 2 n.1; 127 at 20-21; 134 at 1; 140 at 7-9. These arguments, which Magistrate Judge Moses has already dismissed as "beyond frivolous" have absolutely no bearing on whether Livevideo effectively served any Defendant or should receive an extension to serve.

are representing that, *inter alia*, "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and] (2) the claims . . . are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). The R&R correctly determined that Livevideo and its counsel violated both of these provisions by pursuing facially frivolous federal claims for an improper purpose. *See* R&R at 30-38.

### 1.     Livevideo and its Counsel Violated Rule 11(b)(2)

First, the R&R correctly determined that Livevideo and its counsel—who often served as only a mere "conduit for frivolous filings"—violated Rule 11(b)(2) by pressing patently frivolous, unsupported, and manufactured federal claims, even in light of the Court's repeated admonitions that such claims were likely not viable. R&R at 30-36, 42. A claim is frivolous where, as here, "it is clear under existing precedent that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Celestin v. Martelly*, No. 18-cv-7340, 2024 WL 4355512, at *4 (E.D.N.Y. Sept. 30, 2024).

As the R&R explained, both of Livevideo's federal claims are frivolous. Turning first to Livevideo's claim brought under the whistleblower provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"), which allegedly arose out of the Defendants' failure to return Greenspan's voicemail messages left for Ms. Redstone or answer Greenspan's July 2024 letter offering to purchase Paramount on better terms than those offered by Skydance. FAC ¶¶ 107-112. As the R&R explained, these allegations do not come close supporting *any* of the requisite elements of a Dodd-Frank whistleblower claim: Livevideo is not an "individual," it is not nor has it ever been an "employee" of any Defendant in this action, it has not suffered any "adverse employment action," and it was not engaged in any "protected activity." R&R at 31-32 (collecting cases). In short, "[Livevideo] and its counsel could not have reviewed

this statute and reached a good-faith conclusion that it supported a cause of action on the basis of the allegations in the [FAC]." R&R at 32.

The same is true of Livevideo's claim under the Computer Fraud and Abuse Act (the "CFAA"), which was premised on allegations that Defendants opened a May 6, 2024 "test email" that Greenspan sent to a former Paramount executive at his former Paramount email address. FAC ¶¶ 119-32. But a claim under that statute requires a plaintiff to plead that a defendant "(1) accessed a protected computer; (2) without any authorization or exceeding its authorized access; and (3) caused loss in excess of $5,000." *Collins v. MCA Receivables, LLC*, No. 23 Civ. 353, 2024 WL 246111, at *8 (S.D.N.Y. Jan. 23, 2024). As the R&R explains, Livevideo's complaint again failed entirely to allege any facts to support any element of this claim, and "[n]o competent attorney who has read the statute and [the Supreme Court's decision in] *Van Buren* could conclude, in good faith, that these factual allegations support a cognizable CFAA claim." R&R at 35.

The R&R held that Livevideo and its counsel further violated Rule 11(b)(2) by repeatedly reaffirming these frivolous claims despite numerous warnings from Magistrate Judge Moses and NAI's sanctions safe harbor letter. R&R at 30-36; *see, e.g.*, Dkts. 46 at 1-2 & nn. 1-2; 123 at 4 n.4; 142 at 2. This determination was correct: Rule 11's obligation to assess the legal merits of claims also applies to "reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." *Dimitri Enters., Inc. v. Spar Ins. Agency LLC*, No. 21-1722-CV, 2022 WL 5237811, at *2 (2d Cir. Oct. 6, 2022); *see also McLoughlin v. Altman*, No. 92-cv-8106, 1995 WL 640770, at *4 (S.D.N.Y. Oct. 31, 1995) (imposing monetary sanctions, in part, because the plaintiff continued to press frivolous claims despite "the court explicitly caution[ing] plaintiff to review Rule 11 in the context of this claim" and the "defendants' request that he voluntarily dismiss the complaint in light of Rule 11").

-12-

Livevideo makes no attempt to defend its frivolous federal claims. Instead, Livevideo interjects with irrelevant arguments that Livevideo advanced "colorable, non-frivolous arguments" regarding service of process and alleged procedural defects in NAI's motion. Obj. at 18. These arguments, which are unrelated to the R&R's conclusion that Livevideo violated Rule 11 by advancing frivolous *federal claims*, fail to address "only those portions of the proposed findings to which [Livevideo] objects," *Pineda*, 831 F. Supp. 2d at 671, and "will not suffice to invoke *de novo* review," *Phillips*, 955 F. Supp. 2d at 211.

