**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LIVEVIDEO.AI CORP. | C.A. No. 1:24-CV-6290 (DEH) (BCM) |
| Plaintiff, | |
| v. | |
| | **ORAL ARGUMENT REQUESTED** |
| SHARI REDSTONE, NATIONAL AMUSEMENTS, INC., CHRISTINE VARNEY, MONICA SELIGMAN | |
| Defendants. | |

**DEFENDANT NATIONAL AMUSEMENTS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWERS**

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ......................................................................... 2

I.      PRE-FILING-INJUNCTION CONDUCT ..................................... 2

II.     POST-FILING-INJUNCTION CONDUCT .................................... 5

ARGUMENT .............................................................................................. 6

I.      AN AWARD OF ATTORNEYS' FEES IS WARRANTED UNDER § 1927 AND THE COURT'S INHERENT POWERS ........................................................ 6

    A.      Each of the Struck Motions Were Entirely Meritless. ........................... 7

    B.      Livevideo and Constants Filed the Struck Motions in Bad Faith to Harass NAI and Prolong this Litigation. ........................................ 12

II.     THE ATTORNEYS' FEES REQUESTED BY NAI ARE REASONABLE ................... 13

    A.      The Requested Rates Are Reasonable ................................. 13

    B.      The Hours Expended Responding to the Struck Motions Are Reasonable .......... 17

    C.      NAI's Total Attorneys' Fees Sought ................................. 19

CONCLUSION ......................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*An v. Despins*,
  No. 22-CV-10062, 2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024) ................................. *passim*

*Assoc. of Holocaust Victims for the Restitution of Artwork & Masterpieces v.*
  *Bank Austria Creditanstalt AG*,
  No. 04 CIV 3600, 2005 WL 3099592 (S.D.N.Y. Nov. 17, 2005) .........................................18

*Bergerson v. N.Y. State Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*,
  652 F.3d 277 (2d Cir. 2011)..................................................................................................13

*Bey v. Roc Nation LLC*,
  No. 24-CV-02995, 2025 WL 2774114 (S.D.N.Y. Sept. 29, 2025)...........................................7

*Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.*,
  212 F. Supp. 2d 226 (S.D.N.Y. 2002)..............................................................................16, 18

*Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*,
  No. 22-CV-7692, 2025 WL 1183676 (S.D.N.Y. Apr. 4, 2025) ................................13, 17, 19

*Datiz v. Int'l Recovery Assocs., Inc.*,
  No. 15-CV-3549, 2020 WL 3790348 (E.D.N.Y. July 7, 2020).............................................17

*Doe 1 v. East Side Club, LLC.*,
  No. 18 CIV 11324, 2023 WL 4174141 (S.D.N.Y. June 23, 2023).........................................17

*Eisenberg v. Permanent Mission of Equatorial Guinea to United Nations*,
  No. 18-CV-2092, 2022 WL 1546673 (S.D.N.Y. Apr. 5, 2022) .............................................12

*Enmon v. Prospect Cap. Corp.*,
  675 F.3d 138 (2d Cir. 2012)....................................................................................................7

*Graziano v. First Unum Life Ins. Co.*,
  No. 21-CV-2708, 2024 WL 1175143 (S.D.N.Y. Mar. 19, 2024)...........................................14

*In re H & S Truck Stop Travel Plaza LLC*,
  610 B.R. 431 (Bankr. W.D.N.Y. 2019) .................................................................................12

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018)......................................................................................................7

*Laba v. JBO Worldwide Supply Pty Ltd.*,
  No. 20-CV-3443, 2023 WL 4985290 (S.D.N.Y. July 19, 2023)...........................................14

*Mata v. Avianca, Inc.*,
    678 F. Supp. 3d 443 (S.D.N.Y. 2023).........................................................................8

*Oakley v. MSG Networks, Inc.*,
    No. 17-CV-6903, 2025 WL 3041936 (S.D.N.Y. Oct. 31, 2025)............................13, 14, 15, 18

*Park v. Kim*,
    91 F.4th 610 (2d Cir. 2024) ......................................................................................8

*People of State of New York by Vacco v. Operation Rescue Nat.*,
    80 F.3d 64 (2d Cir. 1996)..........................................................................................7

*Prout v. Vladeck*,
    319 F. Supp. 3d 741 (S.D.N.Y. 2018)........................................................................9

*Ransmeier v. Mariani*,
    718 F.3d 64 (2d Cir. 2013)........................................................................................6

*Reichmann v. Neumann*,
    553 F. Supp. 2d 307 (S.D.N.Y. 2008)......................................................................11

*Rock v. Enfants Riches Deprimes, LLC*,
    No. 17-CV-2618, 2020 WL 468904 (S.D.N.Y. Jan. 29, 2020) .................................13

*Truong v. Sapir*,
    13 CIV 2771, 2013 WL 6170308 (S.D.N.Y. Nov. 25, 2013) ...................................12

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of
    Am., AFL-CIO*,
    948 F.2d 1338 (2d Cir. 1991)...................................................................................19

*United States v. Orrego*,
    No. 04-CV-0008, 2004 WL 1447954 (E.D.N.Y. June 22, 2004) ...............................7

*United States v. Prevezon Holdings, Ltd.*,
    305 F. Supp. 3d 468 (S.D.N.Y. Mar. 30, 2018)......................................................19

*Uttarwar v. Lazard Asset Mgmt. LLC*,
    22 CIV 8139, 2025 WL 3205467 (S.D.N.Y. Nov. 17, 2025)....................................14

*Vishipco Line v. Charles Schwab & Co.*,
    No. 02 CIV. 7823, 2003 WL 1936142 (S.D.N.Y. Apr. 23, 2003)............................13

