**THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**LIVEVIDEO.AI CORP**

**Plaintiff,**                                              **CIVIL ACTION**

**vs.**                                                     **C.A. NO. 1:24-CV-06290**

**SHARI REDSTONE,**

**NATIONAL AMUSEMENTS, INC.,**

**CHRISTINE VARNEY,MONICA SELIGMAN,**

**Defendant's.**

**PLAINTIFF'S OPPOSITION TO DEFENDANT NATIONAL AMUSEMENTS, INC.'S MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWERS**

**Preliminary statement**

Defendant National Amusements, Inc. ("NAI") asks this Court to impose extraordinary sanctions under 28 U.S.C. § 1927 and its inherent powers based on five post-injunction filings (the "Struck Motions"). The motion should be denied because (1) the governing Second Circuit and SDNY standard makes bad faith indispensable and requires clear evidence that the filings were both entirely without color and undertaken for an improper purpose, a showing NAI cannot make on this record, and (2) NAI's fee request is unsupported by the lodestar framework and prevailing SDNY rates described in the attached authorities.

**Governing standard: bad faith and lack of color**

Sanctions under § 1927 and the Court's inherent powers require a two-part showing—(1) the conduct was without a colorable basis, and (2) it was undertaken in bad faith for an improper purpose such as harassment or delay. Bad faith is the "touchstone" of sanctions under both authorities. See Revson v. Cinque & Cinque, P.C., 221 F.3d 71 (2d Cir. 1999); Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323 (2d Cir. 1999). SDNY decisions apply the same test and stress that sanctions must be construed narrowly and with

1

caution so as not to chill advocacy. See Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc., No. 04 Civ. 3531 (LTS) (HBP) (S.D.N.Y. Sept. 4, 2019); Fischer v. Forrest, No. 18-cv-11628 (RA) (OTW) (S.D.N.Y. Aug. 31, 2020).

The leading recent SDNY decision, Kassenoff v. Kassenoff, No. 22-cv-2162 (S.D.N.Y. Jan. 25, 2024), squarely holds that sanctions under § 1927 and inherent power require a finding that the challenged claim or conduct was without a colorable basis and was pursued in bad faith, and that bad faith must be established by clear and convincing evidence. Kassenoff declined to impose sanctions where the record did not permit a confident finding of bad faith, emphasizing that poor judgment, without more, does not meet the sanctions threshold.

The Second Circuit requires "clear evidence" of both lack of color and improper purpose, and demands "highly specific factual findings." See Revson, 221 F.3d 71; Schlaifer Nance, 194 F.3d 323; Liebowitz v. Bandshell Artist Mgmt., 6 F.4th 267 (2d Cir. 2021). SDNY cases such as Dwelling Mgmt., No. 23-cv-2593 (VEC) (SN) (S.D.N.Y. Dec. 1, 2023), and Cheng v. Chunyung Cheng, No. 20-cv-8903 (LJL) (S.D.N.Y. Mar. 8, 2022), echo that the findings must identify the conduct, explain why it lacked any colorable basis, and explain why the record shows improper purpose.

**Application of the bad-faith standard to LiveVideo**

NAI's motion portrays this action as "harassment" and the Struck Motions as bad-faith violations of the Court's filing injunction. The fuller record, including the March 3, 2026 LiveVideo letter, shows something very different: a case that never left the service stage, evolving directives about ECF usage and AI, the imposition of a filing injunction and monetary sanction, and then efforts by counsel to comply, clarify ambiguous language, and preserve appellate rights.

Before the December 9, 2024 default, counsel spoke with Ms. Lovell of Ropes & Gray, who stated NAI had not received the amended summons and complaint. Counsel then investigated, confirmed that LiveVideo had provided the amended summons and complaint, and left a message advising Ms. Lovell; there was no return call. The matter "never left the service stage," and the contested service/default issues drove much of the subsequent motion practice.