The only defense of Livevideo's federal claims can be found in a declaration submitted by Greenspan in support of the Objection, which Livevideo attempted to supplement with a belated and procedurally improper "Notice of Errata." *See* Obj. at 24-28; Notice of Errata, Dkt. No. 168.[6] Of course, Greenspan is not an attorney and cannot attest to legal conclusions such as whether the federal claims were legally frivolous. *See DVL, Inc. v. Gen. Elec. Co.*, 811 F. Supp. 2d 579, 591 (N.D.N.Y. 2010) (excluding portions of a declaration where "it presents testimony and legal conclusions greatly exceeding the bounds of lay testimony"), *aff'd sub nom. DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 F. App'x 378 (2d Cir. 2012).

Even if the (original) Greenspan declaration could be read to factually support the federal claims (it cannot), it comes too late: "it is inappropriate for the Court to consider new evidence upon review of a Magistrate's Report and Recommendation," particularly where, as here, Livevideo "had an opportunity to fully brief [the motion for sanctions] before the Magistrate." *Feehan v. Feehan*, No. 09-cv-7016, 2010 WL 3734079, at *2 (S.D.N.Y. Sept. 22, 2010). In any

---

[6]     This "Notice of Errata," which was filed over a week after Livevideo's already-extended deadline to object to the R&R, attempts to substantially supplement the prior Greenspan declaration that was appended to Livevideo's Objection. *Compare* Dkt. 167 at 24-28 *with* Dkt. 168 at 3-29. Respectfully, the Court should disregard the tardy and substantially revised declaration.

event, Greenspan's declaration does not address the CFAA claim at all, and attempts to recast

Livevideo's Dodd-Frank claim with new arguments.[7]  But "a district court generally should not

entertain new grounds for relief or additional legal arguments not presented to the magistrate."

*Baliga v. Link Motion Inc.*, No. 18 Civ. 11642, 2025 WL 1430587, at *3 (S.D.N.Y. May 19,

2025).[8]

This Court should adopt the R&R's determination that Livevideo violated Rule 11(b)(2).

### 2.    Livevideo and its Counsel Likewise Violated Rule 11(b)(1)

Furthermore, the R&R correctly determined that Livevideo and its counsel violated Rule

11(b)(1) by lodging these frivolous federal claims for the improper purposes of manufacturing

subject matter jurisdiction and harassing the Defendants.  *See* R&R at 36-38.  Indeed, Livevideo

only pled its frivolous federal claims after Magistrate Judge Moses issued an order to show cause

warning that this action may be subject to dismissal for lack of subject matter jurisdiction.  *See*

Dkt. 15 at 2.  This attempt to manufacture subject matter jurisdiction is independently sanctionable.

*See, e.g.*, *LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 436 (S.D.N.Y. 1995) (imposing

sanctions for "improperly invoking the court's subject matter jurisdiction" by "attempt[ing] to gain

a foothold in federal court with objectively unreasonable federal claims").

---

[7]    *Compare* R&R at 32 (identifying as the basis for Livevideo's Dodd-Frank claim that "Defendants have discriminated against the Plaintiff because of the Plaintiff's lawful acts done including investigating the conflicts of interest behind the Skydance offer and Redstone's financial advisor BDT who is also her lender."), *with* Greenspan Decl., Dkt. 167 ¶ 10 (claiming that Greenspan was discriminated against because he was "previously an SEC whistleblower" because he hired a whistleblower law firm and pursued litigation against the SEC).

[8]    Even were the Court to consider this newfound allegation, it is unavailing.  In that litigation against the SEC, the Ninth Circuit ultimately rejected Greenspan's claims to a whistleblower award.  *See Greenspan v. U.S. Sec. & Exch. Comm'n*, 727 Fed. App'x 381, 382 (9th Cir. 2018).  Claiming you are a whistleblower does not make you one, and Greenspan still fails to explain how this quixotic lawsuit *against* the SEC is "causally related" to any alleged discrimination.  R&R at 32.