*Zama Cap. Advisors LP v. Universal Entertainment Corp.*,
    24-CV-01577, 2025 WL 3525044 (S.D.N.Y. Dec. 9, 2025) ....................................15

## Statutes

28 U.S.C. § 1927..................................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 4(m).................................................................4, 11

Federal Rule of Civil Procedure 7.1 ..........................................................5, 8, 9, 11

Federal Rule of Civil Procedure 11 ...................................................................3, 8

Federal Rule of Civil Procedure 12(f) ...............................................................11

Defendant National Amusements, Inc. ("NAI") brings this motion (the "Motion") pursuant to 28 U.S.C. § 1927 and the Court's inherent powers to seek its attorneys' fees incurred in responding to vexatious and frivolous filings by Plaintiff Livevideo.AI Corp. ("Livevideo") and its counsel, Alfred C. Constants III ("Constants") that violated the Court's September 30, 2025 filing injunction.

## PRELIMINARY STATEMENT

At every turn, Livevideo and Constants have used this action to advance bad faith legal arguments and harass NAI. The Court's September 30, 2025 Order (the "Order") (Dkt. 170) and Magistrate Judge Moses' August 12, 2025 Report & Recommendation (the "R&R") (Dkt. 163) both found Livevideo's claims to be frivolous and sanctionable. The Order and R&R also concluded that Livevideo has "flood[ed] the docket with frivolous filings and . . . disregard[ed] court orders throughout the duration of this matter." Dkt. 170 at 10; *see* Dkt. 163 at 2. To halt Livevideo's strategy of litigation by harassment, the R&R recommended, and the Order implemented, a filing injunction barring Livevideo from filing "any further motions for affirmative relief" in this action without first seeking leave of Court. Dkt. 163 at 48; Dkt. 170 at 13.

Continuing their pattern of ignoring Court orders, wasting the Court's time, and harassing NAI, Livevideo and Constants responded to the Order ***by filing five new frivolous motions***. Livevideo did not seek leave of Court to file these motions, and filed them in bad faith to prolong this frivolous case and to cause NAI to incur additional expense. The Court struck all five of Livevideo's post-injunction motions, holding that they "were filed in direct violation" of the Order and ordering Livevideo and Constants to show cause as to why they should not be held in contempt. Dkt. 186 at 1. The Court found Livevideo and Constants' response to the show-cause order to be

"insufficient" and invited NAI to move "for any costs or fees associated with [Livevideo's] conduct," despite ultimately declining to hold Livevideo and Constants in contempt.  Dkt. 194.

NAI seeks those fees through this Motion to compensate NAI for its costs in responding to those frivolous motions and to deter Livevideo and Constants from further violating the Order. Such fees are warranted under § 1927 and the Court's inherent powers in light of Livevideo and Constants' bad faith attempts to prolong this litigation and harass NAI through baseless and frivolous filings.  The rates charged by NAI's counsel, Ropes & Gray LLP ("Ropes & Gray"), in responding to the post-injunction filings are reasonable and commensurate with the rates charged by peer firms of similar size, skill, and experience in the Southern District of New York.  The hours worked by Ropes & Gray are likewise reasonable and reflect the necessary effort involved in deciphering and then opposing Livevideo's lengthy, incoherent, and relentless filings. Accordingly, the Court should award NAI the fees it incurred in responding to the post-injunction filings.

## STATEMENT OF FACTS[1]

The R&R and the Order recount in detail the factual and procedural history of this case. *See* R&R at 4-22; Order at 1-2.  NAI therefore summarizes only the facts most relevant to this Motion.

## I.    PRE-FILING-INJUNCTION CONDUCT

This action is one of many frivolous actions filed by Livevideo's founder and "CEO" Brad Greenspan—a well-known vexatious litigant.  *See id.* at 5-7.  As Magistrate Judge Moses found in the R&R, Greenspan "has devoted much of his energy in recent decades to filing and pursuing

---

[1] All internal citations and quotations are omitted and emphases are added unless otherwise noted.

lawsuits." *Id.* at 5.  Due to the vexatious and frivolous nature of Greenspan's actions, he has been repeatedly sanctioned by federal courts.  *See id.* at 5-7 (collecting cases).

Livevideo commenced this action in August 2024.  As the R&R found, Livevideo then acted in bad faith to manufacture federal jurisdiction by amending its complaint to add two frivolous federal claims.  *Id.* at 10, 36-38.  However, Livevideo's vexatious conduct was not limited to commencing a frivolous action; it also filed ***twenty-five*** meritless motions and proposed certificates of default.[2]  Among these filings are ***nine*** separate motions objecting to or seeking reconsideration of Court orders, Dkts. 70, 85, 118, 126, 138, 143, 167, 171, 178, including on the unsubstantiated basis that Magistrate Judge Moses was acting as "an extra legal aide" to NAI, Dkt. 86 at 10.  Shockingly, when questioned by Magistrate Judge Moses at an in-person show-cause hearing, Constants admitted that he did not write, review, or know the purpose of at least two of the motions filed under his ECF credentials.  Dkts. 82, 85; *see also* Dkt. 90 at 22:20-24:11.  Underscoring Livevideo's apparent obsession with NAI, Livevideo also filed an eleventh-hour motion for a temporary restraining order to enjoin the closing of the eight-billion-dollar merger transaction between NAI, Paramount Global ("Paramount"), and Skydance Media ("Skydance"). Dkt. 161.[3]

On February 26, 2025, NAI filed a motion for sanctions against Livevideo and Constants pursuant to Federal Rule of Civil Procedure 11 and the Court's inherent powers.  Dkt. 121; R&R at 18.  Because, at that time, "significant time and effort spent dealing with both Constants' and

---

[2] *See* Dkts. 45, 61, 70, 82, 85 (later withdrawn), 90 at 22:20-24:11, 101, 103, 105, 118, 126, 128, 134, 138, 143, 147, 150, 156, 161, 167, 171, 175, 178, 173 at 15, 182.