After the February 12, 2025 hearing about an unauthorized motion filed under his ECF credentials, Mr. Constants changed his credentials, stopped allowing anyone else to use them, and informed Ms. Lovell that, from that date forward, all filings were personally reviewed and submitted by him. This is exactly the kind of remedial conduct SDNY decisions treat as inconsistent with ongoing bad faith.

On September 30, 2025, the Court adopted Magistrate Judge Moses's R&R, dismissed the complaint without prejudice under Rule 4(m), imposed a $10,000 sanction jointly and severally on LiveVideo and counsel, referred counsel to the Grievance Committee, and entered a filing injunction. The injunction barred "motions for affirmative relief" absent a one-page pre-motion letter explaining why any proposed motion would be neither duplicative nor baseless.

In the weeks that followed, LiveVideo filed the Struck Motions, which the Court struck as filed "in direct violation" of the injunction and ordered LiveVideo and Mr. Constants to show cause why they should not be held in contempt. In response, counsel (1) submitted a declaration on November 10, 2025 (Dkt. 190) confirming he no longer shares his ECF credentials and personally reviewed and approved ECF Nos. 173–173 and 175–185; (2) acknowledged the Court had stricken those filings and promised not to refile them or seek affirmative relief without first submitting the required one-page letter; (3) noted LiveVideo had noticed an appeal on November 9, 2025; and (4) paid the $10,000 sanction by firm check.

LiveVideo's letters to the Court on November 7 and in its OSC reply asked for clarification of the term "motions for affirmative relief," explaining that some submissions were corrective filings directed to the Court's orders and that an expansive reading of "affirmative relief" threatened to forfeit LiveVideo's 30-day appeal window. The Court ultimately found the response "insufficient" for contempt purposes but expressly declined to hold LiveVideo or counsel in contempt and instead invited a sanctions motion "for any costs or fees associated with [LiveVideo's] conduct."

These facts cannot support the clear-evidence, highly-specific finding of subjective bad faith that § 1927 and inherent-power sanctions require. At most, they show a lawyer navigating ambiguous injunction language and tight appellate deadlines, after already having been sanctioned and admonished, not an attorney engaged in knowing harassment. That is exactly the kind of "poor judgment" Kassenoff held does not justify sanctions.

**Application of the "without color" standard**

The "without color" requirement is objective: a claim is colorable if it has some legal and factual support when evaluated in light of the reasonable beliefs of the person advancing it. See Fischer, No. 18-cv-11628. Sanctions require that the position be "entirely without color or completely meritless, not just weak, novel, or unsuccessful." See Revson, 221 F.3d 71; Appel v. Hayut, No. 20 Civ. 6265 (JPC) (S.D.N.Y. Jan. 25, 2022).

The Second Circuit has "rejected efforts to collapse frivolousness into bad faith," and SDNY decisions "repeatedly note that a frivolous or meritless position does not by itself prove

improper motive, though extraordinary lack of merit may permit such an inference." The court may infer bad faith from utter meritlessness, but may not assume bad faith simply because a position is wrong or very weak.

Here, the Struck Motions were filed:

- In a case that "never left the service stage," where disputed service and default issues remained central.

- Under a newly imposed filing injunction using the arguably ambiguous phrase "motions for affirmative relief."

- While LiveVideo was attempting to preserve its 30-day appellate window, making reconsideration practice particularly fraught.

LiveVideo's letters explicitly sought clarification of "affirmative relief" and argued that treating all corrective submissions as "affirmative" was not objectively reasonable. That is at least an arguable position about the scope of a new injunction and how to reconcile it with corrective filings and appellate rights. Under Fischer, this suffices for "some legal and factual support" and thus a colorable basis.