As the R&R concluded, these attempts to manufacture subject matter jurisdiction were intended to effectuate Livevideo's broader improper purpose of harassing the Defendants "in retaliation for unrelated wrongs that he believes were done to him decades ago." R&R at 36. Evidencing this improper purpose, the R&R identifies that Livevideo pursued its frivolous claims despite multiple express warnings by Magistrate Judge Moses, misstated its factual allegations and the procedural background in this case, and targeted Defendants Seligman and Varney "not because of anything they did in 2024 or 2025," but "because they were 'adverse' to Mr. Greenspan in prior unrelated matters." R&R at 37-38. Nor is this the first case in which Greenspan sought, either on his own behalf or through other fictitious entities, to relitigate those prior unrelated events or harass those related to his unsuccessful bid to purchase Myspace in 2005. R&R at 5-6, 38 (identifying six cases where Greenspan sought to relitigate prior unrelated events or was otherwise admonished for litigation misconduct).

Livevideo does not meaningfully dispute that it violated Rule 11(b)(1) by bringing its frivolous federal claims for the improper purpose of manufacturing subject matter jurisdiction and harassing the Defendants, and these determinations were not clearly erroneous. Accordingly, the Court can and should accept those determinations of the R&R.

### B.    The Sanctions Imposed By the R&R Are Appropriate

Finally, the Court should adopt the R&R's determinations that sanctions are warranted, and indeed necessary, to deter Livevideo and its counsel from further frivolous and vexatious litigation conduct. *See* R&R at 39-41, 44-49.

#### 1.    The Monetary Penalty Against Livevideo and Constants Is Necessary to Deter Future Violations of Rule 11

The R&R recommended imposing a monetary sanction of $10,000 jointly on Livevideo and its counsel to be paid into the Court. This modest monetary sanction is reasonable and

necessary to deter future violations of Rule 11. The Court "has significant discretion in determining what sanctions, if any, should be imposed for a violation." *Lipin v. Hunt*, 573 F. Supp. 2d 836, 843-44 (S.D.N.Y. 2008). As set out in the R&R, courts consider several factors, outlined in *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-cv-885, 2019 WL 422613 (S.D.N.Y. Feb. 4, 2019), in determining whether to impose sanctions, *see* R&R at 39-41 (analyzing *Bobcar* factors).

The R&R concluded that each of these factors favor imposition of a monetary sanction against Livevideo and Constants. It reasoned that Livevideo and Constants violated Rule 11 "willfully, despite multiple judicial warnings," these violations were not an "isolated event, but rather part of a pattern of misconduct in this action," the misconduct "infects the entire case," Greenspan has engaged in similar misconduct in other litigations, the misconduct has imposed significant costs and expenses on Defendants and the Court, and both Livevideo and Constants should have known better than to file and press ahead with these frivolous claims given that Livevideo is an experienced litigant and Constants is a member of the Bar of this Court. R&R at 40. Accordingly, the R&R imposed only a "modest monetary sanction of $10,000" to be paid into the Court. R&R at 41. This modest monetary sanction is certainly no greater than necessary "to advance the interests of deterrence and not as punishment or compensation." *Mata v. Avianca*, *Inc.*, 678 F. Supp. 3d 443, 466 (S.D.N.Y. 2023); *see also Celestin*, 2024 WL 4355512, at *9.

Livevideo offers only two brief responses in its Objection to the R&R's robust analysis, both of which merely attempt to shift the blame for Livevideo's conduct onto Magistrate Judge Moses. First, it claims that the "R&R discounts the availability of lesser measures," because Magistrate Judge Moses could have taken measures such as "clarifying service," "scheduling re-service," or "coordinating briefing." Obj. at 18. This attempt to deflect ignores the opportunities

-16-

that Magistrate Judge Moses provided Livevideo to demonstrate good cause to extend service—all of which went unheeded.

Second, Livevideo offers that it "withdrew filings when directed (e.g., Dkt. 88) and attempted to conform to evolving directives." Obj. at 18. As the R&R's robust recitation of Livevideo's conduct in this case bears out, the record belies this argument. *See* R&R at 10-22. Livevideo has withdrawn only a single frivolous filing in this action—the motion for reconsideration at Docket No. 88—which Livevideo's counsel admitted he did not write, review, or file. *See* Dkt. 90 at 22-24. Moreover, there were no "evolving directives"; rather, Livevideo routinely failed to comply with the Court's clear filing rules, filed ***fourteen*** complaints that were obviously denoted "Filing Error" on the docket, *see* Dkts. 1, 2, 6, 12-13, 24-27, 29-32, 44, and ignored myriad other warnings by Magistrate Judge Moses while continuing to flood the docket with frivolous filings, *see, e.g.*, Dkts. 74 at 2; 77 at 1; 87 at 2; 137 at 1. Livevideo cannot attribute its failure to follow Court orders, Court rules, and the Federal Rules of Civil Procedure to Magistrate Judge Moses or the Court.