[3] Continuing this harassment, Livevideo also made ***forty*** filings before the Federal Communications Commission attempting to challenge that transaction.  *See* Transfer of Control of Paramount Global, No. 24-275, https://www.fcc.gov/ecfs/search/search-filings/results?q=(proceedings.name:(%2224-275%22)) (last visited Feb. 19, 2025).

Livevideo's behavior in this case has fallen on the Court," NAI only requested that Livevideo and Constants pay a fee to the Court rather than seeking its own attorneys' fees under Rule 11 or § 1927. Dkt. 121 at 20 n.15. NAI nevertheless "reserve[d] the right to seek additional sanctions if [Livevideo's] vexatious conduct persists." *Id.* On August 12, Magistrate Judge Moses issued the R&R, recommending that this action be dismissed under Rule 4(m) and that NAI's motion for sanctions against Constants and Livevideo be granted. The R&R recommended imposing a $10,000 fine to be paid to the Court, referring Constants to the Grievance Committee for the Southern District of New York (the "Grievance Committee"), and imposing a filing injunction requiring Livevideo to receive advance leave to file any further motions in this action or to file another action in any federal court arising from the merger between Skydance and Paramount. R&R at 48-49.

On September 30, 2025, the Court issued the Order, which adopted the R&R in its entirety. Dkt. 170. In doing so, the Court imposed the $10,000 penalty jointly and severally against Livevideo and Constants, referred Constants to the Grievance Committee, and imposed a filing injunction (the "Filing Injunction") against Livevideo. *Id.* at 13-14. Specifically, the Filing Injunction provides:

> Livevideo is enjoined from filing any further motions for affirmative relief in this action without first seeking leave of this Court by filing a one-page letter in which its counsel of record summarizes the proposed motion and explains succinctly why it would be neither duplicative nor baseless. Livevideo is further enjoined from filing any further lawsuits in any federal district court in which it proposes to file or refile any claims arising out of the Paramount/Skydance merger, without first obtaining leave of the court in which it proposes to proceed by filing a separate motion that (i) lists all of Livevideo's prior cases arising out of the Paramount/Skydance merger (including this one) and their disposition; (ii) certifies that it has paid any sanction assessed in the listed case(s); (iii) attaches the proposed new complaint; (iv) explains, succinctly, the basis of the court's subject-matter jurisdiction; and (iv) if plaintiff invokes the court's federal question jurisdiction, explains, succinctly, why its proposed federal claims are not frivolous.

*Id.*

## II.     POST-FILING-INJUNCTION CONDUCT

The Order did not deter Livevideo and Constants' vexatious litigation conduct.  In the six weeks following the Order, Livevideo violated the Filing Injunction ***five times*** by filing:

- a motion for reconsideration of the Order adopting the R&R (Dkts. 171-73);

- a motion for leave to file a second supplemental complaint (Dkt. 173 at 15-97);

- a motion to amend service of process to account for previously undisclosed service attempts on NAI that allegedly occurred over a year ago (Dkts. 175-77);

- a motion to vacate a procedural order entered by Magistrate Judge Moses on September 11, 2024 (***over a year*** before the Order issued) (Dkts. 178-80); and

- a motion to strike (i) NAI's recent filings for alleged failure to comply with Federal Rule of Civil Procedure 7.1; and (ii) a letter NAI filed in ***February 2025*** for allegedly violating local rules regarding letter-motions (Dkts. 182-85) (collectively, the "Struck Motions").

The Struck Motions "were filed in direct violation of the Court's order," so the Court struck them and directed Livevideo and Constants to show cause why they should not be found in contempt.  Dkt. 186 at 1-2.  The order striking the filings stated that it was "without prejudice to a sanctions motion for any costs and fees incurred in responding to Plaintiff's improperly filed motions."  *Id.* at 2.

In responding to the show-cause order, Livevideo and Constants were unrepentant.  They attempted to shift blame to the Court by arguing that the Filing Injunction is somehow "ambiguous," and dishonestly misrepresented the Struck Motions as merely seeking to "refine, clarify, or correct prior rulings without enlarging claims or remedies" despite expressly asking for "affirmative relief" in each of the motions.  *See* Dkt. 189 at 3, 5.[4]  The Court found this response

---

[4] *See also* Dkt. 173 at 10-11 ("Comprehensive Relief Required" including vacating of order dismissing case, declaring prior orders invalid, "establish[ing] procedures preventing future constitutional violations," and seeking "costs incurred in these systematic violations"); *id.* at 24 (seeking leave to supplement complaint with new Sherman Act claim); Dkt. 176 at 12 ("Relief

"to be insufficient," but declined to hold Livevideo or Constants in contempt at that time. *See* Dkt. 194. However, the Court again stated that its order was "without prejudice to a sanctions motion for any costs or fees associated with Plaintiff's conduct." *Id.* The Court also noted that it considered its order to be "notice to the parties that the Court may consider the full range of actions taken in this litigation by Plaintiff and/or Plaintiff's counsel in any future contempt or sanctions proceedings." *Id.*

**ARGUMENT**

To deter Livevideo and Constants' vexatious litigation conduct, the Court should award NAI its attorneys' fees incurred in responding to the Struck Motions. Fees are warranted under 28 U.S.C. § 1927 and the Court's inherent powers because Livevideo and Constants have acted oppressively and vexatiously in this action for the purpose of multiplying the proceedings and harassing NAI. The fees incurred by NAI in responding to the Struck Motions are reasonable and necessary to deter Livevideo and Constants from continuing to harass NAI and waste the Court's time.