The history of LiveVideo's Rule 7.1 motions illustrates this point in concrete terms. NAI characterizes the Rule 7.1–based Struck Motion as duplicative and harassing, but the procedural record shows otherwise. LiveVideo's first Rule 7.1 motion—filed before the injunction—resulted in NAI filing a corporate disclosure statement for the first time in this case, a concrete compliance benefit to the Court and to the integrity of the docket. After that initial motion, however, LiveVideo understood there had been a change in NAI's ownership structure and believed this triggered an obligation under Rule 7.1 to supplement NAI's disclosure. The later Rule 7.1 motion therefore did not simply rehash the original complaint; it sought to ensure that NAI's ownership disclosures remained accurate in light of new information. In other words, Plaintiff's Rule 7.1 practice, even if procedurally flawed under the filing injunction, reflects an effort to promote governance, transparency, and compliance with the Court's rules—not to harass NAI.

Under Second Circuit precedent, efforts that produce real compliance benefits and respond to changed circumstances cannot fairly be characterized as "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." See State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 180 (2d Cir. 2004); Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 591 (2d Cir. 2016).

4

The high bar for inferring bad faith—conduct "so completely without merit that no substantial explanation other than improper purpose remains"—is not met in light of this context. Where, as here, the record shows a plausible (if misguided) belief in the legitimacy of the filings and some effort to comply with the Court's orders, SFM Realty's admonition that sanctions be denied where there is "some arguable legal or factual support" applies with full force.

**NAI's motion and the clear-evidence requirement**

The 1927.backup memorandum explains that a district court cannot simply announce that a motion lacked merit and then leap to bad faith; instead, it must make detailed findings identifying the conduct, explaining why it lacked any colorable basis, and explaining why the record shows improper purpose. Advanced Analytics, Dwelling Mgmt., Cheng, and Liebowitz all insist on this structure, and the Second Circuit has described its review of such orders as "more exacting than ordinary abuse-of-discretion review."

NAI's sanctions memorandum does not satisfy that standard. It makes repeated assertions that the Struck Motions were "entirely meritless," that they violated the filing injunction, and that they were "harassing," but those labels are exactly the kind of conclusory statements the case law rejects. The memorandum itself acknowledges that earlier sanctions and the filing injunction were already imposed to address LiveVideo's prior misconduct, and that the Court declined to hold LiveVideo and counsel in contempt when presented with their post-injunction show-cause response.

On this record, the most that can be said is that LiveVideo and counsel misinterpreted the injunction and made poor strategic decisions about how to proceed in the narrow window between dismissal and appeal—conduct that falls squarely into the "mere negligence, error, or weak legal arguments", insufficient for sanctions.

Additional cross-forum evidence also undercuts any inference that LiveVideo was pursuing a frivolous "campaign." In parallel FCC proceedings (MB Docket No. 24-275), LiveVideo filed detailed petitions and ex parte notices raising process-integrity issues under 47 C.F.R. § 1.1206 and 47 U.S.C. § 309(e), including allegations of undisclosed contacts between Skydance CEO David Ellison and President Trump at UFC events, failures by Paramount and Skydance to answer congressional questions about the transaction, and related record-completion defects. These filings were not only lodged in the FCC's ECFS system and transmitted to multiple members of Congress; they were also covered by specialist legal-risk outlet MLex, which reported on LiveVideo's ex parte allegations, its submission of photo and video evidence, and its petitions for rehearing and additional record development. See Wesley Brown, "Skydance CEO accused of failure to disclose meeting

with US president," MLex (June 10, 2025); "Video links Trump, Skydance CEO at UFC event, LiveVideo.AI tells FCC," MLex (June 16, 2025); Curtis Eichelberger, "Trump, Skydance CEO had 'heated exchange,' made deal, LiveVideo.AI tells FCC," MLex (June 17, 2025); "Paramount, Skydance didn't answer Congress' questions, LiveVideo.AI tells US FCC," MLex (July 28, 2025). Sanctions are inappropriate where there is "some arguable legal or factual support" and a plausible belief in the claim; LiveVideo's sustained, doctrinally grounded advocacy before the FCC and Congress—serious enough to attract national legal-press coverage—is inconsistent with the notion that its related SDNY filings were purely vexatious.