The Court should accordingly adopt the modest monetary penalty imposed by the R&R to deter future violations of Rule 11 by Livevideo and its counsel.

### 2.    Attorney Constants Should Be Referred to the Grievance Committee

Next, the R&R recommended that Constants be referred to the Grievance Committee to assess whether he should be disciplined for (i) permitting his ECF credentials to be used to file papers that he did not write, review, or authorize and (ii) representing to the Court in Livevideo's application for a temporary restraining order ("TRO") that NAI "was properly served" and that proper service was "undisputed." R&R at 44. This disciplinary referral is more than reasonable. In repeatedly warning Livevideo and Constants that sanctions may be imposed, Magistrate Judge Moses specifically warned Constants that his behavior could result in referral to the Grievance

-17-

Committee.  Dkts. 87 at 3; 90 at 22.  In particular, Magistrate Judge Moses told Constants in person at the February 12 show-cause hearing that he could be disciplined for allowing documents to be filed under his ECF credentials that he expressly admitted he did not write, review, or authorize. Dkt. 90 at 22.  And yet, numerous filings in this matter—including the Objection[9]—do not "read . . . like something prepared by a member of the bar of this Court," supporting the R&R's finding that Constants has permitted others to use his ECF credentials.  Dkt. 90 at 22; *see* R&R at 42.

Ironically, the section of the Objection purportedly challenging Constants' referral to the Grievance Committee epitomizes the misunderstanding of legal concepts and general linguistic incoherence characteristic of filings purportedly signed and filed by Constants.  *See* Obj. at 20-21.[10]  In fact, that section expressly concedes the author's (purportedly Constants') lack of understanding of the R&R.  For example, it states "[t]o be candid, the Plaintiff does not understand what the magistrate is arguing under her inherent powers.  This case never got going."  Obj. at 20; *see also* Obj. at 20 (stating that "[t]he Magistrate's statement of inoperative pleadings does not

---

[9]     *See, e.g.*, Obj. at 1 ("Attached is the declaration of Brad Greenspan inter alia, which address the issue of whistle blower and the fact that the magistrate denied his claim of federal jurisdiction."); *id.* at 17 ("The R & R statement is not the law., There is a live controversy that exists. . . .  If we review the R & R report, there were substantive paragraphs were written between paragraphs 1-7 as set forth from the magistrate.").
        Notably, Livevideo's motion to extend the time to object to the R&R was purportedly premised upon "the CEO [Greenspan] of the Plaintiff's sudden lack of availability."  Dkt. 165. This is further evidence that it is not Constants, but Greenspan, who is preparing these filings.

[10]    *See, e.g.*, Obj. at 20 ("The Magistrate's statement of inoperative pleadings does not make sense and her concern about the process server delivery of the amended complaint are exactly that-it was an amended complaint."), 21 (stating that "the Court did not remove those docket numbers from the website," referring to Docket No. 85, which the Court ordered withdrawn at Docket No. 89), 22 ("In addition, plaintiff requests for judicial notice. For some reason, all the facts pertaining to the defendants are immaterial and irrelevant to the magistrate. She went on and on about the CEO of Livevideo.AI and his litigations and that Ropes & Gray argued that he was vexatious and entered many items.").

make sense"). But the fact that this case never proceeded past the service stage—a direct consequence of Livevideo and Constants' own failures—does not deprive the Court of authority to sanction Constants for his misconduct in this action over the past year. *Cf. An v. Despins*, No. 22-cv-10062, 2023 WL 4931832, at *5 n.7 (S.D.N.Y. Aug. 2, 2023) (explaining that a court "retains the authority to impose sanctions against [parties] and their counsel" even where an action is dismissed for lack of subject matter jurisdiction).