## I.    AN AWARD OF ATTORNEYS' FEES IS WARRANTED UNDER § 1927 AND THE COURT'S INHERENT POWERS

The Court can (and, under these circumstances, should) award NAI the attorneys' fees it incurred in responding to the Struck Motions. Under § 1927, the Court may require "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously" to pay the other party's "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Similarly, the Court may "exercise its inherent power to sanction a

---

Requested" including granting extension of time to serve defendants based on previously undisclosed service attempts); Dkt. 179 at 25 ("Relief Sought" including vacating order to find that Livevideo "previously served" defendants); Dkt. 184 at 6 ("Requested Relief" including striking NAI's filings, compelling NAI to file corporate disclosure statement, and "DIRECT[ing] the Clerk to proceed with ministerial processing of" requests for entry of default).

party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013).

In practice, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys . . . while an award made under the court's inherent power may be made against an attorney, a party, or both." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 144 (2d Cir. 2012). Accordingly, under both standards, the Court may award sanctions where a party provides "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018); *see also People of State of New York by Vacco v. Operation Rescue Nat.*, 80 F.3d 64, 72 (2d Cir. 1996) (noting that sanctions under § 1927 are appropriate where "actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay"). The Struck Motions easily meet this standard and warrant imposition of attorneys' fees.

### A.    Each of the Struck Motions Were Entirely Meritless.

Each of the Struck Motions were meritless: they violated the Filing Injunction, were likely prepared using artificial intelligence tools without requisite oversight of counsel, and are, in any event, meritless.

First, as the Court has held, the Struck Motions violated the Filing Injunction. *See* Dkt. 186 (striking Struck Motions because each of them "were filed in direct violation of the Court's Order"). The Filing Injunction bars Livevideo "from filing any further motions for affirmative relief in this action without first seeking leave of this Court." Dkt. 170 at 13-14. Yet each of Livevideo's Struck Motions, filed without leave of Court, expressly sought affirmative relief. *See supra* n.4. That the Struck Motions were filed in violation of the Filing Injunction renders them

entirely meritless. *See Bey v. Roc Nation LLC*, No. 24-CV-02995, 2025 WL 2774114, at *4 (S.D.N.Y. Sept. 29, 2025) ("A violation of an anti-filing injunction on its own warrants dismissal."); *United States v. Orrego*, No. 04-CV-0008, 2004 WL 1447954, at *5 (E.D.N.Y. June 22, 2004) (noting that filings made in violation of permanent injunction "are void ab initio").

Second, the Struck Motions appear to have been prepared using an artificial intelligence tool without the requisite oversight or review of counsel—an independently sufficient basis to reject the filings and impose sanctions. *See, e.g.*, *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023) (imposing sanctions where counsel "abandoned their responsibilities when they submitted non-existent judicial opinions with fake quotes and citations created by the artificial intelligence tool ChatGPT"). Each of the Struck Motions were "notable for their odd formatting, poor grasp of legal citation basics, jumbled and incomplete sentences, incomprehensible paragraphs, random quotations from inapposite cases, and multiple non sequiturs." Dkt. 163 at 13 n.13. Even worse, certain of the Struck Motions relied on nonexistent, hallucinated authorities to support their arguments.[5] *See Park v. Kim*, 91 F.4th 610, 615-16 (2d Cir. 2024) (referring attorney to Grievance Committee for violation of Rule 11 for preparing filings using an artificial intelligence tool and failing to ensure that they were accurate). This independently sanctionable conduct again renders the Struck Motions entirely meritless.

---

[5] *See, e.g.*, Dkt. 173 at 2 n.1 (purporting to quote Wright & Miller, Federal Practice and Procedure § 3068.2, for the proposition that "[a] magistrate judge may hear and submit a report and recommendation on specified dispositive motions, but the referral must identify the specific motion(s) referred" when no such quotation appears in the cited section); *id.* at 2 n.2, 3 n.3 (citing two nonexistent cases, *Rothstein v. Hospital of St. Raphael*, 200 F. Supp. 2d 378 (D. Conn. 2002, and *Campo v. City of New York*, 2006 WL 3068660 (S.D.N.Y. Oct. 27, 2006)); Dkt. 179 at 14 (purporting to quote *Ty Inc. v. Softbelly's, Inc.*, 353 F.3d 528, 536 (7th Cir. 2003), but no such quote appears in that case); *see also id.* at 9-14, 20-21 (discussing factually and legally inapposite cases).

Finally, the Struck Motions were all meritless.  Rather than raising any viable arguments, the Struck Motions rehashed the same arguments that the Court has repeatedly rejected throughout this litigation.  For example, Livevideo's October 14, 2025 motion for reconsideration argued for the ***eighth time*** that NAI failed to timely file its Rule 7.1 disclosure statement, *see* Dkts. 114 at 3-4; 118 at 8-9; 126 at 2 n.1; 127 at 20-21; 134 at 1; 140 at 7-9; 148 at 7-8; 173 at 7, and argued for the ***fifth time*** that NAI misrepresented its registered agent for service of process, *see* Dkts. 70-2 at 5-6, 22-23; 86 at 6-9; 140 at 2, 4-7, 15-16, 18; 143 at 6, 11; 173 at 7.  The other Struck Motions also relied on these rejected arguments.[6]  Because these motions "simply regurgitate the arguments that this Court previously rejected," they are entirely meritless.  *Prout v. Vladeck*, 319 F. Supp. 3d 741, 744 (S.D.N.Y. 2018).