Taken together, the record here fits squarely on the "no sanctions" side of the § 1927 / inherent-power line drawn in cases like Revson and Kassenoff. The Court may disagree with Plaintiff's judgment or find the Struck Motions procedurally improper under the injunction, but the evidence does not support a clear, specific finding that they were filed in bad faith for the purpose of harassment or delay.

**Motion to strike under Rule 7.1 and local rules (Dkts. 182–85)**

The Rule 7.1 / local-rules motion built on LiveVideo's earlier Rule 7.1 motion, which had already produced NAI's first corporate disclosure in this case, demonstrating that LiveVideo's enforcement theory had real effect. The later motion was premised on LiveVideo's understanding that NAI's ownership had changed and that this change triggered a duty to supplement the Rule 7.1 disclosure, while also raising alleged local-rule violations in NAI's prior filings. A motion that enforces a rule that has already yielded a compliance benefit and responds to a perceived ownership change is not "wholly without color," even if it runs afoul of the injunction's leave requirement.

All told, these filings reflect recognizable procedural and substantive concerns—reconsideration and appeal preservation, supplementation with new facts, clarification of service in a Rule 4(m) case, revisiting prior orders, and enforcing Rule 7.1 and local-rule obligations. Under Second Circuit precedent, that is the opposite of the "utter meritlessness" required for the "without color" prong.

### IV. NAI's fee request is unreasonable, over-staffed, and excessive under lodestar and causation principles

Even if the Court were to find some sanctionable conduct, NAI's request for $85,056 in fees for 62 hours of work by four lawyers should be denied or drastically reduced. Sanctions are compensatory, not punitive; they may only reimburse "excess costs, expenses, and

attorneys' fees" that would not have been incurred but for specific misconduct. Here, the rates, hours, staffing, causation, and proportionality show that NAI's request far exceeds that limit.

Courts in this Circuit apply the lodestar method to sanctions motions, multiplying a reasonable hourly rate by the reasonable number of hours and requiring detailed, contemporaneous time records. They also apply a "but-for" causation standard in the sanctions context, limiting recovery to fees that would not have been incurred but for the sanctionable conduct. See Laboy v. Quality Auto. Servs., LLC, No. 21-CV-2501 (NRM) (RML) (E.D.N.Y. Feb. 7, 2024).

Recent SDNY and New York authority indicates that reasonable hourly rates for experienced litigators in routine federal matters are generally in the $300–$450 range for partners, $300–$350 for associates, and $100–$165 for paralegals, with $415 repeatedly approved for partners and $165 for paralegals. See, e.g., Norman v. Three In One Equities, LLC, No. 22-CV-3173 (JLR) (JLC) (S.D.N.Y. Feb. 8, 2024) (reducing a requested $545 rate as above the usual SDNY range); Castillo v. Z Deli Grocery V Corp. (S.D.N.Y. Jan. 24, 2024) (approving $415 attorney and $165 paralegal rates). By contrast, NAI's counsel seeks to justify rates of $2,250, $1,940, $1,620, $1,060, and $455 for the work at issue. Those ultra-premium rates may reflect bankruptcy or mega-transaction practices, but such figures are "exceptional and not representative of the prevailing rates for most federal litigation" in SDNY, particularly in a case that never progressed past service and where the challenged filings were promptly struck. NAI's fee request—$85,056 for 62 hours of work at blended rates of roughly $1,372/hour—is independently unreasonable under the lodestar framework and prevailing SDNY rates summarized in the attached materials. Even if some fee shifting were appropriate, the Court should substantially reduce these rates to conform to SDNY norms instead of forcing Plaintiff to subsidize NAI's choice to staff this motion with a top-of-market team.