The Objection's only other relevant argument is that Constants complied with Magistrate Judge Moses' invitation to withdraw the motions he filed just before the February 12 show-cause hearing. *See* Dkts. 87 ¶ 5; 88. While Constants withdrew one such motion, the other motion to stay remained pending at the time of the R&R. *See* Dkts. 82-84. And, as the R&R clearly sets forth, the referral is based on a pattern of conduct by Constants, including several ***additional*** filings that (i) "were notable for their odd formatting, poor grasp of legal citation basics, jumbled and incomplete sentences, incomprehensible paragraphs, random quotations from inapposite cases, and multiple non sequiturs," R&R at 13 n.13, 14 (citing Dkts. 70, 85, and 86), (ii) "bore telltale signs of having been supplied by ChatGPT or a similar AI tool," R&R at 13 n.13 (citing Dkt. 70-2), and (iii) were signed by Constants "in a confusing variety of typed and handwritten styles" and provided "inconsistent contact information," R&R at 17 n.18 (citing Dkts. 92, 92-1, 94). Most egregiously, only shortly before the R&R issued, Constants submitted a demonstrably false declaration in support of Livevideo's eleventh-hour *ex parte* TRO application seeking to upend the multi-billion-dollar Paramount/Skydance merger, in which he attested that NAI "was properly served" and that proper service was "undisputed." R&R at 44.

Accordingly, there was ample basis for the R&R to conclude that Attorney Constants should be referred to the Grievance Committee.

**3.    A Nationwide Filing Injunction Is Necessary to Prevent Livevideo and its Principal from Further Vexatious Litigation Conduct**

Finally, the R&R imposed a filing injunction requiring Livevideo to obtain advance leave from any federal district court before filing claims arising out of the Paramount/Skydance merger. *See* R&R at 48.  This filing injunction is narrowly tailored and necessary "to curb [Livevideo's] ongoing campaign of frivolous motion practice in the case at bar and to prevent him from recycling the same frivolous claims in other courts."  R&R at 48.

As the R&R concludes, Livevideo (led by Greenspan) is exactly the type of litigant for which filing injunctions are intended.  R&R at 44-49.  When assessing whether to impose a filing injunction and the proper scope of such an injunction, "the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties."  *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986).  The R&R concluded that each of the factors identified in *Safir* for determining whether a filing injunction should issue are satisfied here.  *See* R&R at 46.  Greenspan, who is Livevideo's "only known decisionmaker," has a long history of filing vexatious, harassing, and duplicative lawsuits in his own name and through various corporate vehicles.  R&R at 46.  Livevideo has asserted and pursued frivolous claims for the improper purpose of harassing the Defendants.  *Id.*  Meanwhile, Livevideo has used Constants as "a conduit for frivolous litigation papers" that are prepared, in all likelihood, by Greenspan himself.  *Id.*  Livevideo's harassing, bad-faith litigation tactics have caused "needless expense" to NAI and posed an "unnecessary burden" on the Court.  R&R at 47.  And finally, it is clear given Greenspan's litigation history and clear disregard for Court orders that monetary sanctions alone are unlikely to deter future misconduct.  R&R at 47.[11]

---

[11] Indeed, there is no need for a crystal ball to know that, without a narrowly tailored filing injunction, Livevideo and Greenspan will continue to harass NAI.  In Greenspan's declaration, he declares his intent to pursue the "securities-fraud allegations" pleaded in Livevideo's proposed

Livevideo does not address the R&R's analysis of these factors or the R&R's injunction analysis at all. Livevideo's only arguments regarding the injunction consist of two vague and near-indecipherable paragraphs (phrased in the form of questions presented). *See* Obj. at 19. Both appear to challenge the propriety of injunctive relief based on alleged "material misstatements and omissions" or "unverified, unreliable, or materially false" facts. *Id.* Aside from an allegation under a subsequent heading that Defendants misrepresented their registered agent—an argument that has been repeatedly debunked by Magistrate Judge Moses, *see, e.g.*, Dkt. 74 at 7; 87 ¶ 5—Livevideo provides no insight into what these allegedly unreliable or materially false facts might be, *see* Obj. at 19-20. These questions—which are unsupported by any legal analysis or factual argument and seek to relitigate issues Magistrate Judge Moses has repeatedly adjudicated—"are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Pioneer Navigation Ltd. v. Chem. Equip. Labs, Inc.*, No. 1:19-cv-02938, 2020 WL 1031082, at *3 (S.D.N.Y. Mar. 3, 2020).