Besides rehashing already-rejected arguments, each of the Struck Motions sought nonsensical relief, were filed in an entirely inappropriate procedural stage, and did nothing to affect the Court's final dismissal of this action.  The first Struck Motion seeks reconsideration of the Order adopting the R&R over Livevideo's objection, meaning it is yet another "meta-reconsideration motion."  Dkt. 90 at 19.  Despite having been informed numerous times that reconsideration is "an extraordinary remedy," requiring the movant to "point to controlling decisions or data the court overlooked," *see, e.g.*, Dkt. 74 at 4, this motion failed to engage with the issues in the R&R or Order at all.  Instead, it asserted a completely new and frivolous procedural objection to Magistrate Judge Moses' authority to issue the R&R.  *See* Dkt. 173 at 8-10.  And it did so while relying entirely on hallucinated and fictitious legal authorities and a

---

[6] *See, e.g.*, Dkt. 173 at 27 (arguing that Livevideo should be permitted to supplement its complaint to add allegations that NAI failed to disclose the invalid default predicated on ineffective service of process in its SEC filings); Dkt. 176 at 1, 9 (arguing that NAI was properly served and that NAI misidentified its registered agent for service of process); Dkt. 179 at 3-8, 12-14 (arguing that NAI was properly served); Dkt. 184 at 2-4 (arguing that NAI violated Rule 7.1).

misrepresentation of NAI's previous filings.  *See* Dkt. 174 at 8-10.  Likewise, Livevideo's related "motion for leave to file a second supplemental complaint" failed to engage with the R&R and Order in any way, and instead raised a number of factual allegations from news stories that were already publicly available when the challenged Order issued, and which concerned events that have no bearing on Livevideo's claims in this action.  *See* Dkt. 173 at 21-33.  The motion to reconsider the Order therefore had no legitimate prospect of success.

In Livevideo's third Struck Motion, it claimed for the first time that it attempted to serve NAI at a registered agent's office in California and Texas in ***September and October 2024***.  Dkt. 177 at 4-8.  Livevideo never mentioned these alleged service attempts in the months it spent litigating and relitigating the issue of whether it had effectively served NAI.  *See, e.g.*, Dkts. 48-62, 67 (attempting to establish NAI was in default); Dkts. 70, 85, 126, 138, 143, 147 (seeking reconsideration of or objecting to order that it failed to effectively serve NAI).  Counsel for Livevideo also never mentioned these service attempts when he appeared before Magistrate Judge Moses to explain his failure to timely serve Defendants.  Dkt. 74 at 7, Dkt. 77 (ordering conference on service issues); Dkt. 90 at 12 (attempting to establish good cause for an extension and noting, "[W]e've tried to serve NAI once").  Livevideo's decision to seek to "amend service of process," Dkt. 175 at 1, with these purported service attempts ***after this case has been dismissed for lack of service*** indicates that these attempts never happened, or, at best, that Livevideo has known they were ineffective all along and attempted to introduce them only to cause further delay.  As the Court has already recognized, Livevideo's attempts to inject these new service attempts into this already dismissed action are "futile."  Dkt. 197 at 2.

The final two Struck Motions bizarrely focus on procedural issues regarding events that occurred months before the R&R and Order.  The first of these motions attempted to set aside a

September 11, 2024 procedural order requiring Livevideo to properly docket its original and amended complaints (after nine failed attempts to do so), and to comply with a previous order requiring Livevideo to explain in writing why the action, which it originally filed against non-diverse defendants without asserting any federal claims, should not be dismissed. *See* Dkt. 28. Livevideo previously complied with this order without protest. *See* Dkts. 30-31, 33. The second motion seeks to strike a letter NAI filed in February 2025[7] in response to Livevideo flooding the docket with requests for default based on service attempts that (1) in one case, Constants had admitted was ineffective, and (2) Magistrate Moses had expressly taken under advisement in connection with the pending issue of whether to dismiss this action under Rule 4(m). *See* Dkt. 109. NAI's letter merely requested that the Court not enter a default based on these service attempts until Magistrate Judge Moses could rule on the validity of service. *Id.* No default entered and Magistrate Judge Moses ruled that the service attempts were ineffective. *See generally* Dkt. 123. Neither of these procedural issues is relevant to the Court's much later conclusion that this action should be dismissed and Livevideo and Constants should be sanctioned, and Livevideo offered no excuse as to why it sought to litigate those issues after the case had been dismissed.

---

[7] Livevideo also sought to strike filings NAI made after the August 2025 Skydance transaction, allegedly because they violated Rule 7.1. Dkt. 184 at 4-6. Livevideo fails to identify any support for its contention that courts should strike filings if a party fails to comply with Rule 7.1, and instead relies on Federal Rule of Civil Procedure 12(f), which governs striking "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a "pleading." *Id.* at 5-6; *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 891 (2d Cir. 1976) (reviewing order striking portions of complaint). It also relies on a passage from *Chambers v. NASCO, Inc.*, 501 U.S. 32, 54-55 (1991), that discusses courts' inherent powers to shift attorneys' fees in cases of fraud on the court. Dkt. 184 at 5. Even if it could point to any support for this remedy, the changes to NAI's ownership, which are a matter of public record, did not change any of the information that Rule 7.1(a)(1) requires to be disclosed, or NAI's disclosure statement, and so there was no requirement for NAI to update its statement under Rule 7.1(b). *See* Dkt. 119 (reporting NAI "has no parent corporation, and no publicly held corporation or company owns 10% or more of NAI's stock"). The motion to strike these filings had no prospect of success.