NAI chose to staff this sanctions motion with at least four legal professionals: two partners billing near or above $2,000/hour, one counsel at approximately $1,600/hour, and an associate at more than $1,000/hour, plus a paralegal at roughly $450/hour. That four-lawyer "big-firm pyramid" was deployed on a narrow, already-framed issue in a case that never left the service stage, in which the Court had already struck the Struck Motions on a simple threshold ground. The legal questions presented—application of a filing injunction, § 1927, and inherent powers—are standard and well-trodden in this District. There was no discovery record to reconstruct, no trial testimony to parse, and no novel legal questions to brief. Reasonable staffing would have involved a single senior lawyer, or at most a partner and a mid-level associate. Instead, NAI spread the work across four lawyers and now asks

Plaintiff to pay for that choice. Courts routinely treat such over-staffing as a basis to cut hours significantly or deny fees outright, particularly where the party chose to use multiple timekeepers at premium rates for tasks that could easily have been done by a smaller team.

NAI also fails to justify 62 hours of lawyer and paralegal time to: (1) read five short, already-stricken motions; (2) research familiar § 1927 and inherent-power standards; and (3) draft a sanctions brief and supporting declaration.  The additional hours reflect internal conferences, duplication among four lawyers, and perhaps re-research of settled issues, none of which are properly shifted to Plaintiff. This is especially true given that NAI had already briefed sanctions issues earlier in the case (in its Rule 11/inherent-power motion). The law on sanctions and much of the factual background was already familiar to NAI's counsel. Recycling and repackaging that work should reduce, not increase, the time reasonably required.

Sanctions may only reimburse fees that would not have been incurred but for the specific misconduct. NAI bears the burden of proving that causal link. It has not done so. The time records and declaration do not distinguish between (a) time spent solely because of the five Struck Motions and (b) time that would have been spent anyway monitoring the docket, analyzing the Court's orders, considering appeal strategy, or dealing with preexisting sanctions issues. Nor do they exclude time associated with NAI's own earlier sanctions motion practice. Under the "but-for" causation standard, NAI's failure to show a tight causal connection to specific work attributable solely to the Struck Motions precludes awarding the full $85,056 even if some sanction were otherwise warranted.

Finally, the requested fee is disproportionate to any alleged harm. The Struck Motions were promptly struck, required no merits response, and caused, at most, the inconvenience of reading them and preparing a concise sanctions motion. NAI now asks for an $85,056 award generated by four lawyers billing at ultra-premium rates. Granting that request would effectively convert this sanctions motion into a fee-recovery windfall, rather than a measured response to "excess costs" actually caused by misconduct. Section 1927 and inherent-power precedents stress that sanctions must be tailored and restrained, especially where the Court has already imposed serious measures (the $10,000 penalty, filing injunction, and grievance referral) to address earlier conduct. Proportionality weighs heavily against awarding NAI anything close to what it seeks.

**Conclusion**

Sanctions under § 1927 and the Court's inherent powers are reserved for truly egregious litigation misconduct, and may be imposed only upon clear evidence that the challenged

conduct was both entirely without color and undertaken in bad faith. The record here—of a case that never left the service stage, an injunction whose "affirmative relief" language LiveVideo sought to clarify, counsel's remedial steps regarding ECF usage, payment of a $10,000 sanction, and an appeal filed promptly after dismissal—does not satisfy that demanding standard.

For these reasons, the Court should deny NAI's motion for sanctions in its entirety.


Dated:  April 14, 2026

Respectfully submitted,

By /s/ Alfred C. Constants III

Alfred C. Constants III, Esq.

Constants Law Offices, LLC

115 Forest Ave., Unit 331

Locust Valley, NY 11560

Email: Constantslaw49@gmail.com

Attorney for Plaintiff


CERTIFICATE OF COMPLIANCE

The Opposition total words using Microsoft word count is 3378 and complies with the Court's rules

By /s/ Alfred C. Constants III

Alfred C. Constants III, Esq.

Constants Law Offices, LLC

115 Forest Ave., Unit 331

Locust Valley, NY 11560

Email: Constantslaw49@gmail.com

Attorney for Plaintiff


Dated: April 14, 2026