To the extent that Livevideo's vague reference to "cross-forum enforcement" could amount to a challenge to the scope of the filing injunction, *see* Obj. at 19, the R&R correctly determined that a nationwide scope is necessary to give effect to the injunction and effect true deterrence, *see* R&R at 48. Clearly, if this action is dismissed Greenspan will simply file another action (either individually or through another shell entity) to continue harassing the Defendants. *See Woodhouse v. Meta Platforms Inc.*, 704 F. Supp. 3d 502, 521 (S.D.N.Y. 2023) (imposing nationwide

---

supplemented complaint, which concern a publicly disclosed consent decree against NAI (a privately held company), and a July 2025 "leak" of "financial information belonging to Stephen Colbert." Greenspan Decl., Dkt. 167 ¶¶ 14-15. He also intends to pursue antitrust claims arising from a customary $4 million-per month expense reimbursement agreement related to the Paramount/Skydance merger, which he characterizes as a "per se violation of Section 1 of the Sherman Act." *Id.* ¶¶ 16-17.

injunction, including against "any company [plaintiff] owns or controls").  Indeed, Greenspan has

already begun harassing NAI in other fora, including dozens of duplicative filings in another (now

resolved) proceeding before the FCC.[12] *See Woodhouse*, 704 F. Supp. 3d at 520 (noting Court

"need not wait until a vexatious litigant inundates each federal district court with meritless actions

to condition access to that court").

This is unsurprising; as extensively summarized in the R&R, Greenspan has made a (bad)

habit of filing the same claims in an array of litigations across numerous jurisdictions.  *See* R&R

at 5-6 (collecting cases filed by Greenspan in several federal district courts including the Northern

and Central Districts of California, the District of Columbia, and the District of New Jersey).  At

least three such courts have "sanctioned him, refused to accept further filings from him, or both."

R&R at 5.  In fact, as the R&R observed, Greenspan was already subject to a "narrowly tailored"

filing injunction in a case involving the 2005 sale of Myspace in the Northern District of California

that prevented him from "fil[ing] motions in this case only."  *Greenspan v. IAC/InterActiveCorp*,

No. 14-CV-04187-RMW, 2016 WL 5724972, at *3 (N.D. Cal. Sept. 30, 2016); R&R at 47.

Undeterred, Greenspan has continued to air grievances related to that 2005 sale, including in this

frivolous action.  *See, e.g.*, *Peng Chan v. Time Warner Inc.*, No. 5:16-cv-06268, 2017 WL

11500157, at *1 (N.D. Cal. June 20, 2017) (observing that "[m]any portions" of that plaintiff's

complaint, filed after the Northern District of California's injunction issued, "are copied verbatim

---

[12]     Greenspan has attempted to challenge the merger before the Federal Communications
Commission ("FCC") by making **thirty-one** filings in the approval proceedings, including
**fourteen** for reconsideration or to reopen the matter after the FCC approved the merger on July
24, 2025.   *See* Transfer of Control of Paramount Global, No. 24-275,
https://www.fcc.gov/ecfs/search/search-filings/results?q=(proceedings.name:(%2224-275%22))
(last visited Sept. 4, 2025).  Some of these filings, authored by Greenspan and Constants, attempted
to leverage the brief default in this action to prevent approval of the merger.  *See id.* (noting
Constants and Greenspan are among "Top Author Names" for filings); Dkt. 68 at 2 n.2.

from *Greenspan v. IAC/InterActive Corp.*").  Greenspan thus has a clear track record of attempting to evade narrower filing injunctions, further justifying the breadth of the injunction here.  *See Woodhouse*, 704 F. Supp. 3d at 520 (noting nationwide injunction was necessary where plaintiff evaded "[d]istrict-specific injunctions" in the past).

In sum, the Court should adopt the R&R's determination that a narrowly tailored nationwide filing injunction is necessary to deter Livevideo from further violations of Rule 11 and from continuing its vexatious campaign of litigation-by-harassment in future actions.

## CONCLUSION

For the reasons set forth above the Court should deny the Objection and enter judgment in accordance with the R&R.

Dated: September 12, 2025                    **ROPES & GRAY LLP**

By:  */s/ Peter L. Welsh*
Peter L. Welsh
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
peter.welsh@ropesgray.com

Martin J. Crisp
Ani-Rae Lovell
1211 Avenue of the Americas
New York, NY  10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090
martin.crisp@ropesgray.com
ani-rae.lovell@ropesgray.com

*Attorney for Defendant National Amusements, Inc.*

-23-

## CERTIFICATION

The undersigned hereby certifies, pursuant to S.D.N.Y. Local Civil Rule 6.3(c), that the

foregoing Opposition contains 7,715 words exclusive of the caption and signature block.


By:

_/s/ Ani-Rae Lovell_
Ani-Rae Lovell
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9821
Fax: (212) 596-9090
ani-rae.lovell@ropesgray.com


_Attorney for Defendant National Amusements, Inc._