-11-

In sum, none of the Struck Motions had any prospect of success or asserted even a colorable argument that would warrant post-dismissal relief in this action.

### B.    Livevideo and Constants Filed the Struck Motions in Bad Faith to Harass NAI and Prolong this Litigation.

Each of the Struck Motions were filed in bad faith to prolong Livevideo and Constants' harassment campaign against NAI. The Court can infer bad faith from the utter lack of merit of the Struck Motions alone. *See Reichmann v. Neumann*, 553 F. Supp. 2d 307, 321 (S.D.N.Y. 2008) ("[B]ad faith can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose."). This is particularly true given that the Struck Motions merely regurgitate arguments that the Court had already rejected. *See Eisenberg v. Permanent Mission of Equatorial Guinea to United Nations*, No. 18-CV-2092, 2022 WL 1546673, at *2 (S.D.N.Y. Apr. 5, 2022) ("District courts within the Second Circuit have imposed sanctions where a party persists in raising previously rejected claims or defenses."). Not only did Livevideo and Constants seek to relitigate issues, but they did so in *five* successive motions. *See In re H & S Truck Stop Travel Plaza LLC*, 610 B.R. 431, 433 (Bankr. W.D.N.Y. 2019) ("Bad faith is most readily demonstrated in the context of serial filings."). This conduct warrants a finding of bad faith.

The Court has already held that this action was filed for the improper purpose of harassing Defendants, which further evidences Livevideo's and Constants' bad faith. R&R at 36. The Struck Motions simply continued those vexatious litigation tactics. Indeed, the Court's September 30 Order attempted to stop these harassing filings by dismissing Livevideo's claims and imposing the Filing Injunction barring Livevideo from making further frivolous filings. Yet, rather than letting this case come to its necessary end, Livevideo and Constants filed *five* meritless motions in violation of the Filing Injunction. That they continued to file these motions after the case had

-12-

closed and in violation of the Filing Injunction evidences their bad faith. *See Truong v. Sapir*, 13 CIV 2771, 2013 WL 6170308, at *2 (S.D.N.Y. Nov. 25, 2013) (finding that litigant's "repeated efforts to file motions in his long-closed case reflect bad faith").

Because Livevideo and Constants filed the entirely frivolous Struck Motions in bad faith for the improper purpose of harassing NAI and continuing to increase NAI's costs, attorneys' fees are warranted under § 1927 and the Court's inherent powers.

## II.    THE ATTORNEYS' FEES REQUESTED BY NAI ARE REASONABLE

The fees NAI seeks to recover—the $85,056 it incurred in litigating the Struck Motions— are reasonable. In determining a reasonable fee award under § 1927, courts begin with the "lodestar" amount. *Rock v. Enfants Riches Deprimes, LLC*, No. 17-CV-2618, 2020 WL 468904, at *5 (S.D.N.Y. Jan. 29, 2020). The lodestar amount is calculated "by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *An v. Despins*, No. 22-CV-10062, 2024 WL 1157281, at *1 (S.D.N.Y. Mar. 18, 2024). The resulting lodestar amount is "presumptively reasonable." *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7692, 2025 WL 1183676, at *2 (S.D.N.Y. Apr. 4, 2025), *R&R adopted*, No. 22-CV-7692, 2025 WL 1184012 (S.D.N.Y. Apr. 23, 2025).

### A.    The Requested Rates Are Reasonable.

A reasonable hourly rate is "what a reasonable, paying client would be willing to pay." *Bergerson v. N.Y. State Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011). Courts generally assess the reasonableness of attorney rates based on "the rate prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Oakley v. MSG Networks, Inc.*, No. 17-CV-6903, 2025 WL 3041936, at *3-4 (S.D.N.Y. Oct. 31, 2025). The "relevant community" for determining a reasonable hourly rate here is the Southern District of New York. *Vishipco Line v. Charles Schwab*

& *Co.*, No. 02 CIV. 7823, 2003 WL 1936142, at *2 (S.D.N.Y. Apr. 23, 2003) (the relevant community is "the district in which the court sits").

Under these standards, the rates Ropes & Gray charged NAI in this action are reasonable. As detailed in the attached Declaration of Peter L. Welsh (the "Welsh Decl."), during the time period relevant to the Motion the hourly rate charged by Ropes & Gray for the associate who worked on this matter was $1,060, the rate for the attorney who was elevated from senior associate to counsel in November 2025 was $1,620, and the rate for partners ranged from $1,940 to $2,250. Welsh Decl. ¶¶ 8-11. Because these represent Ropes & Gray's "customary billing rate[s] for fee-paying clients," they are "ordinarily the best evidence of the market rate." *Laba v. JBO Worldwide Supply Pty Ltd.*, No. 20-CV-3443, 2023 WL 4985290, at *13 (S.D.N.Y. July 19, 2023), *R&R adopted*, No. 20-CV-3443, 2024 WL 550252 (S.D.N.Y. Feb. 12, 2024), *aff'd*, Nos. 25-558-CV & 25-561-CV, 2025 WL 323762 (2d Cir. Jan. 29, 2025); *see also Graziano v. First Unum Life Ins. Co.*, No. 21-CV-2708, 2024 WL 1175143, at *3 (S.D.N.Y. Mar. 19, 2024) ("One of the most important factors that favors finding the rates reasonable is that hundreds of the Firm's clients are willing to pay these rates."); *Uttarwar v. Lazard Asset Mgmt. LLC*, 22 CIV 8139, 2025 WL 3205467, at *2 (S.D.N.Y. Nov. 17, 2025) (finding the fact that "a sophisticated, repeat client, actually paid these rates" to be "strong evidence that the charged rates are, in fact, reasonable").

The rates charged by Ropes & Gray are also consistent with prevailing market rates in the Southern District of New York charged by similarly situated law firms of comparable skill, status, and reputation. *See* Welsh Decl. ¶¶ 6, 13-20. Ropes & Gray is a preeminent global law firm that has extensive experience advising companies and individuals in litigation arising from large-scale mergers and acquisitions, as is the case here. *Id.* ¶ 7. Based on Ropes & Gray's wide-ranging expertise in such matters, NAI—a longstanding firm client—retained Ropes & Gray to represent

it in connection with transactional and litigation matters related to the transaction involving NAI, Skydance, and Paramount. *Id.*; *see Oakley*, 2025 WL 3041936, at *7 (rejecting argument that lawyers were "overqualified for the work they did" where the case "began as a complex commercial litigation [and] it would have been inefficient to switch lawyers").

Ropes & Gray's peer firms charge commensurate rates. *See* Welsh Decl. ¶¶ 13-20. For example, based on public filings by firms that disclose their rates, similarly situated firms charge hourly rates in the range of $1,430 to $2,645 for partners and counsel and $730 to $1,780 for associates. *See id.* The Court has repeatedly found comparable fees charged by other peer firms to be reasonable. *See, e.g.*, *An*, 2024 WL 1157281, at *1 (finding Davis Polk and Wardwell LLP's 2023 charged rates of $1,760 for partners, $1,440 for counsel, and $895 for associates to be reasonable); *Zama Cap. Advisors LP v. Universal Entertainment Corp.*, 24-CV-01577, 2025 WL 3525044, at *7 (S.D.N.Y. Dec. 9, 2025) (finding Milbank LLP's 2025 charged rates of $1,712 to $1,980 for partners and $716 to $1,168 for associates to be reasonable); *Oakley*, 2025 WL 3041936, at *7-8 (finding King & Spaulding's 2025 rates of $1,250 to $1,709 for partners and counsel and $374 to $1,135 for associates reasonable because they "are roughly comparable to the rates at similarly sized firms in New York City that have recently been found reasonable by this Court").

The extensive qualifications of each attorney involved in this litigation underscore the reasonableness of the charged fees. *See id.* at *4 ("To assess reasonableness of the fee, courts consider, among other factors . . . counsel's experience and reputation"). Ropes & Gray's lead partner on this matter, Peter Welsh, is global co-chair of the firm's corporate and securities litigation practice and has received numerous accolades from legal ranking organizations, including *Chambers USA*. Welsh Decl. ¶ 8. He has over twenty-five years of litigation experience

and has litigated numerous contested merger transactions and disputes arising therefrom. *Id.* Partner Martin Crisp has over twenty years of legal experience and has received similar accolades from legal ranking organizations like *Chambers USA*. *Id.* ¶ 9. He focuses his practice on stockholder litigation and has litigated numerous disputes arising from major corporate transactions. *Id.*

Additionally, mindful of the importance of efficiency, Ropes & Gray staffed the case with a small team of well-qualified counsel and an associate. *Id.* ¶¶ 10-11. This team included Ani-Rae Lovell, who earned her J.D. in 2016 and was elevated to counsel in Ropes & Gray's Litigation and Enforcement practice group in late 2025. *Id.* ¶ 10. The team also included an associate in Ropes & Gray's Litigation & Enforcement practice group who earned her J.D. in 2022 and served in two federal clerkships. *Id.* ¶ 11.

Finally, Ropes & Gray's charged rates are reasonable here given the manner in which Livevideo and Constants have litigated this case. *See An*, 2024 WL 1157281, at *4 (rejecting argument that rates were unduly high where plaintiffs "engaged in a harassment campaign against Defendants"). As the Court found in the Order adopting the R&R, Livevideo brought this action purportedly challenging the Paramount-Skydance merger for the improper purpose of harassing the Defendants. R&R at 36-38. Given this putative challenge to the merger, NAI sought Ropes & Gray's unique and well-developed understanding of the facts and legal issues relating to the merger pursuant to the longstanding attorney-client relationship. Welsh Decl. ¶ 7. Livevideo has since inundated the docket with lengthy and often incomprehensible filings. As such, NAI's counsel "had to expend considerable time and effort assembling evidence of the harassment campaign against [NAI]" and sifting through Livevideo's relentless filings. *See An*, 2024 WL 1157281, at *4 (cleaned up). Livevideo cannot relentlessly pursue claims in bad faith and then

-16-

complain that NAI had to incur legal fees sufficient to respond to those vexatious filings. *See Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.*, 212 F. Supp. 2d 226, 229 (S.D.N.Y. 2002) ("[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by [its adversary] in response."); *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-3549, 2020 WL 3790348, at *5 (E.D.N.Y. July 7, 2020) (noting that plaintiff's counsel "would not have had occasion to bill so many hours had defense counsel not made numerous, sometimes problematic, submissions to the court that they were required to review and respond to").

Based on the foregoing, the rates charged by Ropes & Gray to NAI—$1,940 to $2,250 for partners, $1,620 for counsel, and $1,060 for associates—are reasonable.

### B.    The Hours Expended Responding to the Struck Motions Are Reasonable.

In determining the reasonableness of the hours expended, "[t]he relevant issue . . . [is] whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Dakus*, 2025 WL 1183676, at *5. Where "the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." *Doe 1 v. East Side Club, LLC.*, No. 18 CIV 11324, 2023 WL 4174141, at *4 (S.D.N.Y. June 23, 2023), *aff'd sub nom. Derek Smith L. Grp., PLLC v. East Side Club, LLC*, No. 23-1015, 2024 WL 1756106 (2d Cir. Apr. 24, 2024).

NAI seeks its attorneys' fees incurred in responding to Livevideo's frivolous and unsupported filings made after the Court entered the Filing Injunction on September 30, 2025. Ropes & Gray performed 62 hours of work in responding to the Struck Motions. Welsh Decl. ¶¶ 21-22. These hours reflect the time spent preparing letters and briefs in opposition to each motion, conducting legal research, and strategizing and conferring with clients and team members. The hours expended on these tasks are detailed in the invoices filed as Welsh Decl. Exs. 1-2. *See*

*An*, 2024 WL 1157281, at *2 ("In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials."). The number of hours expended on the tasks described in those entries is reasonable because they were incurred in responding to filings made by Livevideo and Constants in a case that was otherwise closed.

The number of hours worked by Ropes & Gray is rendered all the more reasonable due to the manner in which Livevideo and Constants have litigated this case. "In considering the reasonableness of a fee application, a court may consider whether an adversary's litigation tactics affected the amount of work required." *Oakley*, 2025 WL 3041936, at *4 (collecting cases). As discussed above, Livevideo and Constants have spent the past year and a half inundating the docket with lengthy and incomprehensible motions. Following months of responding to Livevideo's frivolous filings, the Court imposed the Filing Injunction to protect Ropes & Gray's clients and related parties from future harassment. Again, Livevideo and Constants are in no position to complain about the fees NAI had to incur to protect itself from serial vexatious filings. *See Bleecker Charles*, 212 F. Supp. 2d at 229.

The Struck Motions, which flatly ignored the Filing Injunction,[8] required an immediate response from Ropes & Gray to ensure the Order was enforced and the benefits of the Filing Injunction were not rendered illusory, even if the motions themselves were incomprehensible and transparently meritless. *See Assoc. of Holocaust Victims for the Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 04 CIV 3600, 2005 WL 3099592, at *6

---

[8] For example, Livevideo attempted to argue that its November 5, 2025 motion to strike did not violate the Filing Injunction through a tortured reading of the Order and because "[s]triking is protective because it removes improper material rather than adding new claims or seeking benefits." Dkt. 184 at 2 n.1.

(S.D.N.Y. Nov. 17, 2005) (holding time spent on "aggressive, and ultimately successful fight" against frivolous lawsuit seeking to obviate previous settlement was reasonable given client interest in "zealously protect[ing] the earlier settlement"). Despite this case having been dismissed and sanctions having issued, Livevideo filed five additional motions in violation of the Filing Injunction, all in an effort to draw out this frivolous litigation and increase NAI's costs. Livevideo cannot now escape its responsibility for the fees it intended to incur. Accordingly, the fees incurred in responding to the Struck Motions are reasonable.

### C.    NAI's Total Attorneys' Fees Sought.

Calculating the lodestar based on the above reasonable rates and hours worked, NAI's total attorneys' fees incurred in responding to the Struck Motions are $85,056. This number is "presumptively reasonable," *Dakus*, 2025 WL 1183676, at *2, and is further warranted by the need to effect deterrence in this case. One purpose of attorneys' fees as sanctions is "to deter unnecessary delays in litigation" and "limit[] the abuse of court processes." *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478-79 (S.D.N.Y. Mar. 30, 2018); *see also United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) ("The purpose of [§ 1927] is to deter unnecessary delays in litigation.").

To date, the Court's orders and the $10,000 ordered in sanctions have not deterred Livevideo and Constants from pursuing their relentless harassment campaign against NAI. The Court has repeatedly warned Livevideo and Constants about the potential consequences of pressing their frivolous and unsupported claims. The Court has imposed a sanction of $10,000 against Livevideo and Constants. And the Court has entered the Filing Injunction precluding Livevideo from making further frivolous filings. Livevideo and Constants were unfazed and

continued their serial misconduct.  More severe sanctions are now appropriate to deter Livevideo

and Constants' vexatious conduct.  Accordingly, a fee award of $85,056 is warranted.

## CONCLUSION

For the reasons set forth above, the Court should grant NAI's motion for attorneys' fees

against Livevideo and Constants pursuant to 28 U.S.C. § 1927 and the Court's inherent powers.


Dated: February 19, 2026                          **ROPES & GRAY LLP**


                                        By:   /s/ *Peter L. Welsh*
                                              Peter L. Welsh
                                              800 Boylston Street
                                              Boston, MA 02199-3600
                                              Tel: (617) 951-7000
                                              Fax: (617) 951-7050
                                              peter.welsh@ropesgray.com

                                              Martin J. Crisp
                                              Ani-Rae Lovell
                                              1211 Avenue of the Americas
                                              New York, NY 10036-8704
                                              Tel: (212) 596-9821
                                              Fax: (212) 596-9090
                                              martin.crisp@ropesgray.com
                                              ani-rae.lovell@ropesgray.com
                                              *Attorneys for Defendant National Amusements,*
                                              *Inc.*

**CERTIFICATION**

The undersigned hereby certifies, pursuant to S.D.N.Y Local Civil Rule 7.1(c), that the foregoing Memorandum of Law contains 6,510 words exclusive of the caption, table of contents, table of authorities, and signature block.

By: /s/ *Ani-Rae Lovell*

Ani-Rae Lovell
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9821
Fax: (212) 596-9090
ani-rae.lovell@ropesgray.com

*Attorney for Defendant National Amusements, Inc.*